IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN DOEs 1-5, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:13CV711 |
| | ) | |
| ROY A. COOPER III, ET AL., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

BEATY, District Judge.

This matter is currently before the Court on a Motion for Preliminary Injunction [Doc. #17], filed by Plaintiffs John Doe 1, John Doe 2, John Doe 3, John Doe 4, and John Doe 5 (collectively "Plaintiffs"). Also before the Court is an Amended Motion to Dismiss and Motion to Intervene as a Matter of Right [Doc. #30] ("Defendants' Motion" or "Motion to Dismiss"), filed by all Defendants ("Defendants" or "Attorney General Cooper and District Attorneys"), seeking dismissal pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). This Court held a hearing on these Motions on August 8, 2014. For the reasons discussed below, the Court will grant in part and deny in part Defendants' Motion to Dismiss, and the Court will deny Plaintiffs' Motion for Preliminary Injunction.

I.      BACKGROUND

The factual allegations of Plaintiffs' First Amended Complaint [Doc. #28] ("Amended Complaint"), taken as true for purposes of Defendants' Motion, allege that Plaintiffs are all residents of North Carolina who are required to register as sex offenders under North Carolina

state law.[1]  Some individuals required to register as sex offenders in North Carolina are subject

---

[1] N.C. General Statute § 14-208.7 requires that North Carolina residents with a "reportable conviction" register as sex offenders.  N.C. Gen. Stat. § 14-208.7(a) (2013).  N.C. General Statute § 14-208.6(4) defines "reportable convictions" to include the following:

a. A final conviction for an offense against a minor, a sexually violent offense, or an attempt to commit any of those offenses unless the conviction is for aiding and abetting. A final conviction for aiding and abetting is a reportable conviction only if the court sentencing the individual finds that the registration of that individual under this Article furthers the purposes of this Article as stated in G.S. 14-208.5.

b. A final conviction in another state of an offense, which if committed in this State, is substantially similar to an offense against a minor or a sexually violent offense as defined by this section, or a final conviction in another state of an offense that requires registration under the sex offender registration statutes of that state.

c. A final conviction in a federal jurisdiction (including a court martial) of an offense, which is substantially similar to an offense against a minor or a sexually violent offense as defined by this section.

d. A final conviction for a violation of G.S. 14-202(d), (e), (f), (g), or (h), or a second or subsequent conviction for a violation of G.S. 14-202(a), (a1), or (c), only if the court sentencing the individual issues an order pursuant to G.S. 14-202(l) requiring the individual to register.

e. A final conviction for a violation of G.S. 14-43.14, only if the court sentencing the individual issues an order pursuant to G.S. 14-43.14(e) requiring the individual to register.

N.C. Gen. Stat. § 14-208.6 (2013).  The following offenses are defined as "sexually violent offenses" under § 14-208.6(5): first-degree rape; rape of a child by an adult offender; second-degree rape; first-degree sexual offense; sexual offense with a child by an adult offender; second-degree sexual offense; sexual battery; attempted rape or sexual offense; intercourse and sexual offense with certain victims; statutory rape or sexual offense of person who is 13, 14, or 15 years old where the defendant is at least six years older; human trafficking if the offense is committed against a minor who is less than 18 years of age or the offense is committed against any person with the intent that they be held in sexual servitude; subjecting or maintaining a person for sexual servitude; incest between near relatives; employing or permitting minor to assist in offenses against public morality and decency; felonious indecent exposure; first-degree sexual

to location restrictions under N.C. General Statute § 14-208.18, which restrict where these individuals can "knowingly be."[2] Section 14-208.18(a) makes it a crime for these individuals to "knowingly be at any of the following locations":

(1) On the premises of any **place** intended primarily for the use, care, or supervision of minors, including, but not limited to, schools, children's museums, child care centers, nurseries, and playgrounds.

(2) Within 300 feet of any **location** intended primarily for the use, care, or supervision of minors when the **place** is located on **premises** that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, **places** described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public.

(3) At any **place** where minors gather for regularly scheduled educational, recreational, or social programs.

N.C. Gen. Stat. § 14-208.18(a) (2013) (emphasis added). A violation of any of these location restrictions is a Class H felony. Id. § 14-208.18(h).

---

exploitation of a minor; second-degree sexual exploitation of a minor; third-degree sexual exploitation of a minor; taking indecent liberties with children; solicitation of child by computer or certain other electronic devices to commit an unlawful sex act; taking indecent liberties with a student; patronizing a prostitute who is a minor or a mentally disabled person; promoting prostitution of a minor or a mentally disabled person; parent or caretaker commission or permission of an act of prostitution with or by a juvenile; and commission or allowing of sexual act upon a juvenile by parent or guardian. The term also includes solicitation or conspiracy to commit any of these offenses, as well as aiding and abetting any of these offenses.

[2] The location restrictions of § 14-208.18(a) do not apply to all individuals required to register as sex offenders under North Carolina law. Rather, they apply only to those sex offenders who have committed any of the following offenses: (1) any offense in Article 7A of Chapter 14 of the N.C. General Statutes (this includes first-degree rape, rape of a child by an adult offender, second degree rape, first-degree sexual offense, sexual offense with a child by an adult offender, sexual battery, intercourse and sexual offenses with certain victims, and statutory rape or sexual offense of a person who is 13, 14, or 15 years old); or (2) any offense where the victim of the offense where the victim of the offense was under the age of 16 years at the time of the offense. N.C. Gen. Stat. § 14-208.18(c).

This statute does allow some limited exceptions to these location restrictions. First, § 14-208.18 allows the following limited exceptions for those subject to the location restrictions who are parents or guardians of a minor:

(1)     if the minor is in need of emergency medical care, the parent or guardian may take the minor to any location that can provide emergency medical care treatment;

(2)     if the minor is a student enrolled in a school, the parent or guardian may be present on school property if all of the following conditions are met:

(a)     either the purpose must be to attend a conference at the school with school personnel to discuss the academic or social progress of the child, or the presence of the parent or guardian must have been requested by the principal or his or her designee for any other reason relating to the welfare or transportation of the child; and

(b)     the parent or guardian must comply with all of the following:

(i)     Notice: The parent or guardian shall notify the principal of the school of his or her registration under this Article and of his or her presence at the school, unless he or she has permission to be present from the superintendent or the local board of education, or the principal has granted ongoing permission for regular visits of a routine nature. If permission is granted by the superintendent or the local board of education, the superintendent or chairman of the local board of education shall inform the principal of the school where the parent or guardian will be present. Notification includes the nature of the parent or guardian's visit and the hours when he or she will be present at the school. The parent or guardian is responsible for notifying the principal's office upon arrival and upon departure. Any permission granted under this sub-subdivision shall be in writing.

(ii)    Supervision: At all times that the parent or guardian is on school property, he or she shall remain under the direct supervision of school personnel. If no school personnel are reasonably available to supervise the parent or guardian on that occasion, the parent or guardian shall not be on school property

even if the parent or guardian has ongoing permission for regular
visits of a routine nature.

N.C. Gen. Stat. § 14-208.18(b), (d).

In addition to those limited exceptions for parents or guardians of minors, the following

additional exceptions to the location restrictions are expressly provided for in § 14-208.18:

> (1)     those subject to the location restrictions who are eligible to vote may be
> present at an otherwise restricted location that is being used as a voting place as
> defined by G.S. 163-165 only for the purposes of voting and shall not be outside
> the voting enclosure other than for the purpose of entering and exiting the voting
> place; if the voting place is a school, then the sex offender shall notify the
> principal of the school that he or she is a registered sex offender;

> (2)     those subject to the location restrictions who are eligible under G.S. 115C-378
> to attend public school may be present on school property if permitted by the
> local board of education pursuant to G.S. 115C-390.11(a)(2);

> (3)     a juvenile subject to the location restrictions may be present at a location
> described in that subsection if the juvenile is at the location to receive medical
> treatment or mental health services and remains under the direct supervision of
> an employee of the treating institution at all times.

Id. § 14-208.18(e) – (g).  All five Plaintiffs are subject to the location restrictions of § 14-208.18.

Plaintiff John Doe 1 was convicted in 1995 to one count of receiving material involving

the sexual exploitation of a minor in violation of 18 U.S.C. § 2552(a)(2), and served five years

in federal prison for that conviction.  While in prison, John Doe 1 voluntarily completed the Sex

Offender Treatment Program ("SOTP"), which consists of months-long intensive therapy.  As

of 2003, he was no longer under any type of probation, parole, or supervised release.  Prior to

2011, John Doe 1 attended his local church, which contains a monitored child-care center within

300 feet of the main congregation hall.  His pastor was "aware of his history" and "approved

of" his church attendance.  (Am. Compl. [Doc. #28] ¶ 50.)  In 2011, an anonymous caller

reported John Doe 1's presence at his church's worship service, and he was arrested for violating a subsection of § 14-208.18(a). This charge was ultimately dropped the charge against John Doe 1, and the District Attorney allowed him to attend church, subject to an *ad hoc* list of restrictions, including a prohibition on "assisting" with the worship service and engaging in church activities other than attending the main service.

Plaintiff John Doe 2 was convicted in 2011 of misdemeanor sexual battery, in violation of N.C. General Statute § 14-27.5A, and was sentenced to 5 years of probation. "Per stipulation," the terms of John Doe 2's probation do not include any restriction on his ability to attend his minor son's educational or recreational activities. (Am. Compl. [Doc. #28] ¶ 62.) John Doe 2 desires to participate in these activities, but the State has informed John Doe 2 that § 14-208.18(a)'s proscriptions override the lack of restrictions in his probation terms. Furthermore, John Doe 2 is unsure of the meaning or extent of § 14-208.18(a)'s proscriptions. He has repeatedly asked his probation officer and the local sheriff's office for clarification, but they have pointed him to the verbatim text of § 14-208.18, "advis[ing] him not to participate in many activities" and to avoid many locations just "to be on the safe side." (Am. Compl. [Doc. #28] ¶ 67-68.) John Doe 2 has asked whether he can attend his son's activities remotely (e.g., via Skype), and received conflicting advice as to that question.

Plaintiff John Doe 3 was convicted in 2002 of committing indecent liberties with a minor, in violation of N.C. General Statute § 14-202.1, and served four years in prison in the North Carolina Department of Adult Corrections. While in prison, John Doe 3 volunteered for, and successfully completed, the state-administered Sex Offender Accountability and Responsibility

("SOAR") program, which consists of approximately 600 hours of therapeutic treatment.[3] Since his release from prison, John Doe 3 has been steadily employed. As part of his current job, he is required to purchase office supplies. The local sheriff's office has advised him that he could be arrested for violating § 14-208.18 for shopping in an office supply store that is located within 300 feet of a fast food restaurant that has a children's play area. John Doe 3 is unsure whether he is in violation of the statute by just driving to work past locations that might be prohibited under § 14-208.18.

Plaintiff John Doe 4 was convicted in 2007 of attempted solicitation of a minor in violation of N.C. Gen. Stat. § 14-202.3. He received a suspended sentence of 30 months, served 10 weekends in prison as an intermediate punishment, and completed a 30-month term of probation. John Doe 4 has undergone sex offender treatment and has maintained steady employment since his conviction. He currently wants to attend church, but is highly concerned that doing so could subject him to arrest and conviction under § 14-208.18, because the church has Sunday School classes for children.

Plaintiff John Doe 5 was convicted in 2009 of two counts of misdemeanor sexual battery. He received two suspended 75-day sentences, and completed his 18-month supervised probation. The victim in John Doe 5's case was a 30-year-old woman, and there have never been any allegations that John Doe 5 has ever engaged in, or has any interest in engaging in, any inappropriate contact with a minor. After his conviction, John Doe 5 was awarded joint custody of his two minor children, but he is unable to participate significantly in his children's education

---

[3] Plaintiffs allege that the rate of recidivism for SOAR graduates is significantly less than that of non-participants. (Am. Compl. [Doc. #28] ¶ 48.)

or recreational activities, due to the proscriptions of § 14-208.18. Furthermore, John Doe 5 wishes to attend church, and has the permission of his pastor to do so, but is concerned that doing so could subject him to arrest and conviction under § 14-208.18, because the church has Sunday School classes for children. John Doe 5 is also concerned about his ability to perform his job with § 14-208.18's restrictions, because his employer performs construction contracts that are sometimes inside areas that may be proscribed by this statute, and thus, on those jobs, he is unable to perform his duties as a supervisor.

On August 28, 2013, Plaintiffs commenced this action against North Carolina Governor Pat McCrory, North Carolina Attorney General Roy Cooper, and the District Attorneys in each prosecutorial district in North Carolina. The original Complaint brought claims pursuant to 42 U.S.C. § 1983, alleging that § 14-208.18 is overbroad and unconstitutionally vague, in violation of Plaintiffs' rights under the First, Fifth and Fourteenth Amendments of the U.S. Constitution. (Compl. [Doc. #1] ¶¶ 108-13.) The Complaint also alleged that § 14-208.18 violates their procedural due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution. (Id. ¶¶ 114-17.) It sought injunctive relief and a declaratory judgment that § 14-208.18 is unconstitutional. (Id. ¶ 118.)

Plaintiffs then requested and obtained leave to amend their Complaint, and filed their Amended Complaint [Doc. #28] on January 13, 2014. The Amended Complaint removes Governor McCrory as a defendant, amends factual allegations, and adds a claim for relief on equal protection grounds. (Am. Compl. [Doc. #28].) After Plaintiffs filed their Amended Complaint, Defendants filed an Amended Motion to Dismiss [Doc. #30], seeking dismissal

pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6).[4]  Defendants first contend that this case should be dismissed for lack of subject matter jurisdiction, because Plaintiffs lack standing. Specifically, Defendants contend that Plaintiffs have not alleged an injury that is concrete, particularized, and actual or imminent.  Defendants also contend that this case should be dismissed for lack of personal jurisdiction, because Plaintiffs have not alleged facts to establish that the named Defendants constitute "persons" under 42 U.S.C. § 1983.

In addition, Defendants contend that this case should be dismissed in its entirety for failure to state a claim.  To the extent that any of Plaintiffs' claims survive Defendants' Motion to Dismiss, Defendant Roy Cooper seeks to intervene as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, even though he also contends that this Court lacks jurisdiction over him as a defendant.  Plaintiffs filed a Response [Doc. #32] to Defendants' Motion, to which Defendants did not file a Reply.

Finally, Plaintiffs have filed a Motion for Preliminary Injunction [Doc. # 17], seeking to enjoin § 14-208.18 "as it applies to prevent [Plaintiffs] from participating in religious worship services and other religious gatherings" and to enjoin enforcement of § 14-208.18(a)(3) on the grounds that it is unconstitutionally vague.  Defendants filed a Response [Doc. #27], to which Plaintiffs did not file a Reply.

---

[4] Although the Amended Motion to Dismiss [Doc. #30] renders the original Motion to Dismiss [Doc. #8] moot, the Court notes that both Defendants' Amended Motion to Dismiss Brief [Doc. #31] and Plaintiffs' Response [Doc. #32] incorporate the arguments that parties previously made in the original Motion to Dismiss Brief [Doc. #9] its original Response [Doc. #13].  (Am. Mot. to Dismiss Br. [Doc. #31], at 1; Resp. to Am. Mot. to Dismiss [Doc. #32], at 1.)  Therefore, the Court will consider the arguments and legal support from both the original Motion to Dismiss Brief and Response, even though the original Motion to Dismiss is now moot, and has been terminated as such.

Both Motions are ripe for review, and this Court held a hearing in this matter on August 8, 2014. This Opinion will first consider Defendants' Motion, and specifically, the subject matter jurisdiction contention, because if Defendants are correct that this Court lacks subject matter jurisdiction, then everything else before the Court becomes moot.

## II.   AMENDED MOTION TO DISMISS

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants contend that this Court lacks jurisdiction over this action, because Plaintiffs lack Article III standing. A party may aptly challenge another party's lack of standing by a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). Marshall v. Meadows, 105 F.3d 904, 905 (4th Cir. 1997). In considering Defendants' Motion to Dismiss pursuant to 12(b)(1), Plaintiffs are the parties asserting federal jurisdiction, and therefore, they have the burden of establishing that they have standing to invoke the authority of a federal court. Clatterbuck v. City of Charlottesville, 708 F.3d 549, 553 (4th Cir. 2013) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "The [C]ourt should grant the 12(b)(1) motion 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Biktasheva v. Red Square Sports, Inc., 366 F. Supp. 2d 289, 294 (D. Md. 2005) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). Defendants have not introduced any evidence as to its 12(b)(1) Motion. Therefore, this Court will consider the Amended Complaint as the undisputed evidence on the issue. See Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004) ("[W]hen a defendant challenges subject matter jurisdiction

via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as [ ] evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.").

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2012). The U.S. Supreme Court has explained that the phrase "case of actual controversy" in the Declaratory Judgment Act refers to the type of "cases" and "controversies" that are justiciable under Article III. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S. Ct. 461, 81 L. Ed. 617 (1937)).

Standing is an essential component of a justiciable "case" under Article III. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). "The 'irreducible constitutional minimum of standing' requires (1) 'an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical'; (2) 'causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant'; and (3) 'redressability—a likelihood that the requested relief will redress the alleged injury.'" McBurney v. Cuccinelli, 616 F.3d 393, 402 (4th Cir. 2010) (quoting Steel Co., 523 U.S. 83, 102-03, 118 S. Ct. 1003; citing Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000) (en banc)).

Defendants contend that Plaintiffs lack standing because no enforcement action has been taken or threatened against Plaintiffs, and as such, Plaintiffs lack a sufficient injury. Plaintiffs, however, contend that they have alleged a sufficient injury, because they have been forced to choose between engaging in constitutionally protected activity and subjecting themselves to possible prosecution for violating what they contend is an unconstitutional statute. Plaintiffs further contend that the Court should consider the full scope of harms inflicted by not only those directly subject to the location restrictions, but also the harm to those who wish to include Plaintiffs in religious worship, association, and family life.

To satisfy the injury requirement, the party asserting jurisdiction must demonstrate an "'injury in fact' that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical." Long Term Care Partners, LLC v. United States, 516 F.3d 225, 231 (4th Cir. 2008) (citing Lujan, 504 U.S. at 560-61, 112 S. Ct. 2130). "The standing requirement is designed to guarantee that 'the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate.'" Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 298 (4th Cir. 2005) (quoting Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 319 (4th Cir. 2002)). Other than stating the Article III requirements for standing, Defendants' Motion to Dismiss brief does not cite any authority or attempt to make any arguments based on precedent as to why Plaintiffs have not suffered an injury in fact.

In a case challenging a Virginia law similar to that which is challenged in this case, the Fourth Circuit in Doe v. Virginia Dep't of State Police affirmed the district court's dismissal of several claims, in part because the harm alleged was hypothetical, as the plaintiff had not

attempted to access school or church property. 713 F.3d 745, 754 (4th Cir. 2013). However, this case is distinguishable from Virginia Department of State Police in at least one key respect. In Virginia Department of State Police, the Virginia law gave the plaintiff and other registered sex offenders the option to petition the court, with the school board or day care owner's permission, in order to obtain an individualized degree of access to restricted property. 713 F.3d at 751 (citing Va. Code § 18.2–370.5(B)). Significantly, the plaintiff in Virginia Department of State Police never tried to exercise that option. Id. Indeed, the Virginia Dep't of State Police plaintiff had never attempted to even gain permission for entry from any school board. Id.

In contrast, there is no such petition option or opportunity to obtain an individualized degree of access to restricted locations under § 14-208.18. While there is an exception that allows access by a parent to that individual's child's school, such access is only granted for limited purposes and it always requires permission and constant supervision. Unlike the Virginia law, there is no opportunity under § 14-208.18 to petition for a hearing in order to obtain a court order tailoring the location restrictions to an individual petitioner. As such, there is no comparable alternative available to Plaintiffs that they have declined to pursue in lieu of filing this lawsuit.

Furthermore, some of the Plaintiffs here allege that they have sought and obtained permission to attend a particular church, and would attend, but for the location restrictions. Indeed, Plaintiff John Doe 1 was arrested and charged with violating § 14-208.18 for attending a church where he had the pastor's permission to attend. This charge was ultimately dropped

against John Doe 1, and the District Attorney allowed him to attend church, subject to an *ad hoc* list of restrictions that apply only to Plaintiff John Doe 1 in that particular prosecutorial district.

In addition, with regard to Plaintiff John Doe 2, the terms of his probation "per stipulation" do not include any restriction on his ability to attend his minor son's educational or recreational activities, he has been informed by his probation officer and the local sheriff's office that he should abide by the restrictions in § 14-208.18. In sum, Plaintiffs in this case have diligently exhausted the alternative options available to them, and in Plaintiff John Doe 1's case, even been arrested, unlike the plaintiff in <u>Virginia Department of State Police</u>.

In <u>Steffel v. Thompson</u>, the U.S. Supreme Court did not require the plaintiff to risk actual prosecution by distributing handbills before he could seek a declaratory judgment regarding the constitutionality of a state statute prohibiting such distribution. 415 U.S. 452, 458-60, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974). "As then-Justice Rehnquist put it in his [<u>Steffel</u>] concurrence, 'the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity.'" <u>MedImmune, Inc.</u>, 549 U.S. at 129, 127 S. Ct. 764 (citing <u>Steffel</u>, 415 U.S. at 480, 94 S. Ct. 1209 (Rehnquist, J., concurring)). As such, subject matter jurisdiction was not precluded simply because the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do. <u>Id.</u>; <u>see also</u> <u>New York State Club Ass'n, Inc. v. City of New York</u>, 487 U.S. 1, 9-10, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988) (concluding that the appellant consortium's members had standing to sue to challenge the constitutionality of a law that would extend antidiscrimination provisions to the members, because the members "are suffering immediate or threatened injury" to their associational rights as a result of the

14

challenged law's enactment) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 511, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)); <u>Mobil Oil Corp. v. Attorney General of Com. of Va.</u>, 940 F.2d 73, 75 (4th Cir. 1991) ("We are not troubled by the pre-enforcement nature of this suit[, where t]he State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise." (quoting <u>Virginia v. American Booksellers Ass'n, Inc.</u>, 484 U.S. 383, 393, 108 S. Ct. 636, 98 L. Ed. 2d 782, <u>vacated on other grounds</u>, 488 U.S. 905, 109 S. Ct. 254, 102 L. Ed. 2d 243 (1988)). Where, as here, Plaintiffs face a "credible threat of prosecution," they "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." <u>See Holder v. Humanitarian Law Project</u>, 561 U.S. 1, 15, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010) ("One last point. Plaintiffs seek preenforcement review of a criminal statute. Before addressing the merits, we must be sure that this is a justiciable case or controversy under Article III. We conclude that it is: Plaintiffs face 'a credible threat of prosecution' and 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" (quoting <u>Babbitt v. Farm Workers</u>, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979))).

Therefore, where the State has not disclaimed any intention of enforcing § 14-208.18, Plaintiffs need not actually violate § 14-208.18, or be proactively threatened with prosecution prior to violation, in order to have standing to challenge its constitutionality.[5] As such, Plaintiffs

---

[5] The Court notes that this conclusion does not rely in any part on Plaintiffs' request that the Court also consider the harm also to those who wish to include Plaintiffs in religious worship, association, and family life. To the extent that Plaintiffs ask the Court to consider injury suffered by those who are *indirectly* affected by § 14-208.18, Plaintiffs do not appear to have standing to assert such an injury on behalf of these individuals, as all Plaintiffs are individuals who are subject to, and therefore, *directly* affected by, § 14-208.18's proscriptions.

have stated an injury in fact, and Defendants' motion to dismiss pursuant to 12(b)(1) for lack of subject matter jurisdiction is denied.

B.    Motion to Dismiss for Lack of Personal Jurisdiction

Defendants next contend that this Court lacks personal jurisdiction over Attorney General Roy Cooper and the District Attorneys sued by Plaintiffs.[6] "When personal jurisdiction is challenged under Rule 12(b)(2), the jurisdictional question is resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Human Res. Certification Inst. v. Human Res. Prof'l Ass'n, 453 F. App'x 349, 350 (4th Cir. 2011) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993)). Where, as here, neither party disputes the factual allegations in Plaintiffs' Amended Complaint, "the [C]ourt must construe all relevant pleading allegations in the light most favorable to the plaintiff." In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)) (internal quotation marks omitted).

i.    Attorney General Roy Cooper

With regard to Attorney General Cooper, Defendants contend that Plaintiffs have not cited any legal authority for the proposition that Defendant Cooper has the authority to criminally charge an individual for violating the statute at issue, as required to sue a state official

---

[6] Defendants originally also argued that this Court lacked personal jurisdiction over Governor Pat McCrory, but Plaintiffs removed Governor McCrory as a defendant in their Amended Complaint.  Therefore, the issue of whether this Court has personal jurisdiction over Governor McCrory is now moot.

for injunctive relief under <u>Ex parte Young</u>, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).[1] However, Plaintiffs contend that Defendant Cooper has statutory authority under North Carolina law to prosecute state criminal cases upon request of the relevant District Attorney, and therefore, he does have the requisite authority to prosecute Plaintiffs for violating § 14-208.18. While Defendants did not file a Reply to Plaintiff's Response, Defendants argued at the hearing that Attorney General Cooper's statutory authority to prosecute a violation of § 14-208.18 would be foreclosed if the District Attorneys are enjoined from enforcing the statute. Defendants have not identified any authority or text from the statute to support this contention.

Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983. Section 1983 allows parties to sue a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2012). Therefore, Defendants essentially

---

[1] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although by its terms, the Eleventh Amendment applies to suits brought against a State by "Citizens of another State," it is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974). One exception to Eleventh Amendment immunity is a suit for prospective injunctive relief against State officials acting in violation of federal law pursuant to the exception announced by the Supreme Court in <u>Ex parte Young</u>, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment. 209 U.S. at 159-60, 28 S. Ct. 441; <u>McBurney v. Cuccinelli</u>, 616 F.3d 393, 399 (4th Cir. 2010). As Plaintiffs seek prospective injunctive relief against State officials acting in violation of federal law, this action falls within the <u>Ex parte Young</u> exception to Eleventh Amendment immunity.

contend that Attorney General Cooper is not a person who can be sued under § 1983, and as such, this Court lacks jurisdiction over him.

"Where a state law is challenged as unconstitutional, a defendant must have 'some connection with the enforcement of the act' in order to properly be a party to the suit." South Carolina Wildlife Fed'n v. Limehouse, 549 F.3d 324, 332 (4th Cir. 2008) (quoting Lytle v. Griffith, 240 F.3d 404, 409 (4th Cir. 2001)). "This 'special relation' requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials." Id. at 332-33 (citing Ex parte Young, 209 U.S. 123, 158-59, 28 S. Ct. 441, 52 L. Ed. 714 (1908)). "Primarily, the requirement has been a bar to injunctive actions where the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated." Id. at 333. "Such cases have been dismissed on the ground that '[g]eneral authority to enforce the laws of the state' is an insufficient ground for abrogating Eleventh Amendment immunity." Id. (citing Waste Mgmt Holdings, Inc. v. Gilmore, 252 F.316, 331 (4th Cir. 2001); Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979)).

Ex parte Young itself held that the state attorney general's duties, which included the right and the power to enforce the statutes of the state, sufficiently connected him with the duty of enforcement to make him a proper party to an action challenging a state statute's constitutionality. 209 U.S. at 158-61, 28 S. Ct. 441; see Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10, 109 S. Ct. 2304, 2312 n.10, 105 L. Ed. 2d 45 (1989) (concluding that a state is not a "person" subject to suit under § 1983, but further noting that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983

because 'official-capacity actions for prospective relief are not treated as actions against the state.'" (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); citing <u>Ex Parte Young</u>, 209 U.S. at 159-60, 28 S. Ct. 441)); <u>see also</u> <u>Mobil Oil Corp.</u>, 940 F.2d at 76 n.2 ("The Attorney General tries to distance herself from the state, but we think a dispute with a state suffices to create a dispute with the state's enforcement officer sued in a representative capacity."). N.C. General Statute § 114-11.6 allows attorneys assigned to the Special Prosecution Division within the Office of the Attorney General to prosecute or assist in the prosecution of criminal cases when requested to do so by a District Attorney, and upon approval by the Attorney General. N.C. Gen. Stat. § 114-11.6 (2011); <u>see</u> <u>State v. Felts</u>, 79 N.C. App. 205, 209, 339 S.E.2d 99, 101 (1986) (noting that § 114-11.6 authorizes the Attorney General's Office to prosecute or assist district attorneys in the prosecution of criminal cases). This is in contrast to the Virginia Attorney General's lack of *any* specific statutory authority to enforce the challenged statute in <u>McBurney v. Cuccinelli</u>, which was part of the reason why the Fourth Circuit affirmed the dismissal of Virginia's Attorney General in that case. <u>See</u> 616 F.3d 393, 399-402 (4th Cir. 2010); <u>see also</u> <u>Waste Mgmt. Holdings, Inc. v. Gilmore,</u> 252 F. 3d 316, 330-31 (4th Cir. 2001) (dismissing the governor as a party because he lacked "direct enforcement responsibility with respect to the statutory provisions at issue").

Although Defendants contend that District Attorneys who are enjoined from prosecuting a particular crime would not then be able to request that the Attorney General instead prosecute that crime, such a conclusion is not clear by the terms of § 114-11.6, which makes no such caveat to that effect. Therefore, there is no reason to conclude that Attorney General Cooper

does not at the outset have the appropriate statutory authority to enforce a violation of § 14-208.18 in situations where the District Attorneys may be enjoined from such enforcement. As such, Attorney General Cooper is a proper defendant in this lawsuit, and the Court will therefore deny Defendants' Motion to Dismiss Attorney General Cooper for lack of personal jurisdiction.[8]

### ii. District Attorneys

Similarly, Defendants contend that this Court does not have personal jurisdiction over the District Attorneys, because with one exception, the District Attorneys have not explicitly threatened any Plaintiffs with prosecution. Defendants imply that this Court lacks personal jurisdiction even over the District Attorney who charged John Doe 1 with violating § 14.208-18 in 2011, because the charges were ultimately dismissed. In the alternative, Defendants ask that this Court limit the District Attorney defendants to only those in the counties where Plaintiffs reside (Cleveland County, Wake County, Forsyth County, and Alamance County), as opposed to all prosecutorial districts within the State.

However, Plaintiffs contend that, regardless of whether Plaintiffs have actually been prosecuted or explicitly threatened with prosecution, this Court has jurisdiction over all the District Attorneys, because they all have the statutory authority to enforce § 14.208-18. Furthermore, Plaintiffs contend that there is no basis for limiting the Defendants to those in the prosecutorial districts in which Plaintiffs reside, as Plaintiffs may readily travel outside of the prosecutorial districts in which they reside.

---

[8] Because Attorney General Cooper is a proper party in this action, the matter of whether Attorney General Cooper may intervene as a matter of right, pursuant to Federal Rule of Civil Procedure 24(a), is moot.

As previously explained, Attorney General Cooper has the statutory authority to enforce the challenged statute, and thus, is a proper defendant in this lawsuit. Similarly, the District Attorneys each have the authority to prosecute individuals for violating the challenged statute. See N.C. Gen. Stat. § 7A-61 ("The district attorney shall . . . prosecute in a timely manner in the name of the State all criminal actions and infractions requiring prosecution in the superior and district courts of his prosecutorial district . . . ."). Furthermore, Defendants do not cite any authority for the Defendants' alternative contention that only those District Attorneys in the counties where Plaintiffs reside should be required to remain in this lawsuit. Indeed, Plaintiffs could be prosecuted for a violation of § 14-208.18 in a prosecutorial district that is different from the one in which they reside, if the violation occurred in a different prosecutorial district. As such, because the District Attorneys are authorized to enforce § 14.208-18, and Defendants offer no authority to support their contention that the defendants should be limited to only those District Attorneys of the prosecutorial districts in which Plaintiffs reside, the Court concludes that this Court has personal jurisdiction over the District Attorneys. Therefore, Defendants' Motion to Dismiss the District Attorneys is denied. As such, for the reasons previously stated, Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) is denied in its entirety.

C.     Motion to Dismiss for Failure to State a Claim

In reviewing a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), the Fourth Circuit has directed that courts "'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need

not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted). Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. 1937).

As previously explained, Plaintiffs are registered sex offenders who are subject to the location restrictions of § 14-208.18(a), which restrict where Plaintiffs can "knowingly be." N.C. Gen. Stat. § 14-208.18(a), (c). The North Carolina Court of Appeals has held that the three

provisions within § 14-208.18(a) describe three separate and distinct criminal offenses. State v. Daniels, 741 S.E.2d 354, 361 (N.C. Ct. App. 2012). As such, if this Court were to find some, but not all, of the three subsections to be unconstitutional, the other subsections would remain constitutional and enforceable. See Act of July 28, 2008, ch. 117, § 21.1, 2008 N.C. Sess. Laws 437 (providing that "[i]f any provision of this act is held invalid, the invalidity does not affect other provisions or applications of this act that can be given effect without the invalid provisions or application").

In challenging § 14-208.18's constitutionality under the U.S. Constitution,[9] Plaintiffs allege that the statute violates the First, Fifth, and Fourteenth Amendments, both on its face and as applied to them. Specifically, Plaintiffs contend that the statute is substantially overbroad, unconstitutionally vague, a violation of the Equal Protection Clause, and a violation of Plaintiffs' procedural due process rights. Essentially, Plaintiffs contend that they are unsure of the extent of § 14-208.18's proscriptions, even after seeking clarity and more specific guidance from law enforcement officials and prosecutors. Further, to the extent that § 14-208.18 does clearly prohibit certain activities, Plaintiffs claim that those prohibitions constitute "undue restrictions on constitutionally protected activity," such as "the freedom of religion, freedom of association, freedom to raise one's children, and freedom of speech." (Am. Compl. [Doc. #28] ¶ 101.)

---

[9] Plaintiffs have made clear that they are only bringing claims pursuant to the U.S. Constitution. (Pls.' Resp. to Defs.' Mot. to Dismiss [Doc. #13], at 2 ("This case is brought solely under the Federal Constitution. While the Plaintiffs believe that [ ] § 14-208.18 also violates provisions of the North Carolina Constitution, they are not asking this Court to consider the reach of the State Constitution independently.").)

Plaintiffs also claim that § 14-208.18 precludes them from attending worship services (because most churches have minor members and a Sunday school or day care area), going to the hospital (due to the presence of children's units and day care centers), and protesting on the steps of the General Assembly (because children's groups regularly enter the building for educational programs and the General Assembly is across the street from a museum with children's programs). In addition, Plaintiffs contend that § 14-208.18 precludes them from participating in organized recreational activities (because such activities often take place at locations where youth recreational activities also occur) or taking classes at universities and community colleges (due to minors regularly attending educational programs at institutes of higher learning).

Plaintiffs also claim that those subject to § 14-208.18 are severely burdened in their ability to work (because the work itself must not be in any place within the zones proscribed by § 14-208.18, and must not require the employee to ever enter those zones) and to travel (due to overlapping "off-limits" zones under § 14-208.18, which can "render[ ] the simple act of going to work or walking down a public street a legal minefield"). In addition, Plaintiffs contend that those subject to § 14-208.18 are severely limited in their ability to associate with others (because participation in any social group with minor members, or any social group that meets at or near a place used by minors, is proscribed, regardless of whether minors are present or not) and to participate in the education and social life of their own children (though Plaintiffs acknowledge that § 14-208.18 allows a registrant to go to his child's school, the allowance is only for parent-

teacher conferences or upon specific request by the school principal, as long as notice is given before the registrant enters the location and as long as the registrant is "under supervision").

Defendants contend that all of Plaintiffs' claims should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6). The Court will consider each claim in turn.

i.      Overbreadth

Plaintiffs bring an overbreadth challenge, contending that § 14-208.18 infringes on their exercise of fundamental liberties, because it is not narrowly tailored to achieve a compelling state interest. Specifically, Plaintiffs contend that § 14-208.18 severely burdens the following rights and interests of Plaintiffs and other individuals required to register as a sex offender under North Carolina law: (1) freedom of religion; (2) freedom of speech and expression; (3) freedom of association; (4) intrastate travel; (5) additional burdens (the ability to seek medical care, the ability to seek their own education, the ability to seek and hold jobs that might require them, even incidentally, to be at any place proscribed by statute—not "fundamental" First Amendment liberties, but "long recognized as essential aspects of a free society"). (Br. in Support of Compl. [Doc. #3], at 7.) Defendants contend that this claim should be dismissed, because Plaintiffs have failed to demonstrate that § 14-208.18 is substantially overbroad. (Mot. to Dismiss [Doc. #9], at 19-20.)

In general, "[t]o succeed in a typical facial attack, [a party] would have to establish 'that no set of circumstances exists under which [a statute] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" United States v. Stevens, 559 U.S. 460, 473, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) (citations omitted). Although facial challenges are generally strongly

25

disfavored, the doctrine of overbreadth operates as an exception to the standard approach to facial challenges, "because the 'statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" Hardwick ex rel. Hardwick v. Heyward, 711 F.3d 426, 441 (4th Cir. 2013) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)); see Virginia v. Hicks, 539 U.S. 113, 118, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003) ("The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges" (citing Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984))). If a party shows that the challenged law "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep," then the overbreadth doctrine invalidates all enforcement of that law, "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." Hicks, 539 U.S. at 118-19, 123 S. Ct. 2191 (internal citation and quotation marks omitted) (citing Broadrick, 413 U.S. at 613, 615, 93 S. Ct. 2908; Virginia v. Black, 538 U.S. 343, 367, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003); New York v. Ferber, 458 U.S. 747, 769, n.24, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982); Dombrowski v. Pfister, 380 U.S. 479, 491, and n.7, 497, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965)).

As a preliminary matter, it appears that Plaintiffs intend to bring both a facial and an as-applied overbreadth claim. (See Am. Compl. [Doc. #28] ¶ 126 ("Section 14-208.18 is unconstitutional as applied to Plaintiffs' exercise of fundamental liberties . . . ."); Resp. to Mot. to Dismiss [Doc. #13], at 10 ("With regard to Plaintiffs' facial overbreadth challenge . . . .")).

However, the Plaintiffs do not cite any authority supporting the application of the overbreadth doctrine to an as-applied challenge. Indeed, there is straightforward recent precedent suggesting that there is no such thing as an as-applied overbreadth challenge. E.g., Farrell v. Burke, 449 F.3d 470, 498 (2d Cir. 2006) (asserting that "[a]ll overbreadth challenges are facial challenges"). Therefore, this Court will consider Plaintiffs' overbreadth challenge only as a facial challenge.

Furthermore, Plaintiffs make clear that their first cause of action is not a standard facial challenge to § 14-208.18. Indeed, Plaintiffs have repeatedly defined their first cause of action as one that is limited to an overbreadth challenge. (See Resp. to Mot. to Dismiss [Doc. #13], at 10 ("The 'no set of circumstances' test is entirely inapplicable both to the Plaintiffs' 'as-applied' claims and to the type of facial challenge asserted here. *Plaintiffs are not asserting a general facial challenge of the kind considered in Salerno, but specifically challenge the law as overbroad.*" (emphasis added)); Am. Compl. [Doc. #28], at 21 ("First Claim for Relief[:] Section 14-208.18 is Unconstitutionally Overbroad . . .") As such, the analysis discussed at length by both parties in Emp't Div., Dept. of Human Res. v. Smith, 494 U.S. 872, 110 S. Ct. 1595 (1990)—which was not an overbreadth challenge—is irrelevant to the question of what standard should apply to an overbreadth challenge.

Because Plaintiffs' first cause of action is limited to an overbreadth challenge, it is important to note that "the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of *First Amendment* rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" City of Chicago v. Morales, 527 U.S. 41, 52, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (quoting Broadrick, 413

U.S. at 612-15, 93 S. Ct. 2908) (emphasis added).  The expansive remedy available through a successful overbreadth challenge is provided "out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected *speech*—especially when the overbroad statute imposes criminal sanctions."  Hicks, 539 U.S. at 119, 123 S. Ct. 2191 (emphasis added) (citing Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 634, 100 S. Ct. 826, 63 L. Ed. 2d 73 (1980); Bates v. State Bar of Ariz., 433 U.S. 350, 380, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977); NAACP v. Button, 371 U.S. 415, 433, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963)).  "Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, Dombrowski, 380 U.S. at 486-87, 85 S. Ct. 1116—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas."  Id.  "Overbreadth adjudication, by suspending *all* enforcement of an overinclusive law, reduces these social costs *caused by the withholding of protected speech*."  Id. (second emphasis added).

As such, to the extent that Plaintiffs attempt to invalidate § 14-208.18 as overbroad based on any other type of rights—fundamental or otherwise—aside from free speech rights, the overbreadth doctrine is not the appropriate vehicle for such a challenge.  See id. at 118-19, 123 S. Ct. 2191 ("The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges.  The showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,' suffices to invalidate all enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to

constitutionally protected expression.'" (citations omitted)); United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) ("The facial overbreadth doctrine is restricted in its application, . . . and is 'not recognized . . . outside the limited context of the First Amendment."); Schall v. Martin, 467 U.S. 253, 268 n.18, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984) ("[O]utside the limited First Amendment context, a criminal statute may not be attacked as overbroad."). As such, the Court will analyze Plaintiffs' first cause of action as an overbreadth challenge, and therefore, the analysis will be limited to how it relates to § 14-208.18's alleged interference with Plaintiffs' rights to freedom of speech and expression.[10]

To prevail on an overbreadth challenge, the statute's overbreadth must be both "real" and "substantial," as assessed "in relation to the statute's plainly legitimate sweep." Hill v. Colorado, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000) (quoting Broadrick, 413 U.S. at 615, 93 S. Ct. 2908) (internal quotation marks omitted). "The concept of 'substantial overbreadth' is not readily reduced to an exact definition." Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S. Ct. 2118, 2126, 80 L. Ed. 2d 772 (1984). However, where a statute is overly broad, "[t]here must be a realistic danger that the statute itself

---

[10] This limitation to the overbreadth doctrine makes sense in light of the overarching purpose of the overbreadth doctrine. The overbreadth doctrine exists because "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.'" Hicks, 539 U.S. at 119, 123 S. Ct. 2191 (quoting Broadrick, 413 U.S., at 615, 93 S. Ct. 2908. To balance the potential social costs and benefits of the overbreadth doctrine, the U.S. Supreme Court has "insisted that a law's *application to protected speech* be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, before applying the 'strong medicine' of overbreadth invalidation." Id. at 119-20 (emphasis added) (citing Broadrick, 413 U.S. at 613, 615, 93 S. Ct. 2908) (internal citation omitted).

will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Id. at 801, 104 S. Ct. 2118 (citations omitted). Indeed, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Id. at 800, 104 S. Ct. 2118. Rather, "'a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications.'" Hardwick, 711 F.3d at 426 (quoting Ferber, 458 U.S. at 771, 102 S. Ct. 3348).

However, the overbreadth doctrine operates to invalidate statutes, "not because [the plaintiffs'] own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Hill, 530 U.S. at 731-32, 120 S. Ct. 2480 (internal quotation marks omitted) (quoting Broadrick, 413 U.S. at 612, 93 S. Ct. 2908). "Where an overbreadth attack is successful, the statute is obviously invalid in *all* its applications, since every person to whom it is applied can defend on the basis of the same overbreadth." Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 483, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) (emphasis in original). Thus, the appropriate analysis "requires consideration of many more applications than those immediately before the [C]ourt." Id. at 485, 109 S. Ct. 3028.

Here, § 14-208.18 precludes Plaintiffs and others who are subject to its proscriptions from protesting or even being in areas where free speech and expression is particularly important and common, including on the steps of the General Assembly, because children's groups regularly enter the building for educational programs and the General Assembly is across the

30

street from a museum with children's programs. As such, Plaintiffs allege that the entire General Assembly is off-limits to those subject to § 14-208.18, with no exception for protesting, meeting with one's legislator, or gathering petition signatures, for example. While § 14-208.18 could provide an outright exception (as it does for voting) or an opportunity to seek permission to allow Plaintiffs to exercise such a right (as it does for parents or guardians seeking to go to their children's school), § 14-208.18 provides no such exception for exercising one's free speech rights. Indeed, § 14-208.18 could allow for an option to petition a court for more tailored or individualized restrictions, as Virginia's comparable statute does. Section 14-208.18 could also provide an exception for when children are not present at the areas at issue. For example, right now, those subject to § 14-208.18(a)(3)'s restrictions cannot be in a park area that hosts regular events for children during the day, even if they would like to go to this area at night to attend a candlelight vigil to raise awareness about a particular cause. However, no such exceptions or opportunities are available to those subject to § 14-208.18's restrictions who seek to exercise their free speech rights in the many areas within § 14-208.18's location restrictions.[11]

However, the three subsections of § 14-208.18 do not each result in an assessment of "real" and "substantial" overbreadth "in relation to the statute's plainly legitimate sweep." Although none of them allow for any of the exceptions discussed above, they do not all appear

---

[11] Indeed, these restrictions appear likely to extend to many areas that would constitute traditional public fora, where the government's ability to restrict speech is "very limited." McCullen v. Coakley, -- U.S. --, 134 S. Ct. 2518, 2529 (2014) (quoting United States v. Grace, 461 U.S. 171, 180, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983)). Indeed, "the guiding First Amendment principle that the 'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content' applies with full force in a traditional public forum." Id. (quoting Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972)).

to reasonably extend to include speech in traditional public fora. Specifically, § 14-208.18(a)(1) forbids those subject to § 14-208.18's restrictions from knowingly being "[o]n the premises of any place intended primarily for the use, care, or supervision of minors, including, but not limited to, schools, children's museums, child care centers, nurseries, and playgrounds." Because this subsection is specifically limited to only those places intended primarily for the use, care, or supervision of minors, the overbreadth of this section will not be substantial.

In contrast, § 14-208.18(a)(2) criminalizes those subject to § 14-208.18's restrictions from knowingly being "[w]ithin 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, places described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public." Such a restriction expressly applies to property open to the general public, and based on Plaintiffs' allegations, this restriction may operate in practice to render the General Assembly and most traditional public fora off-limits to individuals who would otherwise like to exercise their right to free speech. Therefore, at this stage in the litigation, § 14-208.18(a)(2) appears to be substantially overbroad.

Similarly, § 14-208.18(a)(3) criminalizes those subject to § 14-208.18's restrictions from knowingly being "[a]t any place where minors gather for regularly scheduled educational, recreational, or social programs." Plaintiffs allege that minors gather for regularly scheduled educational or recreational programs at the General Assembly, in parks, and other traditional public fora. Therefore, this subsection operates to exclude those subject to § 14-208.18's

restrictions from many traditional public fora at all times (regardless of the absence of children) and without exception for public demonstrations, protests, or other ways of exercising one's free speech rights. Based on Plaintiffs' allegations, this subsection may also be substantially overbroad.

Therefore, Plaintiffs have stated a claim upon which relief may be granted that subsections (a)(2) and (a)(3) are overly broad. As such, to the extent that Plaintiffs raise a facial overbreadth challenge to § 14-208.18 based on their free speech rights, the Court denies Defendants' Amended Motion to Dismiss [Doc. #30]. However, to the extent that Plaintiffs attempt to bring an as-applied overbreadth claim or an overbreadth challenge as to rights other than freedom of speech and expression, those claims are dismissed, for the reasons explained above.

ii. Vagueness

Plaintiffs' second claim alleges that § 14-208.18(a)'s subsections are unconstitutionally vague. Specifically, Plaintiffs contend that § 14-208.18(a)'s language is unclear, such that "people of ordinary intelligence could reasonably disagree about the law's prohibitions, because it provides law enforcement, prosecutors, judges, and juries with an inadequate guide as to what conduct, specifically, is prohibited by the statute, and because it impermissibly interferes with and inhibits the exercise of fundamental liberties." (Am. Compl. [Doc. #28] ¶ 129.) Defendants respond that no part of § 14-208.18(a) is unconstitutionally vague, because "[a]ny individual of average intelligence could read [it] and understand what conduct is prohibited." (Mot. to Dismiss [Doc. #9], at 21.)

"It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." Morales, 527 U.S. at 56, 119 S. Ct. 1849 (quoting Giaccio v. Pennsylvania, 382 U.S. 399, 402-03, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966)) (internal quotation marks omitted). "Just as the overbreadth doctrine is designed to prevent self-censorship because of fear of a law's enforcement, the vagueness doctrine similarly ensures that a law does not 'deter constitutionally protected and socially desirable conduct.'" Heyward, 711 F.3d at 442 (4th Cir. 2013) (quoting United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 36, 83 S. Ct. 594, 9 L. Ed. 2d 561 (1963)). Specifically, imprecise penal statutes can be challenged as unconstitutionally vague when they "fail[ ] to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." Morales, 527 U.S. at 52, 119 S. Ct. 1849 (citing Kolender v. Lawson, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)). A penal statute may be impermissibly vague even if it does not reach a substantial amount of constitutionally protected conduct. Id. at 52, 119 S. Ct. 1849 (citing Kolender, 461 U.S. at 358, 103 S. Ct. 1855).

"Vagueness may invalidate a criminal law for either of two independent reasons[: f]irst, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." Id. at 56 (citing Kolender, 461 U.S. at 357, 103 S. Ct. 1855). The Court will first consider whether § 14-208.18 provides fair notice to those subject to its restrictions and then, if necessary, consider its potential for arbitrary enforcement.

Adequate notice is necessary in order "to enable the ordinary citizen to conform his or her conduct to the law." Morales, 527 U.S. at 58, 119 S. Ct. 1849; see Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939)) ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."). "A law will fail to establish these standards if 'ordinary people can[not] understand what conduct is prohibited.'" Heyward, 711 F.3d at 442 (quoting Kolender, 461 U.S. at 357, 103 S. Ct. 1855). Plaintiffs point first to the use of some combination of the terms "locations," "places," or "premises" within § 14-208.18's subsections. These terms are not defined in the Article's express definitions. See N.C. Gen. Stat. § 14-208.6 (providing definitions for Article 27A). Because understanding these terms are critical to one's ability to abide by the restrictions, the Court will consider whether they operate in a way that an ordinary citizen could understand their meaning in the context of each subsection.

All three subsections of § 14-208.18 incorporate the term "place." Beginning first with § 14-208.18(a)(1), this subsection criminalizes "knowingly be[ing]" "[o]n the premises of a *place* intended primarily for the use, care, or supervision of minors, including, but not limited to, schools, children's museums, child care centers, nurseries, and playgrounds." N.C.G.S. § 14-208.18(a)(1) (emphasis added). As the statute does not define "place," the Court looks to Webster's Third New International Dictionary, which defines "place" in relevant part as "a building or locality used for a special purpose." Webster's Third New International Dictionary 1727 (1993). Although the general definition of "place" is that of "a building or locality," the

general definition of "locality" does not seem to apply to the way "place" is used in this statute.[12] Given the context of (a)(1) as applied to the general definition of "place," it would appear that a "place" under the statute is limited to buildings that are intended primarily for the use, care, or supervision of minors. This corresponds with some of the examples provided: schools, children's museums, and child care centers.

However, the inclusion of nurseries and playgrounds as enumerated examples included within this definition of "place" belies a definition that limits a "place" to an entire building. For example, it seems reasonable that a McDonald's PlayPlace could be a prohibited "place" under § 14-208.18(a)(1), as it is likely qualifies as a "playground," which is an enumerated example in § 14-208.18(a)(1). Indeed, the inclusion of "playground" as an enumerated example appears to include a playground at a park. Therefore, although the general definition appears to limit a "place" to a building, the enumerated examples lead one to conclude that "place" is intended to be broader. As such, it seems plausible that the term "place" hypothetically could include a specific child-centric area that could occupy an entire building, a smaller child-centric area within a building that has a broader overall purpose, an entire outdoor area with a child-centric purpose,

---

[12] Webster's Third New International Dictionary offers the following area-based definitions for "locality": "(1)(a) the fact or condition of having a location in space or time; (b) restriction to a particular place; (2) a particular spot, situation, or location: as (a) the place from which something (as a sample of a mineral or a specimen of a plant) was obtained or is available, (b) a place having or considered in respect to a particular feature, (c) a political subdivision of a state; (3)(a) space or place reference: orientation in respect to space . . . ." Third New International Dictionary 1327 (1993). None of these definitions appear to apply to the statute's use of the term "place."

and a smaller child-centric area outside within a larger outdoor area that has a broader overall purpose.[1]

Understanding what is meant by "place" is critical to understanding the statute's restrictions, not just in the case of § 14-208.18(a)(1), but also as to § 14-208.18(a)(2) and § 14-208.18(a)(3) as well. Subsection 14-208.18(a)(2) incorporates "place" and the other two area-based terms used in this statute by restricting access "[w]ithin 300 feet of any *location* intended primarily for the use, care, or supervision of minors when the *place* is located on *premises* that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, places described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public." N.C.G.S. § 14-208.18(a)(2) (emphasis added).[14]

_____

[1] The problems in defining "place" are compounded when considering that (a)(1) prevents anyone subject to it from knowingly being "on the premises" of such a place. "Premises" is defined in relevant part by Black's Law Dictionary as "[a] house or building, *along with its grounds*." Black's Law Dictionary (9th ed. 2009) (emphasis added). As such, it appears that § 14-208.18(a)(1) prevents those subject to § 14-208.18's proscriptions from accessing not just the "place" itself, but the entire property grounds on which such a "place" is found. This does not seem particularly problematic in several of the enumerated examples, such as schools, children's museums, or child care centers, where it is obvious that there is a forbidden place on the premises. However, this subsection also prevents access to the entire premises when the "place" would apparently be a smaller area than the entire building, such as a nursery or playground. Therefore, § 14-208.18(a)(1) appears to prohibit access to the entire McDonald's property in the PlayPlace example, or perhaps even access to an entire shopping center premises if the McDonald's PlayPlace is located in such a shopping center.

[14] Based on the statutory context, the most logical reading is that "location" is used interchangeably with "place." See N.C. Gen. Stat. § 14-208.18(a)(2) ("[w]ithin 300 feet of any *location* intended primarily for the use, care, or supervision of minors when *the place* is located on premises that are not intended primarily for the use, care, or supervision of minors . . . ."). As such, the 300 foot perimeter appears to be drawn from the outer bounds of the smaller child-centric area—that is, the location or place—rather than the premises, if "place" is not just limited to an entire building.

Subsection 14-208.18(a)(3) restricts access to "any *place* where minors gather for regularly scheduled educational, recreational, or social programs." N.C.G.S. § 14-208.18(a)(3) (emphasis added).

The questions about what exactly constitutes a "place" under this statute are not purely theoretical. Multiple North Carolina courts have held that various subsections of § 14-208.18 are unconstitutionally vague as applied to particular defendants. <u>E.g.</u>, <u>State v. Daniels</u>, 741 S.E.2d 354, 364 (N.C. Ct. App. 2012); <u>State v. Herman</u>, Catawba County No. 11 CRS 1008 (N.C. Super. Aug. 31, 2011), *order vacated on other grounds*, 726 S.E.2d 863, 866 (N.C. Ct. App. 2012); <u>State v. Demaio</u>, Chatham County No. 09 CRS 50647 (N.C. Super. Dec. 11, 2009). For example, in <u>State v. Daniels</u>, the North Carolina Court of Appeals held in that § 14-208.18(a)(3) is unconstitutionally vague as applied to that defendant, based on the phrase "at any place." 741 S.E.2d at 364. Specifically, Mr. Daniels had been charged with two counts of violating § 14-208.18(a)(3): one for standing between a ballpark where children play and the road, and another for standing on an "adult softball field" that was adjacent to a "tee ball field." <u>Id.</u> at 357. The <u>Daniels</u> Court held that § 14-208.18(a)(3)'s "at any place" was unconstitutionally vague as applied to the defendant in both counts, because "it fails to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, and it fails to provide explicit standards for those who apply the law. <u>Id.</u> at 364. Such an application quandary is but one illustration of the uncertainty an ordinary citizen faces in attempting to discern where individuals subject to § 14-208.18's restrictions are prohibited from going. Therefore, because the use of the term "place" results in a lack of adequate notice to ordinary people about where those subject to § 14-208.18

are prohibited from going, and because the definition of "place" is vital to understanding each of the three subsections of § 14-208.18(a), Plaintiffs have stated a claim that all three subsections of § 14-208.18(a) are unconstitutionally vague.

Although such reasoning applies to all three subsections, the Court notes there appears to be an additional problem with regard to § 14-208.18(a)(3), which restricts access to "any place where minors gather for regularly scheduled educational, recreational, or social programs." N.C.G.S. § 14-208.18(a)(3). Here, the "regularly scheduled educational, recreational, or social programs" language specific to § 14-208.18(a)(3) is also problematic in terms of notice. This limitation is not specific to regularly scheduled programs *for minors*. Rather, it appears to apply to *all* regularly scheduled educational, recreational, or social programs for which "minors gather." There is no indication how often such programming must occur in order to be "regularly scheduled" or how many minors must gather to qualify. For example, it is unclear whether an annual Fourth of July program would qualify as "regularly scheduled" if it occurs in the same place every year. Furthermore, it is unclear how often minors must gather for such programming—whether minors should attend most of the time when such programming occurs or whether it is sufficient that two minors gathered once for such programming. Because of the uncertainty surrounding the meaning of this language, this language also operates to render § 14-208.18(a)(3) unconstitutionally vague.

Therefore, because the term "place" in all three subsections of § 14-208.18(a) and § 14-208.18(a)(3)'s "regularly scheduled educational, recreational, or social programs" result in a lack of adequate notice to ordinary people about where those subject to § 14-208.18 are prohibited

from going, Plaintiffs have stated a claim that each subsection of § 14-208.18(a) is unconstitutionally vague.[15] Thus, the Court will deny Defendants' Amended Motion to Dismiss [Doc. # 30] as to Plaintiffs' vagueness challenge.

iii.    Equal Protection

Plaintiffs' third cause of action alleges an equal protection claim. Defendants contend that this claim fails because the statute is rationally related to a legitimate state interest. The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982)). Under an Equal Protection analysis, "the challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender." Giarratano, 521 F.3d at 303 (citing City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976)).

Plaintiffs do not contend that they are part of a suspect classification that would call for heightened scrutiny. Indeed, Plaintiffs conceded at the August 8 hearing that rational basis review applies to this challenge. However, Plaintiffs contend that they have still stated an equal

---

[15]  Because the Court reaches this conclusion, it need not consider whether § 14-208.18 is also vague for the independent reason that it violates "the requirement that a legislature establish minimal guidelines to govern law enforcement." See Morales, 527 U.S. at 60, 119 S. Ct. 1849 (quoting Kolender, 461 U.S. at 358, 103 S. Ct. 1855) (internal quotation marks omitted). Such a requirement exists in order to avoid authorization or even encouragement of arbitrary and discriminatory enforcement of penal statutes. Id. at 56, 60.

protection claim, because the sub-group of sex offenders who are subject to § 14-208.18's location restrictions is not rationally defined, as members of this group "share no characteristic that is rationally related to the purpose of the statute." (Am. Compl. [Doc. #28], ¶¶ 131, 132; Resp. to Am. Mot. to Dismiss [Doc. #32], at 2-4.)

"Under an Equal Protection analysis, courts generally hold that 'legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" Giarratano, 521 F.3d at 302-03 (quoting City of Cleburne, 473 U.S. at 440, 105 S. Ct. 3249). Indeed, under rational basis review, a classification in a statute comes before the Court bearing "a strong presumption of validity." Id. at 303, 105 S. Ct. 3249 (citing Lyng v. Auto. Workers, 485 U.S. 360, 370, 108 S. Ct. 1184, 99 L. Ed. 2d 380 (1988)). Specifically, under rational basis review, "the plaintiff bears the burden 'to negate every conceivable basis which might support' the legislation." Id. at 303 (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S. Ct. 1001, 35 L. Ed. 2d 351 (1973); citing Mitchell v. Comm'r of the Soc. Sec. Admin., 182 F.3d 272, 274 (4th Cir. 1999)). "Further, the State has no obligation to produce evidence to support the rationality of the statute, which 'may be based on rational speculation unsupported by any evidence or empirical data.'" Id. (quoting FCC v. Beach Comms., Inc., 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)).

"'[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."'" Id. (quoting Dandridge v. Williams, 397

U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970)). "Indeed, 'a legislative choice is not subject to courtroom fact-finding,' and 'equal protection [analysis] is not a license for the courts to judge the wisdom, fairness, or logic of the legislative choices.'" Id. (quoting Beach Comms., Inc., 508 U.S. at 313, 113 S. Ct. 2096).

Plaintiffs acknowledge that "there is some evidence of a minor correlation between *some* 'sex offenders' and marginally increased rates of recidivism," but contend that "there is no evidence of any statistical correlation" between the sub-group of sex offenders subject to § 14-208.18 and increased recidivism. (Resp. to Am. Mot. to Dismiss [Doc. #32], at 3.) The location restrictions of § 14-208.18 apply to those registered sex offenders who have either been convicted of an offense under Article 7A of Chapter 14 (collectively, "rape and other sex offenses") and those who have been convicted of any offense against a victim under the age of 16. N.C. Gen. Stat. § 14-208.18(c). It is not irrational for the State to conclude that those who have to register as a sex offender *and* have either committed rape or a similar sex offense may pose an increased risk to children. Nor is it irrational for the State to conclude that a sex offender who has committed an offense against a victim under the age of 16 may pose an increased risk to children. Even assuming, *arguendo*, that Plaintiffs' contention about this lack of evidence is true, Defendants need not produce evidence in support of the rationality of the statute. See Beach Comms., Inc., 508 U.S. at 313, 113 S. Ct. 2096 (noting that a challenged statute "may be based on rational speculation unsupported by any evidence or empirical data"). When analyzed under the highly deferential rational basis review, the Court concludes that Plaintiffs have not made the necessary allegations to state an equal protection claim. As such,

the Court will grant Defendants' Amended Motion to Dismiss [Doc. #30] as to Plaintiffs' equal protection claim, and dismiss this cause of action for failure to state a claim.

iv.    Procedural Due Process

Finally, Plaintiffs contend that the application of these location restrictions to them throughout the period of registration,[16] with no opportunity to petition a court for more individualized restrictions, violates their right to due process.   Defendants contend that Plaintiffs' claim fails because (1) they fail to satisfy two of the three elements of a procedural due process claim under 42 U.S.C. § 1983 and (2) the Supreme Court held in Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), that a sex offender has no right to additional process over and above the process afforded him during his original trial.  (Mot. to Dismiss Br. [Doc. #9], at 22-23.)

In Connecticut Department of Public Safety, a sex offender argued that inclusion in an online registry that was publicly disposed without a hearing violated his procedural due process rights.  538 U.S. at 5-6, 123 S. Ct. 1160.  The Supreme Court stated that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme."  Id. at 8, 123 S. Ct. 1160.  Because the Connecticut sex offender registry statute was determined solely based on prior convictions, rather than future dangerousness, the Supreme Court held that the plaintiff could not make the required showing that the facts the plaintiff sought to establish in the hearing (a lack of current

---

[16] The period of registration is either 30 years or life.  N.C. Gen. Stat. § 14-208.6A.  If the applicable period of registration is 30 years, the registrant may, after 10 years of registration, petition a superior court for removal from the registry.  Id.

dangerousness) were relevant under the statutory scheme.  Id. at 7, 123 S. Ct. 1160.  To the extent that the Connecticut Department of Public Safety plaintiff was instead attempting to bring a substantive challenge to the constitutionality of the Connecticut sex offender registry statute, the Supreme Court held that such a challenge was unavailable through the vehicle of procedural due process.  Id. at 8, 123 S. Ct. 1160.

Plaintiffs here attempt to distinguish their claim from that raised in Connecticut Department of Public Safety, stating that "due process requires the State to evaluate their threat to minors *at some point* before their rights are stripped away, based on an arguable, and at best minor, statistical correlation between the class of 'sex offenders' and threat of recidivism against minors."  (Resp. to Mot. to Dismiss [Doc. #13], at 17 (emphasis in original).)  In the event that Plaintiffs are attempting to draw a meaningful distinction based on timing (seeking a hearing at some point prior to or after conviction of the underlying offense, rather than only after conviction), Plaintiffs do not offer any reason as to why the conclusion should turn based on that temporal distinction.  Furthermore, to the extent that Plaintiffs are instead seeking to bring a substantive challenge to the application of the location restrictions to a particular class of sex offenders, based on an inadequate link between the classification and an increased risk of future dangerousness, Connecticut Department of Public Safety forecloses such a challenge via procedural due process:

> Unless respondent can show that that substantive rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise. It may be that respondent's claim is actually a substantive challenge to Connecticut's statute 'recast in "procedural due process" terms.' . . . . But States are not barred by principles of 'procedural due

process' from drawing such classifications. Such claims "must ultimately be analyzed" in terms of substantive, not procedural, due process.

538 U.S. at 7-8, 123 S. Ct. 1160 (citations omitted). Therefore, the Court will grant Defendants' Amended Motion to Dismiss [Doc. #30] as to Plaintiffs' procedural due process claim, and dismiss this cause of action for failure to state a claim.

In sum, the Court will grant in part and deny in part Defendants' Amended Motion to Dismiss [Doc. #30], pursuant to Rule 12(b)(6). Specifically, the Court grants Defendants' Motion as to Plaintiffs' equal protection and procedural due process claims. The Court also grants Defendants' Motion to the extent that Plaintiffs attempted to bring an as-applied overbreadth claim, an overbreadth claim based on rights other than those of free speech and expression, and an overbreadth claim as to § 14-208.18(a)(1). However, the Court denies Defendants' Motion as to Plaintiffs' overbreadth challenge to § 14-208.18(a)(2) and § 14-208.18(a)(3) with regard to free speech and expression. Finally, the Court also denies Defendants' Motion as to Plaintiffs' vagueness challenge to all three subsections of § 14-208.18(a), because the term "place" in all three subsections of § 14-208.18(a) and § 14-208.18(a)(3)'s "regularly scheduled educational, recreational, or social programs" result in a lack of adequate notice to ordinary people about where those subject to § 14-208.18 are prohibited from going.

## III.    MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' Motion for Preliminary Injunction [Doc. # 17] seeks to enjoin § 14-208.18 "as it applies to prevent [Plaintiffs] from participating in religious worship services and other religious gatherings" and to enjoin enforcement of only § 14-208.18(a)(3) on the grounds that

it is unconstitutionally vague. Defendants contend that this Motion should be denied because Plaintiffs have not made a clear showing that they are likely to succeed on the merits, they have not made a clear showing that they will suffer irreparable harm in the absence of an injunction, and an injunction is not in the public interest.

Injunctive relief is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief. <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948, at 129-30 (2d ed. 1995)). In order to obtain a preliminary injunction, a movant must make a "clear showing" that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20, 129 S. Ct. 365 (2008).

As previously discussed, Plaintiffs' overbreadth claim only survives Defendants' Amended Motion to Dismiss as a facial challenge to § 14-208.18(a)(2) and § 14-208.18(a)(3) based on free speech rights. As such, Plaintiffs cannot show a likelihood of success on the merits that they will prevail on their overbreadth claim that § 14-208.18 should be enjoined *"as it applies* to prevent [Plaintiffs] from participating in religious worship services and other religious gatherings." (Mot. for Prelim. Inj. [Doc. #17], at 1 (emphasis added).) Therefore, Plaintiffs' Motion for Preliminary Injunction is denied as to this attempted as-applied overbreadth challenge based on Plaintiffs' freedom to exercise their religion.

With regard to Plaintiffs' motion to enjoin only § 14-208.18(a)(3) on the grounds that it is unconstitutionally vague, even assuming, *arguendo*, that Plaintiffs have made the requisite showing as to the first three elements of a successful motion for preliminary injunction, the Court must deny Plaintiffs' Motion if they have not made a clear showing that granting a preliminary injunction is in the public interest. Id. at 20, 129 S. Ct. 365. Although "upholding constitutional rights is in the public interest" (Legend Night Club v. Miller, 637 F.3d 291, 303 (4th Cir. 2011) (citing Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 521 (4th Cir. 2002))), the Court must weigh that against the serious potential risk at stake in granting Plaintiffs' Motion—that is, the need to protect children. Although the Supreme Court has acknowledged that there is conflicting evidence about how much of a risk of future dangerousness is posed by sex offenders generally,[17] Plaintiffs contend that there is no evidence that those subject to § 14-208.18 specifically pose an increased risk of harm to children. However, identifying an absence of evidence on this specific point is not enough for Plaintiffs to make a "clear showing" that an injunction here is in the public interest. Indeed, Plaintiffs do not yet offer *any* evidence to indicate that there would not be an increased risk of harm to children if this Court granted

---

[17] United States v. Kebodeaux, -- U.S. --, 133 S. Ct. 2496, 2503-04, 186 L. Ed. 2d 540 (2013) ("There is evidence that recidivism rates among sex offenders are higher than the average for other types of criminals. See Dept. of Justice, Bureau of Justice Statistics, P. Langan, E. Schmitt, & M. Durose, Recidivism of Sex Offenders Released in 1994, p. 1 (Nov. 2003) (reporting that compared to non-sex offenders, released sex offenders were four times more likely to be rearrested for a sex crime, and that within the first three years following release 5.3% of released sex offenders were rearrested for a sex crime). There is also conflicting evidence on the point. Cf. R. Tewsbury, W. Jennings, & K. Zgoba, Final Report on Sex Offenders: Recidivism and Collateral Consequences (Sept. 2011) (concluding that sex offenders have relatively low rates of recidivism, and that registration requirements have limited observable benefits regarding recidivism).").

Plaintiffs' Motion while this litigation advances. As such, the Court concludes that Plaintiffs have not made a clear showing that an injunction is in the public interest. Therefore, the Court denies Plaintiffs' Motion for Preliminary Injunction [Doc. #17].

IV.     CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Amended Motion to Dismiss and to Intervene as a Matter of Right [Doc. #30] is hereby GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Amended Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED as to Plaintiffs' equal protection claim and procedural due process claims. Furthermore, Defendants' Amended Motion to Dismiss pursuant to Rule 12(b)(6) is also GRANTED to the extent that Plaintiffs attempt to bring an as-applied overbreadth claim, an overbreadth claim based on rights other than those of free speech and expression, and an overbreadth claim as to § 14-208.18(a)(1).

However, Defendants' Amended Motion to Dismiss pursuant to Rule 12(b)(6) is DENIED as to Plaintiffs' overbreadth challenge to § 14-208.18(a)(2) and § 14-208.18(a)(3) with regard to free speech and expression. Defendants' Amended Motion to Dismiss pursuant to Rule 12(b)(6) is also DENIED as to Plaintiffs' vagueness challenge to all three subsections of § 14-208.18(a). In addition, for the reasons stated herein, Defendants' Amended Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(2) is DENIED.

Finally, IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction [Doc. #17]

is DENIED.

This, the 22nd day of August, 2014.

United States District Judge