IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN DOEs 1-5,               )
                             )
                             )
            Plaintiffs,      )
         v.                  )          1:13CV711
                             )
                             )
ROY A. COOPER III, et al.,   )
                             )
            Defendants.      )


<u>MEMORANDUM OPINION AND ORDER</u>


BEATY, District Judge.

 This matter is before the Court on Plaintiffs' Motion for Summary Judgment [Doc. #52] and Defendants' Motion for Summary Judgment [Doc. #49]. Plaintiffs, John Does 1 through 5, seek an injunction prohibiting Defendants, North Carolina Attorney General Roy Cooper and the North Carolina District Attorneys, from enforcing N.C. Gen. Stat. § 14-208.18(a). This statute prohibits some registered sex offenders from being in three types of areas associated with the presence of minors. Plaintiffs argue that the statute violates the Due Process Clause and the First Amendment. Defendants, however, argue that the statute is constitutional and seek dismissal of the Plaintiffs' claims.

 For the reasons discussed more fully below, the Court holds that the first two parts of the statute, N.C. Gen. Stat. § 14-208.18(a)(1) and (a)(2), are not unconstitutionally vague. The Court holds that the third part of the statute, N.C. Gen. Stat. § 14-208.18(a)(3), is unconstitutionally vague and therefore the Court will permanently enjoin Defendants from

enforcing that part of the statute against Plaintiffs or any other similarly situated person.  Given

the disputed facts on the record, the Court is currently unable to determine whether N.C. Gen.

Stat. § 14-208.18(a)(2) is unconstitutionally overbroad and will leave this issue for determination

at trial.  Hence, the Court will grant in part and deny in part Plaintiffs' Motion for Summary

Judgment and will grant in part and deny in part Defendants' Motion for Summary Judgment.

I.      BACKGROUND

Plaintiffs are North Carolina residents who are required to register as sex offenders under

North Carolina law.[1]  Some individuals required to register as sex offenders in North Carolina

---

[1] N.C. Gen. Stat. § 14-208.7 requires that North Carolina residents with a "reportable conviction" register as sex offenders.  N.C. Gen. Stat. § 14-208.7(a).  N.C. Gen. Stat. § 14-208.6(4) defines a "reportable conviction" as:

> a. A final conviction for an offense against a minor, a sexually violent offense, or an attempt to commit any of those offenses unless the conviction is for aiding and abetting.  A final conviction for aiding and abetting is a reportable conviction only if the court sentencing the individual finds that the registration of that individual under this Article furthers the purposes of this Article as stated in G.S. 14-208.5.

> b. A final conviction in another state of an offense, which if committed in this State, is substantially similar to an offense against a minor or a sexually violent offense as defined by this section, or a final conviction in another state of an offense that requires registration under the sex offender registration statutes of that state.

> c. A final conviction in a federal jurisdiction (including a court martial) of an offense, which is substantially similar to an offense against a minor or a sexually violent offense as defined by this section.

> d. A final conviction for a violation of G.S. 14-202(d), (e), (f), (g), or (h), or a second or subsequent conviction for a violation of G.S. 14-202(a), (a1), or (c), only if the court sentencing the individual issues an order pursuant to G.S. 14-202(l) requiring the individual to register.

2

are subject to location restrictions pursuant to N.C. Gen. Stat. § 14-208.18, which prohibits

where these individuals can "knowingly be."[2] Section 14-208.18(a) makes it a crime for these

---

e. A final conviction for a violation of G.S. 14-43.14, only if the court sentencing the individual issues an order pursuant to G.S. 14-43.14(e) requiring the individual to register.

N.C. Gen. Stat. § 14-208.6(4). An amendment to the law defining "sexually violent offenses" took effect on December 1, 2015. See N.C. Session Law 2015-181 §§ 32, 48. As of that date, "sexually violent offenses" include the following offenses: attempted rape or sexual offense; first-degree forcible rape; second-degree forcible rape; statutory rape of a child by an adult; statutory rape of a person who is 15 years of age or younger where the defendant is at least six years older; first-degree forcible sexual offense; second-degree forcible sexual offense; statutory sexual offense with a child by an adult; first-degree statutory sexual offense; statutory sexual offense with a person who is 15 years of age or younger where the defendant is at least six years older; sexual activity by a substitute parent or custodian; sexual activity with a student; sexual battery; human trafficking if committed against a minor who is less than 18 years of age; human trafficking if committed against any person with the intent that he or she be held in sexual servitude; subjecting or maintaining a person for sexual servitude; incest between near relatives; employing or permitting minor to assist in offenses against public morality and decency; felonious indecent exposure; first-degree sexual exploitation of a minor; second-degree sexual exploitation of a minor; third-degree sexual exploitation of a minor; taking indecent liberties with children; solicitation of a child by computer or with certain other electronic devices to commit an unlawful sex act; taking indecent liberties with a student; patronizing a prostitute who is a minor or a mentally disabled person; promoting prostitution of a minor or a mentally disabled person; parent or caretaker committing or permitting an act of prostitution with or by a juvenile; and commission or allowing of sexual act upon a juvenile by parent or guardian. The term also includes solicitation or conspiracy to commit any of these offenses, as well as aiding and abetting any of these offenses. See N.C. Gen. Stat. § 14-208.6(5) (effective Dec. 1, 2015). An "offense against a minor" includes a non-parent of the minor victim committing kidnapping, abduction of children, and felonious restraint. "Offense against a minor" also includes a non-parent of the minor victim soliciting or conspiring to commit any of these three offenses, as well as aiding and abetting any of these three offenses. See id. § 14-208.6(1m).

[2] The location restrictions of § 14-208.18(a) do not apply to all individuals required to register as sex offenders under North Carolina law. Rather, they apply only to those sex offenders who have committed any of the following offenses: (1) any offense in Article 7A of Chapter 14 of the N.C. General Statutes; (2) "any federal offense or offense committed in another state, which if committed in this State, is substantially similar to an offense in Article 7A of" Chapter 14; or (3) any offense requiring registration where the victim of the offense was

3

individuals to "knowingly be at any of the following locations":

(1)    On the premises of any place intended primarily for the use, care, or supervision of minors, including, but not limited to, schools, children's museums, child care centers, nurseries, and playgrounds.

(2)    Within 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, places described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public.

(3)    At any place where minors gather for regularly scheduled educational, recreational, or social programs.

N.C. Gen. Stat. § 14-208.18(a).  A violation of any of these location restrictions is a Class H

---

under the age of 16 years at the time of the offense.  N.C. Gen. Stat. § 14-208.18(c) (as amended by N.C. Session Law 2015-62 § 5, effective Dec. 1, 2015).

    The Court notes, however, that as part of a statutory recodification, all of the offenses previously listed under Article 7A are now codified under Article 7B.  See N.C. Session Law 2015-181.  Given that the entirety of Article 7A has been recodified under Article 7B (and therefore Article 7A has no content), the Court assumes, without deciding, that the relevant offenses for purposes of N.C. Gen. Stat. 14-208.18 will be the offenses previously codified under Article 7A and recodified under Article 7B.  See United States v. Childress, 104 F.3d 47, 52 (4th Cir. 1996) ("[T]he plain language of a criminal statute controls, unless . . . a literal reading of the statute would contravene legislative intent."), superseded by statute, Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, 109 Stat. 774 (1995); N.C. Session Law 2015-181 § 47 (permitting Revisor of Statutes to "correct statutory references, as required by this act, throughout the General Statutes").  Specifically, the relevant offenses include first-degree forcible rape (§ 14-27.2 recodified as § 14-27.21); statutory rape of a child by an adult (§ 14-27.2A recodified as § 14-27.23); second-degree forcible rape (§ 14-27.3 recodified as § 14-27.22); first-degree forcible sexual offense (§ 14-27.4 recodified as § 14-27.26); statutory sexual offense with a child by an adult (§ 14-27.4A recodified as § 14-27.28); second-degree forcible sexual offense (§ 14-27.5 recodified as § 14-27.27); sexual battery (§ 14-27.5A recodified as § 14-27.33); sexual activity by a substitute parent or custodian (§ 14-27.7(a) recodified as § 14-27.31); sexual activity with a student (§ 14-27.7(b) recodified as § 14-27.32); and statutory rape of a person who is 15 years of age or younger (§ 14-27.7A recodified as § 14-27.25).

4

felony. Id. § 14-208.18(h).

These restrictions are not absolute: the statute provides some limited exceptions to these restrictions. Section 14-208.18 allows some exceptions for those subject to the location restrictions who are parents or guardians of a minor. Such a parent or guardian can enter a restricted zone in order to provide emergency medical treatment to the minor. Id. § 14-208.18(b). A parent or guardian can also enter school grounds to attend a student conference or for reasons relating to the welfare or transportation of the child, so long as certain notification and supervision requirements are met. See id. § 14-208.18(d). There are also certain exceptions for voting, attending public school, and receiving medical or mental health treatment. See id. § 14-208.18(e)-(g). All five Plaintiffs are subject to the various location restrictions of § 14-208.18 as it is currently being interpreted.

Plaintiff John Doe 1 was convicted in 1995 of one count of receiving material involving the sexual exploitation of a minor in violation of 18 U.S.C. § 2552(a)(2) and served five years in federal prison for that conviction. While in prison, John Doe 1 voluntarily completed the Sex Offender Treatment Program ("SOTP"), which consists of months-long intensive therapy. As of 2003, he was no longer under any type of probation, parole, or supervised release. Prior to 2011, John Doe 1 attended his local church, which contained a monitored child-care center within 300 feet of the main congregation hall. His pastor was "aware of his history" and "approved of" his church attendance. (Am. Compl. [Doc. #28] ¶ 50.) In 2011, an anonymous caller reported John Doe 1's presence at his church's worship service, and he was arrested for violating a subsection of § 14-208.18(a). This charge was ultimately dropped and the District

Attorney allowed John Doe 1 to attend church, subject to an *ad hoc* list of restrictions created solely by the District Attorney in John Doe 1's case, including a prohibition on "assisting" with the worship service and engaging in church activities other than attending the main service. (Id. ¶ 56.) John Doe 1 is also concerned that he cannot go to movie theaters showing a "G" rated movie due to the restrictions in subsection (a)(2). (Doe #1 Interrog. Resps. (Redacted) [Doc. #53-2], at 4.)

Plaintiff John Doe 2 was convicted in 2011 of two counts of misdemeanor sexual battery in violation of N.C. Gen. Stat. § 14-27.5A and was sentenced to five years of probation. "Per stipulation," the terms of John Doe 2's probation do not include any restriction on his ability to attend his minor son's educational or recreational activities. (Am. Compl. [Doc. #28] ¶ 62.) John Doe 2 desires to participate in these activities, but the State has informed John Doe 2 that § 14-208.18(a)'s proscriptions override the lack of restrictions in his probation terms. Furthermore, John Doe 2 is unsure of the meaning or extent of § 14-208.18(a)'s prohibitions. He has been told by his probation officer that he is not permitted in a wide variety of places, including a fast food restaurant with an attached play area, the North Carolina High School State Championship baseball game, the North Carolina State Fair grounds, his two nieces' high school graduation ceremonies, and adult softball league games (because of the field's proximity to playground equipment). (Doe #2 Interrog. Resps. (Redacted) [Doc. #53-3], at 4-6.)

Plaintiff John Doe 3 was convicted in 2002 of committing indecent liberties with a minor in violation of N.C. Gen. Stat. § 14-202.1 and served four years in prison in the North Carolina Department of Adult Corrections. While in prison, John Doe 3 volunteered for, and

6

successfully completed, the state-administered Sex Offender Accountability and Responsibility ("SOAR") program, which consists of approximately 600 hours of therapeutic treatment.[3] Since his release from prison, John Doe 3 has been steadily employed. As part of his current job, he is required to purchase office supplies. The local sheriff's office has advised him that he could be arrested for violating § 14-208.18(a)(2) for shopping in an office supply store that is located within 300 feet of a fast food restaurant that has a children's play area. John Doe 3 is unsure whether he is in violation of the statute by simply driving to work past locations that might be prohibited under § 14-208.18(a)(2). John Doe 3 is also unsure if he can go to the General Assembly because of its proximity to the North Carolina Museum of Natural Sciences (and therefore arguably would be within a restricted zone under subsection (a)(2)) and because children gather at the General Assembly for regularly scheduled programs (and therefore would be within a restricted zone under subsection (a)(3)). (Doe #3 Interrog. Resps. (Redacted) [Doc. #53-4], at 3-4.)[4]

Plaintiff John Doe 4 was convicted in 2007 of attempted solicitation of a minor in violation of N.C. Gen. Stat. § 14-202.3. He received a suspended sentence of 30 months, served 10 weekends in prison as an intermediate punishment, and completed a 30-month term of

---

[3] Plaintiffs allege that the rate of recidivism for SOAR graduates is significantly less than that of non-participants. (Am. Compl. [Doc. #28] ¶ 48.)

[4] Plaintiff John Doe 3's concern with approaching the General Assembly complex due to the proximity of the North Carolina Museum of Natural Sciences may be unfounded. For reasons described in Section III.B.2, the Museum seems to be a place described in § 14-208.18(a)(1) rather than § 14-208.18(a)(2), and therefore does not have the accompanying 300-foot buffer zone. See Information, State v. Hicks, No. 11 CR 224013 (N.C. Dist. Ct. Feb. 23, 2012) [Doc. #53-25] (charging restricted sex offender inside the Museum based upon violation of N.C. Gen. Stat. § 14-208.18(a)(1)).

7

probation. John Doe 4 has undergone sex offender treatment and has maintained steady employment since his conviction. He currently wants to attend church, but is concerned that doing so could subject him to arrest and conviction under § 14-208.18(a)(2) because the church has Sunday School classes for children. He also claims he cannot attend local meetings of his town's aldermen under § 14-208.18(a)(2) and (a)(3) due to the town hall's proximity to the public library (which has a section dedicated to children) and because regularly-scheduled children's activities may occur at the town hall.

Plaintiff John Doe 5 was convicted in 2009 of two counts of misdemeanor sexual battery. He received two suspended 75-day sentences and completed his 18-month supervised probation. The victim in John Doe 5's case was a 30-year-old woman. There have never been any allegations that John Doe 5 has ever engaged in, or has any interest in engaging in, any inappropriate contact with a minor. After his conviction, John Doe 5 was awarded joint custody of his two minor children, but he is unable to participate significantly in his children's education or recreational activities due to the prohibitions of § 14-208.18. Furthermore, John Doe 5 wishes to attend church, and has the permission of his pastor to do so, but is concerned that doing so could subject him to arrest and conviction under § 14-208.18(a)(2) because the church has Sunday School classes for children. John Doe 5 is also concerned about his ability to perform his job under § 14-208.18's restrictions because his employer performs construction contracts that are sometimes inside areas that may be proscribed by the statute, and thus, on those jobs, he is unable to perform his duties as a supervisor.

Plaintiffs have expressed concern and confusion regarding precisely where they are

8

prohibited from going. Many times when the Plaintiffs have asked for clarification, they have received conflicting answers, noncommittal answers, or no answer at all. (See, e.g., Doe #1 Interrog. Resps. (Redacted) [Doc. #53-2], at 5; Doe #2 Interrog. Resps. (Redacted) [Doc. #53-3], at 3-9; Doe #3 Interrog. Resps. (Redacted) [Doc. #53-4], at 3-8; Doe #4 Interrog. Resps. (Redacted) [Doc. #53-5], at 7-9.) Plaintiffs also allege that, as a practical matter, they cannot go to a variety of places, including "libraries, museums, parks, recreation centers, theaters, state or county fairs . . . the General Assembly . . . . religious services, movies, or certain private homes" without violating § 14-208.18 in some respect. (Pls.' Br. Supp. Mot. Summ. J. [Doc. #53], at 18-19.)

## II. PROCEDURAL POSTURE

On August 28, 2013, Plaintiffs commenced this action against North Carolina Governor Pat McCrory, North Carolina Attorney General Roy Cooper, and the District Attorneys in each prosecutorial district in North Carolina. The original Complaint brought claims pursuant to 42 U.S.C. § 1983, alleging that § 14-208.18 is unconstitutionally overbroad and unconstitutionally vague, in violation of Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments of the U.S. Constitution. (Compl. [Doc. #1] ¶¶ 108-13.) Plaintiffs also alleged that § 14-208.18 violates their procedural due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution. (Id. ¶¶ 114-17.) Plaintiffs sought injunctive relief and a declaratory judgment that § 14-208.18 is unconstitutional. (Id. ¶ 118.) On January 13, 2014, Plaintiffs filed an Amended Complaint [Doc. #28] removing Governor McCrory as a defendant, amending factual allegations, and adding a claim for relief on equal protection grounds. Defendants filed an

9

Amended Motion to Dismiss and Motion to Intervene as of Right [Doc. #30] (which incorporated their original Motion to Dismiss [Doc. #8] by reference), seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

In a Memorandum Opinion and Order [Doc. #36], this Court addressed Defendants' Motion to Dismiss and Motion to Intervene as of Right [Doc. #30]. The Court held that the Plaintiffs have standing to bring their claims and denied Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. ([Doc. #36], at 10-16.) The Court also held that the Court has personal jurisdiction over Attorney General Cooper and the North Carolina District Attorneys. (Id. at 16-21.) The Court denied Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim with respect to Plaintiffs' vagueness claim and certain portions of Plaintiffs' overbreadth claim. Specifically, the Court held that the Plaintiffs stated an overbreadth claim upon which relief may be granted only with respect to subsections (a)(2) and (a)(3) and only insofar as Plaintiffs were raising a facial overbreadth challenge based upon their free speech rights. The Court granted Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) with respect to Plaintiffs' overbreadth claim to the extent that Plaintiffs' claim was based upon subsection (a)(1) or rights other than freedom of speech and expression. The Court also granted Defendants' Motion to Dismiss with respect to Plaintiffs' equal protection claim and procedural due process claim. The parties have completed discovery on the remaining issues and the parties' cross motions for summary judgment are now before the Court. (Pls.' Mot. Summ. J. [Doc. #52]; Defs.' Mot. Summ. J. [Doc. #49].)

10

III.    DISCUSSION

A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997).  "In considering a motion for summary judgment, the district court must 'view the evidence in the light most favorable to the' nonmoving party." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting Tolan v. Cotton, __ U.S. __, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) (per curiam)).  A court's belief that the movant would prevail on the merits at trial is insufficient to grant a motion for summary judgment.  Id.  The court cannot make credibility determinations or weigh evidence, and "must disregard all evidence favorable to the moving party . . . that [the finder of fact] would not be required to believe." Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 436 (4th Cir. 2001); see Jacobs, 780 F.3d at 568-69.  However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

B. Vagueness

1. Vagueness Standard

Plaintiffs claim that N.C. Gen. Stat. § 14-208.18(a) in its entirety is unconstitutionally

11

vague in violation of the Due Process Clause.[5]  There is a strong presumption that the acts of

the General Assembly are valid.  See United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32,

83 S. Ct. 594, 597, 9 L. Ed. 2d 561 (1963); Rhyne v. K-Mart Corp., 358 N.C. 160, 167-68, 594

S.E.2d 1, 7 (2004).  However, the Fourteenth Amendment provides that "nor shall any State

deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend.

XIV.  The U.S. Supreme Court has explained that "the Government violates this guarantee by

taking away someone's life, liberty, or property under a criminal law so vague that it fails to give

ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary

enforcement."  Johnson v. United States, __ U.S. __, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569

(2015) (citing Kolender v. Lawson, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903

(1983)).  The Supreme Court has recently clarified that their "holdings squarely contradict the

theory that a vague provision is constitutional merely because there is some conduct that clearly

falls within the provision's grasp."  Johnson, 135 S. Ct. at 2560-61 (emphasis removed).  Instead,

the proper standard is the one enunciated in Kolender and reaffirmed in Johnson.  Namely, in

order to survive a vagueness challenge, a criminal statute must provide fair notice to those

subject to it regarding the nature of the prohibited conduct and must provide sufficiently clear

---

[5] Because the parties dispute the effect of the Court's earlier Order [Doc. #36] upon
Plaintiffs' vagueness claim, (see Mem. of Law Supp. Defs.' Mot. Summ. J. [Doc. #50], at 1-2;
Pls.' Resp. to Defs.' Mot. Summ. J. [Doc. #55], at 4), the Court notes that it is considering
whether any part of § 14-208.18(a) is vague on any grounds.  The Court denied Defendants'
Amended Motion to Dismiss with respect to Plaintiffs' vagueness claim in its entirety.  ([Doc.
#36], at 39-40.)  Hence, the entirety of Plaintiffs' vagueness claim remains for consideration by
the Court.  (Compare id. at 39-40 (denying Motion to Dismiss with respect to vagueness in its
entirety) with id. at 33 (partially granting and partially denying Motion to Dismiss with respect
to overbreadth)).

standards to law enforcement to avoid arbitrary enforcement.

Criminal statutes must have greater precision compared to other statutes. <u>Kolender</u>, 461 U.S. at 358 n.8, 103 S. Ct. at 1859 n.8. However, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 110, 92 S. Ct. 2294, 2300, 33 L. Ed. 2d 222 (1972). Additionally, "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." <u>Nat'l Dairy Prods. Corp.</u>, 372 U.S. at 32, 83 S. Ct. at 597. Furthermore, a statute is not vague because it "may be stringent and harsh." <u>Barsky v. Bd. of Regents</u>, 347 U.S. 442, 448, 74 S. Ct. 650, 654, 98 L. Ed. 829 (1954).

### 2. Vagueness Analysis of Subsections (a)(1) and (a)(2)

The statute states that a restricted sex offender cannot "<u>knowingly</u> be at" one of the restricted zones described in subsections (1) through (3). N.C. Gen. Stat. § 14-208.18(a) (emphasis added). The most natural reading of the statute is to apply the word "knowingly" to all subsequent elements of the crime. <u>See</u> <u>Flores-Figueroa v. United States</u>, 556 U.S. 646, 650, 129 S. Ct. 1886, 1890, 173 L. Ed. 2d 853 (2009). Hence, in order to violate the statute, a restricted sex offender would need to know that he or she is within a restricted zone. <u>See</u> N.C. Gen. Stat. § 14-208.18(a); <u>State v. Armstrong</u>, 775 S.E.2d 926 (Table), No. COA14-765, 2015 WL 4081812, at *6 (N.C. Ct. App. July 7, 2015) ("[T]he State presented sufficient circumstantial evidence . . . to allow the jury to find that defendant knew that the skating rink was a place primarily intended for the use of minors."), <u>appeal docketed</u>, No. 266P15 (N.C. July 31, 2015).

As a result of the "knowingly" requirement, a restricted sex offender who unknowingly

13

enters a restricted zone will not be in violation of the statute so long as he or she leaves the restricted zone immediately upon learning that he or she is in fact in a restricted zone. "At this point, it is well established that associational conditions do not extend to casual or chance meetings." United States v. Loy, 237 F.3d 251, 269 (3d Cir. 2001) (citing Arciniega v. Freeman, 404 U.S. 4, 4, 92 S. Ct. 22, 22, 30 L. Ed. 2d 126 (1971) (per curiam) (interpreting an associational condition to exclude certain casual encounters)).[6] Similarly, a restricted sex offender who accidentally enters a restricted zone will not be in violation of the statute. See id. (interpreting supervised release condition prohibiting unsupervised contact with minors to exclude "casual or unavoidable contact with minors in public places"); Peters-Riemers v. Riemers, 624 N.W.2d 83, 89 (N.D. 2001) (protective order prohibiting husband from coming within 100 yards of any of wife's residences was not vague and would not be violated if husband "unwittingly intrudes within 100 yards of some unknown and unknowable residence of" wife). Consequently, a restricted sex offender's accidental intrusion into a restricted zone is not criminal so long as he or she leaves the area immediately upon learning that he or she is within a restricted zone. Cf. Loy, 237 F.3d at 269 (deliberately seeking out impermissible contacts with minors causes such contacts to "cease to be 'casual' or 'unavoidable'").

The Court now turns to the subsections of N.C. Gen. Stat. § 14-208.18(a) which define the restricted zones. "It is, of course, a fundamental canon of statutory construction that statutes which are *in pari materia*, *i.e.*, which relate or are applicable to the same matter or subject,

---

[6] An "associational condition" is a prohibition against a person associating with specific types of people, such as minors, felons, gang members, etc.

. . . must be construed together in order to ascertain legislative intent." <u>Carver v. Carver</u>, 310 N.C. 669, 674, 314 S.E.2d 739, 742 (1984). All three subsections of § 14-208.18(a) relate to defining the restricted zones and therefore should be construed together as part of a single legislative framework. In this way, the first two subsections can be read as covering single-use properties (subsection (a)(1)) and mixed-used properties (subsection (a)(2)). In contrast to subsections (a)(1) and (a)(2), the third subsection, subsection (a)(3), covers locations associated with the regular presence of minors, but that are not necessarily intended primarily for the use, care, or supervision of minors.

Specifically, subsection (a)(1) covers single-use or stand-alone facilities which are intended primarily for the use, care, or supervision of minors. The best examples are those included in the statute itself: "schools, children's museums, child care centers, nurseries, and playgrounds." N.C. Gen. Stat. § 14-208.18(a)(1). The entire grounds ("premises") upon which these specific facilities ("place") are located are off-limits under subsection (a)(1). In other words, for example, a restricted sex offender is prohibited from not only a school building itself, but also the parking lot of the school or a storage shed outside the school, so long as those areas are on the school premises. In the ordinary case,[7] restricted sex offenders will not have a legitimate reason for being in these locations.

In contrast, subsection (a)(2) is focused on mixed-use facilities and locations intended primarily for the use, care, or supervision of minors when the location is not on property that is primarily intended for the use, care, or supervision of minors. In the ordinary case, restricted

---

[7] Subject to the statutory exceptions. <u>See</u> N.C. Gen. Stat. § 14-208.18(b), (d)-(g).

sex offenders may have very legitimate reasons for being on properties that include smaller portions dedicated to minors. Such reasons might include shopping, eating, exercising, attending religious services, or any of the other myriad activities in which humans engage. By drawing this distinction and including the 300-foot buffer zone, the General Assembly addressed the competing interests of allowing restricted sex offenders to go to locations where they have reason to be and keeping restricted sex offenders away from locations dedicated to minors. Restricted sex offenders are therefore permitted to go on premises that may have portions dedicated to the use, care, or supervision of minors, but they can only go on those parts of the premises which are at least 300 feet away from those portions dedicated to minors.[8]

This interpretation is in line with the standard dictionary definitions of "premises" and "place" or "location." In this context, the term "place" means "[a]n area occupied or set aside for a specific person or purpose." *Place*, Webster's II New College Dictionary 841 (1999). Similarly, "location" means "[a] place where something is or might be located : SITE." *Location*, Webster's II New College Dictionary, 643. The term "premises" means "[a] house or building, along with its grounds." *Premises*, Black's Law Dictionary 1219 (8th ed. 2004). See also *Premises*, Webster's II New College Dictionary 872 ("Land and the buildings on it.").

Because the only possible antecedent of the term "the place" in subsection (a)(2) is "location," the terms "place" and "location" are properly viewed as interchangeable within

---

[8] The 300-foot buffer zone can extend beyond the "premises" on which the "location intended primarily for the use, care, or supervision of minors . . . is located." N.C. Gen. Stat. 14-208.18(a)(2). The latter portion of subsection (a)(2) only describes the types of premises upon which an (a)(2) location might be found rather than limiting the extent of the 300-foot buffer zone.

subsection (a)(2). Though this contradicts the usual rule that different words used within the same sentence have different meanings, 2A Norman Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 46:6 (7th ed. 2015), there is no reasonable alternative interpretation that accommodates this rule. Additionally, Plaintiffs and Defendants agree that "location" is synonymous with "place" as that term is used in subsection (a)(2). (Pls.' Resp. to Defs.' Mot. Summ. J. [Doc. #55], at 6; Mem. of Law Supp. Defs.' Mot. Summ. J. [Doc. #50], at 7.)

In summary, subsection (a)(1) applies where the place and premises in question are both primarily intended for the use, care, or supervision of minors. Restricted sex offenders are barred from the entire premises under subsection (a)(1). However, subsection (a)(2) applies where the premises in question is not intended primarily for the use, care, or supervision of minors, but a portion of that premises (the "place") is intended primarily for the use, care, or supervision of minors. Restricted sex offenders can go onto the premises, but they cannot go within 300 feet of the portion of the property intended primarily for the use, care, or supervision of minors (*i.e.*, the "place").

Because subsection (a)(2) includes the 300-foot buffer zone but subsection (a)(1) does not, a restricted sex offender needs to be able to distinguish between (a)(1) and (a)(2) locations. Otherwise, the sex offender might believe that he or she is properly within 300 feet of an (a)(1) location (which is permitted) when in fact he or she is impermissibly within an (a)(2) 300-foot buffer zone. Though there will be marginal cases where the distinction will be difficult to make, most instances will clearly fall within the ambit of either (a)(1) or (a)(2). Subsection (a)(2) also

17

clarifies that "places" which are on "premises" which constitute a "mall[], shopping center[], or other property open to the public" will be considered (a)(2) places with their corresponding 300-foot buffer zone. Additionally, as explained above, the "knowingly" *mens rea* requirement makes accidental encroachment into a subsection (a)(2) restricted zone noncriminal. See *supra* pp. 13-14.

Plaintiffs' argument that a "place" under (a)(1) or "location" under (a)(2) is vague because it might be construed to include something such as a bathroom baby-changing station is unavailing. Though a baby-changing station is certainly used for the care of minors, it is dissimilar to the examples provided by the General Assembly in the statute: "schools, children's museums, child care centers, nurseries, and playgrounds." The examples clarify that the legislature contemplated a space larger than the top of a wall-mounted baby-changing station. Cf. Alabama v. North Carolina, 560 U.S. 330, 341, 130 S. Ct. 2295, 2306, 176 L. Ed. 2d 1070 (2010) (illustrative applications of the general principle inform meaning of a broad term). Moreover, all of the statutory examples are places where minors are likely to be present, yet not necessarily closely monitored by adults or even monitored at all. Cf. Wilfong v. Commonwealth, 175 S.W.3d 84, 101 (Ky. Ct. App. 2004) (conditional discharge condition banning sex offender from "parks, schools, day care centers, swimming pools, beaches, theaters, or other places where children congregate" is not vague and these locations are "places where he would likely have access to often unsupervised groups of children"). A child at a baby-changing station will almost always be accompanied by a supervising adult, significantly reducing the General Assembly's concern with the danger of permitting restricted sex offenders in or near places associated with

18

the presence of minors. N.C. Gen. Stat. § 14-208.5 ("The General Assembly recognizes that sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest.").

Plaintiffs also argue that it is unclear how to measure the 300 feet in the context of subsection (a)(2), but the plain language of the statute is clear in this regard. Once the initial "location" (meaning, the area "intended primarily for the use, care, or supervision of minors" as opposed to the larger "premises") is determined, simply measure 300 feet in all directions from the edges of that location. See N.C. Gen. Stat. § 14-208.18(a)(2) ("It shall be unlawful for any person required to register under this Article, if the offense requiring registration is described in subsection (c) of this section, to knowingly be . . . Within 300 feet of any location intended primarily for the use care or supervision of minors . . . ."); United States v. Nieves-Castaño, 480 F.3d 597, 602-04 (1st Cir. 2007) (discussing how to measure distance from a school and holding statute was not vague based upon lack of specific statutory methods for measuring distance). The initial location coupled with the 300-foot buffer zone comprise the restricted zone under subsection (a)(2). Certainly one can conjure hypothetical scenarios involving a children's museum at the top of a skyscraper, a church with a nursery that has extraordinarily thick walls, or a playground in a public park with no obvious delineation between where the playground ends and the park generally begins. But the prohibition of restricted sex offenders getting close to or entering a playground is not void for vagueness merely because some playgrounds aren't surrounded by fences. The Fourth Circuit "has declined to use such 'hypertechnical theories as

19

to what the statute covers' as a basis for holding a regulation unconstitutionally vague." Green v. City of Raleigh, 523 F.3d 293, 306 (4th Cir. 2008) (quoting Hill v. Colorado, 530 U.S. 703, 733, 120 S. Ct. 2480, 2498, 147 L. Ed. 2d 597 (2000)).

Plaintiffs also suggest that the statute is vague because the statute is unclear regarding whether restricted sex offenders are prohibited from entering the restricted zones only when minors are present, as evidenced by some District Attorneys' interpretations of the statute. (Pls.' Br. Supp. Mot. Summ. J. [Doc. #53], at 13-14.) Yet Plaintiffs concede that "the text of the statute seems to indicate that its restrictions apply at all times, regardless of [the] presence [of minors]." (Id. at 13.) Furthermore, though not dispositive of this issue, the Court notes that when one Senator was asked about this concern, he said that "if a sexual offender walks across a school yard late at night, with no children there, it would be a Class H felony." N.C. Gen. Assemb., Senate Judiciary I Comm. (Civil), Minutes for June 3, 2008, 10 a.m. Meeting, at 2 (citing Senator Tony Rand). Therefore, the statute applies regardless of the presence of minors and is not vague in this regard.

Finally, Plaintiffs argue that subsections (a)(1) and (a)(2) are both vague because they include the phrase "intended primarily for"[9] and it is unclear whether an objective or subjective intent standard applies. In the ordinary case, determining primary intent is an objective inquiry. See Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 114 S. Ct. 1747, 128 L. Ed. 2d 539

---

[9] Subsection (a)(1) prohibits restricted sex offenders from being "[o]n the premises of any place intended primarily for the use, care, or supervision or minors . . . ." while subsection (a)(2) prohibits restricted sex offenders from being "[w]ithin 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors . . . ." (emphasis added).

(1994).  "[T]he 'primarily intended' use of a multi-use facility depends on the likely 'use [of] customers generally.'"  Armstrong, 2015 WL 4081812, at *5 (quoting Posters 'N' Things, 511 U.S. at 521 n.11, 144 S. Ct. at 1752 n.11).  Additionally, "primary" means "first in rank or importance."  Id. (quoting Sultan v. State Bd. of Exam'rs of Practicing Psychologists, 121 N.C. App. 739, 745, 468 S.E.2d 443, 446 (N.C. Ct. App. 1996)).

Two cases decided by the North Carolina Court of Appeals demonstrate that the objective standard is not vague and can be constitutionally applied in the ordinary case.  In State v. Simpson, 763 S.E.2d 1 (N.C. Ct. App. 2014), Simpson was convicted of violating § 14-208.18(a)(2) for sitting on a park bench in close proximity to a batting cage and ball field.  Id. at 2.  On appeal, Simpson argued "that the State failed to present substantial evidence that the batting cages and ball fields constituted locations that were primarily intended for use by minors."  Id. at 5.  The Court of Appeals agreed and reversed the trial court's order denying Simpson's motion to dismiss, explaining that the "testimony established that these places were sometimes used by minors" and "that the State's evidence rises only to a level of conjecture or suspicion that the batting cages and ball field were locations *primarily intended* for the use, case, or supervision of minors."  Id. at 6.

In Armstrong, Armstrong appealed his conviction for violation of § 14-208.18(a)(1) for being on the premises of a skating rink.  Armstrong, 2015 WL 4081812, at *1.  In part, Armstrong argued that the law was unconstitutionally vague as applied in that it provided "no reasonable guidance for him to determine whether the skating rink—which [Armstrong] characterizes as a mixed use non-enumerated private business that seeks and enjoys the

21

patronage of both adults and children—was a place where he was not allowed." <u>Id.</u> at *5 (internal quotation marks and brackets omitted). In his case, Armstrong "bore the burden of showing either that the statute provides inadequate warning as to the conduct it governs or is incapable of uniform judicial administration." <u>Id.</u> (citation and internal quotation marks omitted). The Court of Appeals held that Armstrong "failed to meet his burden in challenging the vagueness of the statute as applied to him" based upon the significant number of children who used the facility and the presence of child-oriented areas at the business, including a "party area," "a big jungle gym" with "slides, nets, ropes, just things for kids to play on," a "game room," and a prize shop that included "candy, small inflatables, toy cars, . . . a little dartboard, puddy [sic] . . . that you can make funny noises with [, and] slinkys." <u>Id.</u> The Court of Appeals "conclude[d] that this uncontradicted evidence establishe[d] the skating rink as a place overwhelmingly intended for the use of minors" and that "any 'multi-use' character attributable to the skating rink was marginal." <u>Id.</u> Therefore, the Court of Appeals held that § 14-208.18 was not vague as applied to Armstrong. <u>Id.</u>

Though <u>Simpson</u> and <u>Armstrong</u> are just two examples of the application of the "intended primarily for" standard, Plaintiffs have offered no reason for the Court to believe that this objective standard cannot be applied in the majority of other cases. While there may be marginal cases where application of this standard may be difficult, these isolated instances do not render the statute vague. <u>See</u> <u>Nat'l Dairy Prods. Corp.</u>, 372 U.S. at 32, 83 S. Ct. at 597. Therefore, the inclusion of the phrase "intended primarily for" in subsections (a)(1) and (a)(2) does not cause either subsection to be vague.

22

In short, subsections (a)(1) and (a)(2) provide sufficient notice to those subject to the law regarding where they are prohibited to go. The existence of a few marginal cases where the precise reach of the law is unclear does not make subsections (a)(1) and (a)(2) vague. As the Fourth Circuit aptly summarized,

> Striking down ordinances (or exceptions to the same) as facially void for vagueness is a disfavored judicial exercise. Nullification of a law in the abstract involves a far more aggressive use of judicial power than striking down a discrete and particularized application of it. Of course there will be hard cases under any law. And of course all the particular applications of any general standard will not be immediately apparent. That is no reason, however, for courts to scrap altogether the efforts of the legislative branch. It is preferable for courts to demonstrate restraint by entertaining challenges to applications of a law as those challenges arise.

Schleifer ex. rel. Schleifer v. City of Charlottesville, 159 F.3d 843, 853 (4th Cir. 1998).

Similarly, this is not a situation where the legislature has failed to provide such minimal guidelines that may "permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." Kolender, 461 U.S. at 358, 103 S. Ct. at 1858 (citation, internal quotation marks, and brackets omitted). Plaintiffs have asserted that some district attorneys and law enforcement officials read their own additional exceptions into the statute. (See Pls.' Br. Supp. Mot. Summ. J. [Doc. #53], at 11-14.) Plaintiffs therefore argue that this shows that the statute is confusing and subject to arbitrary enforcement. (Id.) But this only demonstrates that these individuals misapplied the plain language of subsections (a)(1) and (a)(2), not that the subsections are themselves vague. Perhaps one could imagine that these exceptions

were added because these individuals perceived the statute as excessively broad.[10]  But as the Court has already noted, the fact that a law is stringent or harsh does not make it vague—it merely makes it stringent or harsh.  Barsky, 347 U.S. at 448, 74 S. Ct. at 654.

Along these lines, however, the interpretation of a North Carolina statute must avoid absurd results.  As the North Carolina Supreme Court has explained, "Where a literal interpretation of the language of a statute will lead to absurd results or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." State v. Beck, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (quoting Mazda Motors of Am., Inc. v. Sw. Motors, Inc., 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)).

With this in mind, certainly the General Assembly could not have intended to criminalize fleeting presence by a restricted sex offender within a subsection (a)(2) buffer zone on the way to a permissible location when the restricted sex offender's presence presents no risk to minors at all.  For example, it is the Court's estimation that the General Assembly could not have intended to criminalize a restricted sex offender driving to an unrestricted location on a public roadway that happens to go through a subsection (a)(2) buffer zone.  This absurdity is reinforced by the fact that if one were to read subsection (a)(2) as prohibiting such presence, a restricted sex offender could drive on a public road adjacent to an elementary school, but not on a public road adjacent to a church with a nursery; the school, as a subsection (a)(1) place, would have no

---

[10] The Court is not reaching the question of overbreadth at this point in this Opinion and instead will address this concern in section III.C below.

buffer zone while the church nursery would be a subsection (a)(2) place with a 300-foot buffer zone.

At least one court has held that a similar supervised release restriction included even driving within a restricted zone.  United States v. Stults, 575 F.3d 834, 852 (8th Cir. 2009).  In that case, Stults was convicted of possessing "child pornography after having previously been convicted of attempted sexual assault of a child in the second degree." Id. at 837.  As part of his sentence, the district court imposed "a lifetime of supervised release" which included the condition that Stults not "come within 500 feet of schools, school yards, parks, arcades, playgrounds, amusement parks, or other places used primarily by children under the age of 18 unless approved in advance and in writing by the probation officer." Id. at 837, 841.  The district court made clear that this condition included driving within the restricted zones. Id. at 852.  The Eighth Circuit affirmed the imposition of the condition because it was reasonably necessary to fulfill federal sentencing goals because it protected children, imposed no greater restraint on liberty than necessary, and Stults was able to seek permission from his probation officer to enter restricted zones. Id. at 852-53.

Unlike in Stults, in this case there is no permission mechanism; a restricted sex offender could scarcely drive through any inhabited area of the state without committing a felony if subsection (a)(2) was interpreted to be so absurdly extensive.  Consequently, solely as a matter of statutory interpretation, the Court holds that the statute does not prohibit fleeting presence by a restricted sex offender within an (a)(2) buffer zone.

This exception, however, is narrow.  Loitering within a subsection (a)(2) buffer zone or

repeatedly entering and exiting a subsection (a)(2) buffer zone (*e.g.*, by "circling the block" in a vehicle) is not permitted.[11]  Additionally, this exception would not apply to subsection (a)(1) because restricted sex offenders will rarely have a valid reason for being in such places, as explained above.  In summary, the Court holds that N.C. Gen. Stat. § 14-208.18(a)(1) and (a)(2) are not unconstitutionally vague.

### 3. Vagueness Analysis of Subsection (a)(3)

N.C. Gen. Stat. § 14-208.18(a)(3) prohibits presence by restricted sex offenders "[a]t any place where minors gather for regularly scheduled educational, recreational, or social programs." In contrast to subsections (a)(1) and (a)(2), subsection (a)(3) is indeed unconstitutionally vague because it does not "define the criminal offense with sufficient definiteness [such] that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  See Kolender, 461 U.S. at 357, 103 S. Ct. at 1858.

The first problem stems from the language "regularly scheduled."  N.C. Gen. Stat. § 14-208.18(a)(3).  The term "regular" means "[h]appening at fixed intervals : PERIODIC."  *Regular*, Webster's II New College Dictionary 934; see also *Periodic*, id. 818 ("Taking place now and then : INTERMITTENT.").  Even if a restricted sex offender or law enforcement officer knew precisely how often and where the "scheduled . . . programs" took place, the statute provides

---

[11] In State v. Stark, 802 N.W.2d 165, 167, 172-73 (S.D. 2011), the South Dakota Supreme Court held that there was sufficient evidence to support a conviction where the defendant drove for approximately 20 minutes around a park where children were present.  The statute prohibited sex offenders from remaining within 500 feet of any school, public park, public playground, or public pool "under circumstances that a reasonable person would determine is for the primary purpose of observing or contacting minors."  Id. at 168-69 (quoting S.D. Codified Laws § 22-24B-22(2)).

no principled standard at all for determining whether such programs are "regularly scheduled." See Doe v. Snyder, __ F. Supp. 3d __, No. 12-11194, 2015 WL 1497852, at *10-14 (E.D. Mich. Mar. 31, 2015) (holding unconstitutionally vague a statute requiring registered sex offenders to report when sex offender "begins to regularly operate any vehicle"), appeal docketed, No. 15-1536 (6th Cir. May 7, 2015).

Notably, subsection (a)(3) provides no examples to guide restricted sex offenders or law enforcement as to how frequently the programs would need to occur in order to be "regularly scheduled." In contrast, subsection (a)(1) provides examples of (a)(1) "places" and subsection (a)(2) provides examples of (a)(2) "premises" upon which a "location" or "place" might be. This case is distinguishable from other cases holding restrictions that included the word "regularly" or variants of "frequently" to be not vague because those restrictions included examples to clarify which locations were restricted. See, e.g., United States v. Taylor, 338 F.3d 1280, 1286 (11th Cir. 2003) (supervised release condition prohibiting "entering into any area where children frequently congregate, including schools, day care centers, theme parks, playgrounds, etc." is not vague); Britt v. State, 775 So. 2d 415, 416-17 (Fla. Dist. Ct. App. 2001) (conditions of community control prohibiting sex offender from living near or working at a "school, daycare center, park, playground, or other place where children regularly congregate" is not vague); State v. Simonetto, 606 N.W.2d 275, 276 (Wis. Ct. App. 1999) (probation condition prohibiting presence at "any area frequented by persons under age 18, including but not limited to, schools, day care centers, playgrounds, parks, beaches, pools, shopping malls, theaters, or festivals without prior approval from [sex offender's] agent" is not vague). But see United States v. Paul,

274 F.3d 155, 160, 166-67 (5th Cir. 2001) (supervised release condition requiring sex offender to avoid "places, establishments, and areas frequented by minors" is not vague); <u>United States. v. Feigenbaum</u>, 99 F. App'x 782, 784 (9th Cir. 2004) (supervised release condition prohibiting presence at "places where minors are known to frequent" is not vague).[12]  Indeed, the restrictions described in those cases are more appropriately viewed as being similar to subsections (a)(1) and (a)(2) rather than subsection (a)(3) because they include some examples that would likely be considered "places" under subsections (a)(1) and (a)(2).  Additionally, Defendants have provided no clarification regarding how often such programs would need to occur in order to be considered "regularly scheduled."  As Defendant District Attorney Todd Williams correctly explained, the "[s]tatute gives no clear guidance" regarding the frequency required.  (Todd Williams Dep. (Cited Portions) [Doc. #53-14], at 39-40.)

As a second problem, the phrase "where minors gather" is also vague.  <u>Carswell v. State</u>, 721 N.E.2d 1255, 1260 (Ind. Ct. App. 1999) (portion of probation condition prohibiting sex offender from residing "within two blocks of . . . any area where children congregate" is vague when considered by itself and full condition prohibited "residing within two blocks of a school, playground or any area where children congregate").  For example, subsection (a)(3) does not explain how many minors must gather at the place.  Subsection (a)(3) also does not explain whether a place where mixed groups of minors and adults gather, such as a community college

---

[12] Though the opinion in <u>Feigenbaum</u> is somewhat unclear regarding whether the condition at issue there included examples, a review of the judgment in that case clarifies that no examples were included.  <u>See</u> Judgment at 4, term 9, <u>United States v. Feigenbaum</u>, No. CR-01-419 (W.D. Wash. Oct. 7, 2002).

that has some high school students or a church with a congregation of adults and minors, would be considered a restricted zone under subsection (a)(3). As was the case with the term "regularly scheduled" discussed above, subsection (a)(3) is distinguishable from other instances where similar formulations have been held to be not vague because those cases involved general language that was accompanied by examples rather than general language standing alone. See, e.g., United States v. Zobel, 696 F.3d 558, 575 (6th Cir. 2012) (supervised release condition prohibiting defendant "from loitering where minors congregate, such as playgrounds, arcades, amusement parks, recreation parks, sporting events, shopping malls, swimming pools, etc." is not vague); Taylor, 338 F.3d at 1286 (supervised release condition prohibiting "entering into any area where children frequently congregate, including schools, day care centers, theme parks, playgrounds, etc." is not vague); United States v. Ristine, 335 F.3d 692, 696-97 (8th Cir. 2003) (supervised release condition barring sex offender "from places where minor children under the age of 18 congregate, such as residences, parks, beaches, pools, daycare centers, playgrounds, and schools" is not vague because condition only applies to "those residences, parks, etc., where children under the age of eighteen actually congregate"); Wilfong, 175 S.W.3d at 101 (conditional discharge condition banning sex offender from "parks, schools, day care centers, swimming pools, beaches, theaters, or other places where children congregate" is not vague); Britt, 775 So. 2d at 416-17 (conditions of community control prohibiting living near or working at a "school, daycare center, park, playground, or other place where children regularly congregate" is not vague); Simonetto, 606 N.W.2d at 276 (standard sex offender probation condition prohibiting presence at "any area frequented by persons under age 18, including but not limited to, schools,

29

day care centers, playgrounds, parks, beaches, pools, shopping malls, theaters, or festivals without prior approval from [sex offender's] agent" is not vague); People v. Delvalle, 31 Cal. Rptr. 2d 725, 730-32 (Cal. Ct. App. 1994) (probation condition prohibiting presence at "any places where minor children congregate" is not vague when trial court included examples of "elementary school, day care, [and] parks."). But see Paul, 274 F.3d at 160, 166-67 (supervised release condition requiring sex offender to avoid "places, establishments, and areas frequented by minors" is not vague); Feigenbaum, 99 F. App'x at 784 (supervised release condition prohibiting presence at "places where minors are known to frequent" is not vague). Here, with respect to subsection (a)(3), those subject to the prohibition and those charged with enforcing it are left without meaningful guidance and must "necessarily guess" as to the statute's meaning. Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688, 29 L. Ed. 2d 214 (1971) (citation and internal quotation marks omitted).

Though some places could clearly be identified as being restricted under subsection (a)(3), this fact is not enough to remove the vagueness as to the scope of the application of subsection (a)(3). As the Supreme Court explained in Johnson:

> [A]lthough statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. For instance, we have deemed a law prohibiting grocers from charging an 'unjust and unreasonable rate' void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. We have similarly deemed void for vagueness a law prohibiting people on sidewalks from 'conduct[ing] themselves in a manner annoying to persons passing by'—even though spitting in someone's face would surely be annoying.

Johnson, 135 S. Ct. at 2560-61 (internal citations omitted). Similarly here, with respect to

30

subsection (a)(3), though places where minors gather for educational, recreational, or social programs that occur hourly or daily would fall within the ambit of the statute, there is too wide a range of situations which would cause "men of common intelligence . . . [to] necessarily guess at [the statute's] meaning," <u>Coates</u>, 402 U.S. at 614, 91 S. Ct. at 1688 (citation and internal quotation marks omitted), or allow an essentially "standardless sweep" by law enforcement, <u>Kolender</u>, 461 U.S. at 358, 103 S. Ct. at 1858 (citation and internal quotation marks omitted). Consequently, N.C. Gen. Stat. § 14-208.18(a)(3) must be held void for vagueness.

Crucially, by holding subsection (a)(3) unconstitutionally vague, the Court is not stating that sex offenders have a right to go to places "where minors gather for regularly scheduled educational, recreational, or social programs." The Court merely holds that the prohibition contained in subsection (a)(3), as it is presently worded, cannot stand due to its vagueness. The Court notes that nothing in this ruling prevents the General Assembly from amending the statute or enacting entirely new restrictions that comply with constitutional requirements.

In summary, subsections (a)(1) and (a)(2) of N.C. Gen. Stat. § 14-208.18 are not unconstitutionally vague. However, for the reasons stated above, N.C. Gen. Stat. § 14-208.18(a)(3) is unconstitutionally vague in violation of the Due Process Clause. As a result, the Court will permanently enjoin Defendants from enforcing N.C. Gen. Stat. § 14-208.18(a)(3) against any of the named John Doe Plaintiffs or any other similarly situated person.

C. Overbreadth Analysis of Subsection (a)(2)

Because the Court has found N.C. Gen. Stat. § 14-208.18(a)(2) to not be unconstitutionally vague, the Court will now consider whether N.C. Gen. Stat. § 14-208.18(a)(2)

31

is overbroad.[13]  In general, "[t]o succeed in a typical facial attack, [a party] would have to establish 'that no set of circumstances exists under which [the statute] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" United States v. Stevens, 559 U.S. 460, 472, 130 S. Ct. 1577, 1587, 176 L. Ed. 2d 435 (2010) (internal citations omitted).  Although facial challenges are generally strongly disfavored, the doctrine of overbreadth operates as an exception to the standard approach to facial challenges, "because the 'statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" Hardwick ex rel. Hardwick v. Heyward, 711 F.3d 426, 441 (4th Cir. 2013) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S. Ct. 2908, 2916, 37 L. Ed. 2d 830 (1973)).  If a party shows that the challenged law "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep," then the overbreadth doctrine invalidates "*all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." Virginia v. Hicks, 539 U.S. 113, 118-19, 123 S. Ct. 2191, 2196, 156 L. Ed. 2d 148 (2003) (internal citation and quotation marks omitted).

    With respect to overbreadth challenges, "'[t]he Government . . . bears the burden of showing that the remedy adopted does not 'burden substantially more speech than is necessary

---

[13] The Court previously held that N.C. Gen. Stat. § 14-208.18(a)(1) is not overbroad and dismissed Plaintiffs' claim in that respect. (Mem. Op. & Order [Doc. #36], at 31-32.)  Because the Court has already determined that § 14-208.18(a)(3) is unconstitutionally vague, the Court need not consider whether § 14-208.18(a)(3) is overbroad.  Consequently, the Court will deny as moot the parties' Motions for Summary Judgment with respect to subsection (a)(3) overbreadth.

to further the government's legitimate interests.'" Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 665, 114 S. Ct. 2445, 2470, 129 L. Ed. 2d 497 (1994) (plurality opinion) ((quoting Ward v. Rock Against Racism, 491 U.S. 781, 799, 109 S. Ct. 2746, 2758, 105 L. Ed. 2d 661 (1989)). The parties agree that the subsection (a)(2) restriction is content-neutral. (Pls.' Br. Supp. Mot. Summ. J. [Doc. #53], at 16 n.2; Mem. Law Supp. Defs.' Mot. Summ. J. [Doc. #50], at 17.) See also McCullen v. Coakley, __ U.S. __, 134 S. Ct. 2518, 2530-32, 189 L. Ed. 2d 502 (2014). Therefore, in order for the statute to be upheld, the Government must merely show that the statute is "narrowly tailored to serve a significant governmental interest and . . . leave[s] open ample alternative channels for communication of the information." Ross v. Early, 746 F.3d 546, 552 (4th Cir. 2014) (quoting Ward, 491 U.S. at 791, 109 S. Ct. at 2753).

Narrow tailoring in this context consists of two prongs. A statute "is narrowly tailored . . . if it 'promotes a substantial government interest that would be achieved less effectively absent the regulation' and does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" Id. at 552-53 (quoting Ward, 491 U.S. at 799, 109 S. Ct. at 2758). However, the statute "need not be 'the least restrictive or least intrusive means' of serving the government's significant interests." Id. at 553 (quoting Ward, 481 U.S. at 798, 109 S. Ct. at 2757-58). See also McCullen, 134 S. Ct. at 2535. Instead, in order for an overbreadth challenge to succeed, the statute's overbreadth must be both "real" and "substantial," as assessed "in relation to the statute's plainly legitimate sweep." Hill, 530 U.S. at 732, 120 S. Ct. at 2498 (quoting Broadrick, 413 U.S. at 615, 93 S. Ct. at 2918). "The concept of 'substantial overbreadth' is not readily reduced to an exact definition." Members of City

Council v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S. Ct. 2118, 2126, 80 L. Ed. 2d 772 (1984). However, in determining whether a statute is overly broad, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Id., 466 U.S. at 801, 104 S. Ct. at 2126. Indeed, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Id., 466 U.S. at 800, 104 S. Ct. at 2126. Rather, "'a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications.'" Hardwick, 711 F.3d at 441 (quoting New York v. Ferber, 458 U.S. 747, 771, 102 S. Ct. 3348, 3362 (1982)).

"In order to satisfy [the ample alternative channels requirement], the available alternatives need not be the speaker's first or best choice or provide the same audience or impact for the speech." Ross, 746 F.3d at 559 (citation, internal quotation marks, and brackets omitted). "Rather, the relevant inquiry is simply whether the challenged regulation 'provides avenues for the more general dissemination of a message.'" Id. (quoting Green, 523 F.3d at 305).

The Court will first consider narrow tailoring. The first prong of narrow tailoring requires that subsection (a)(2) promote a substantial government interest that would be achieved less effectively if the regulation was not present. The purpose of subsection (a)(2) is to protect minors from sexual crimes. See N.C. Gen. Stat. § 14-208.5. This is a very significant state interest. See, e.g., Standley v. Town of Woodfin, 362 N.C. 328, 333, 661 S.E.2d 728, 731 (2008) ("Protecting children and other visitors to parks . . . from sexual attacks is certainly a legitimate

34

government interest."); <u>State v. Spidle</u>, 853 N.W.2d 301 (Table), 2014 WL 2884871, at *2 (Iowa Ct. App. June 25, 2014) ("[P]roviding a safe environment for young library patrons is a significant government interest"); <u>Doe v. City of Albuquerque</u>, 667 F.3d 1111, 1115 (10th Cir. 2012) ("[W]e recognize the City's significant interest in providing a safe environment for its library patrons, especially children."). Subsection (a)(2) furthers this interest by preventing restricted sex offenders from being in places associated with the presence of minors. In the absence of the regulation, restricted sex offenders would be permitted to go near places associated with the presence of minors, thereby increasing the risk that sexual crimes will be committed against minors. <u>Standley</u>, 362 N.C. at 333, 661 S.E.2d at 731; <u>Spidle</u>, 2014 WL 2884871, at *2; <u>cf.</u> <u>Conn. Dep't of Pub. Safety v. Doe</u>, 538 U.S. 1, 4, 123 S. Ct. 1160, 1163, 155 L. Ed. 2d 98 (2003) (explaining that "[t]he victims of sex assault are most often juveniles" and that sex offenders are "are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault") (citation and internal quotation marks omitted). <u>But see</u> *infra* pp. 42-46 (discussing whether subsection (a)(2) burdens more speech than necessary in that it applies to sex offenders who committed offenses not involving minors). Therefore, subsection (a)(2) satisfies the first prong of the narrow tailoring portion of the overbreadth analysis.

The second prong of the narrow tailoring analysis requires determining whether subsection (a)(2) burdens substantially more speech than is necessary to further the government's interest. As explained above, the General Assembly has a strong interest in keeping sex offenders who committed offenses involving minors away from places associated with the presence of minors. Though it is possible that a buffer zone of 300 feet may be

35

somewhat larger than necessary in that a 250-foot or 200-foot restriction may be sufficient, it is precisely these types of judgments that are best left to the legislature rather than the judiciary. See Doe v. Miller, 405 F.3d 700, 715 (8th Cir. 2005) (how far residences of those who committed crimes against minors should be from schools and child care facilities best left to "elected policymaking officials of a State, and not the federal courts"). The Court has no scalpel to make such fine distinctions. Cf. Buckley v. Valeo, 424 U.S. 1, 30, 96 S. Ct. 612, 640, 46 L. Ed. 2d 659 (1976) (per curiam) (discussing Supreme Court's inability to distinguish between propriety of a $2,000 limit on contributions to political candidates as opposed to a $1,000 contribution limit). Though the 300-foot buffer zone may be somewhat too large, it does not "'burden substantially more speech than is necessary to further the government's legitimate interests.'" See Ross, 746 F.3d at 552-53 (quoting Ward, 491 U.S. at 799, 109 S. Ct. at 2758).

Plaintiffs argue that the statute could be more narrowly tailored by providing exceptions for First Amendment activity or for when minors are absent from a restricted zone. However, these exceptions would greatly weaken the effectiveness of subsection (a)(2). An exception permitting sex offenders to enter restricted zones in order to exercise free speech would completely defeat the purpose of the statute—restricting access by restricted sex offenders to places associated with the presence of minors. Such an exception would threaten to swallow the prohibition entirely. Similarly, an exception allowing restricted sex offenders to be present when children are not present would greatly undermine the statute's purpose. The absence of minors at any particular time does not necessarily imply that minors (or perhaps even a single minor) will not arrive soon, resulting in the precise outcome the General Assembly sought to

avoid—unsupervised minors in the presence of a restricted sex offender. Neither exception, as proposed by Plaintiffs, is a valid means by which the restriction might be more narrowly tailored.

Indeed, the existing statutory exceptions show the legislature's uneasiness with permitting restricted sex offenders to enter restricted zones. See N.C. Gen. Stat. § 14-208.18(b), (d)-(g). Parents or guardians subject to the restrictions can only enter school grounds with permission and only if they are "[a]t all times . . . under the direct supervision of school personnel." Id. § 14-208.18(d). Such parents or guardians also cannot "be on school property even if the parent or guardian has ongoing permission for regular visits of a routine nature if no school personnel are reasonably available to supervise the parent or guardian on that occasion." Id. Another statutory exception specifies that restricted sex offenders who are public school students are only permitted on school grounds with the approval of the local board of education. Id. § 14-208.18(f). An additional exception allows restricted sex offenders to enter restricted zones in order to vote; however, if the voting location is a school, the sex offender must notify the school's principal of his or her presence. Id. § 14-208.18(e). Likewise, there is a statutory exception which permits a juvenile restricted sex offender to enter a restricted zone in order to receive medical or mental health treatment, but he or she must be supervised by "an employee of the treating institution at all times." Id. § 14-208.18(g). Other than the exception for voting at a place that is not a school, the only other statutory exception not requiring notification, permission, or supervision is a parent or guardian seeking emergency medical attention for his or her minor child—a situation where time is of the essence and requiring supervision or permission is impractical. Id. § 14-208.18(b). Therefore, the statute could not be more narrowly

37

tailored by providing exceptions for First Amendment activity or for when minors are absent from a restricted zone.

Plaintiffs also argue that N.C. Gen. Stat. § 14-208.18 is overbroad on the basis that it prohibits them from going to a variety of places, including "libraries, museums, parks, recreation centers, theaters, state or county fairs, . . . the General Assembly . . . . religious services, movies, [and] certain private homes." (Pls.' Br. Supp. Mot. Summ. J. [Doc. #53], at 18-19.) The Court will consider each of these areas in turn as part of its overbreadth analysis of subsection (a)(2).

Public streets and parks "have immemorially been held in trust for the use of the public" for purposes of free speech. Hague v. CIO, 307 U.S. 496, 515, 59 S. Ct. 954, 964, 83 L. Ed. 1423 (1939) (opinion of Roberts, J.). Subsection (a)(2) does not prohibit sex offenders from entering public parks *per se*. Instead, it prohibits sex offenders from going onto those portions of parks which are within 300 feet of an (a)(2) place (which, in the usual case, will probably be a playground). As a practical matter, however, subsection (a)(2) will likely prohibit sex offenders from entering at least some parks because the entirety of the park grounds will be within 300 feet of an (a)(2) place. To the extent sex offenders are unable to engage in First Amendment activities in some parks due to subsection (a)(2), ample alternative avenues exist for them to exercise their free speech rights. For example, restricted sex offenders may engage in First Amendment activities on sidewalks, near public streets, at heavily trafficked intersections, outside public buildings, and in the portions of parks from which they are not banned under subsection (a)(2), among other places. Cf. Green, 523 F.3d at 305-06. Though these options may not always be the best method in every instance, the best method is not required. See Ross,

38

746 F.3d at 559. See also Standley, 362 N.C. at 333, 661 S.E.2d at 731-32 (ordinance prohibiting all sex offenders from knowingly entering municipal parks did not violate right to intrastate travel).

The overbreadth analysis is similar for libraries. Public libraries are limited public forums and the right of access to a public library is constitutionally protected by the right to receive information. E.g., Kreimer v. Bureau of Police, 958 F.2d 1242, 1259-62 (3d Cir. 1992). The fact that restricted sex offenders may be prohibited from entering some libraries does not burden substantially more First Amendment activity than necessary. Spidle, 2014 WL 2884871, at *1-2.[14] As with parks, the subsection (a)(2) does not ban restricted sex offenders from libraries *per se.* However, many libraries are likely to be off limits due to the presence of children's sections in those libraries. State v. Elder, Orange County No. 14CRS53509, at 9 (N.C. Super. Ct. Apr. 14, 2015) [Doc. #53-38]. As with public parks, to the extent restricted sex offenders desire to engage in expressive free speech activity, they can do so in public spaces other than libraries. With respect to the right to receive information which may be available in libraries, restricted sex offenders can access much of a library's materials through means other than physically going to the library. For example, restricted sex offenders can access many of the libraries' resources online, can view the libraries' catalogues online, can have a designated person pick up materials

---

[14] The Tenth Circuit struck down an ordinance prohibiting sex offenders from entering libraries. Doe v. City of Albuquerque, 667 F.3d 1111 (10th Cir. 2012). As the Iowa Court of Appeals noted, however, the Tenth Circuit's decision was based upon the "the City's failure to properly litigate the matter." Spidle, 2014 WL 2884871, at *1. Indeed, the Tenth Circuit itself explained that had the City properly defended the ordinance, "it is not difficult to imagine that the ban might have survived Doe's challenge." City of Albuquerque, 667 F.3d at 1115.

for them, or can even have books delivered to their homes. (See Affidavit of Georgianna Francis [Doc. #50-14]; Affidavit of Stefanie Kellum [Doc. #50-15].) Given these alternatives, subsection (a)(2) does not unduly burden First Amendment rights related to libraries.

The reasoning related to the statute's restrictions as applied to theatrical performances is similar as well. To the extent restricted sex offenders may be prohibited from going to certain theaters and therefore are unable to view particular performances or films, alternative means exist which allow for them to see most of these productions. Restricted sex offenders can go to theaters that are not within a subsection (a)(2) restricted zone. The majority of commercial films are available for purchase online or on DVD just months after their theatrical release; restricted sex offenders can also simply wait a brief period to see these films. Failing these alternatives, the number of performances or films which restricted sex offenders will be unable to see is likely to be small and will fall far short of the threshold necessary to reach "substantial" and "real" overbreadth.[15]

An additional area where Plaintiffs have raised their overbreadth claim is religious worship and discussion, which are otherwise protected by the First Amendment. Widmar v. Vincent, 454 U.S. 263, 269, 102 S. Ct. 269, 274, 70 L. Ed. 2d 440 (1981). Attending religious services at a church is one method of exercising that right. But alternative channels do exist as well. As Defendants correctly explained, "Plaintiffs may have to select an alternate church that

_____

[15] Though Plaintiffs have presented facts suggesting that they cannot enter particular live-performance theaters, these allegations are based upon subsection (a)(3), which the Court has already said is unconstitutionally vague. (See Pls.' Br. Supp. Mot. Summ. J. [Doc. #53], at 17; Printouts from Websites of Public Theaters in N.C. [Doc. #53-51].)

does not have daycare or Sunday school facilities, or perhaps exercise their religion at home, at the home of the local pastor, or at a neutral location that does not have child care facilities." (Mem. Law Supp. Defs.' Mot. to Dismiss and to Intervene as a Matter of Right [Doc. #9], at 13.) One sheriff even offered to let restricted sex offenders attend religious services at the county jail. (Letter from Graham County Sheriff Millsaps [Doc. #53-39].)[16] Even though these alternatives are likely not the best method for engaging in religious First Amendment speech activities, again, the best method is not required. See Ross, 746 F.3d at 559.

Plaintiffs claim that subsection (a)(2) of the statute is overbroad in that it restricts access to the state capital complex. Plaintiffs, however, have not shown that the complex is inaccessible as a result of subsection (a)(2).[17] Though Plaintiffs have shown that restricted sex offenders may be unable to enter some governmental buildings elsewhere because they lie inside (a)(2) buffer zones, such as the Newton, NC city hall (Map Showing Proximity of Newton, NC City Hall and Beth Eden Lutheran Church Sunday School [Doc. #53-44]) and the Waynesville, NC courthouse and post office (Maps Showing Proximity of Waynesville, NC Post Office and Courthouse to Church-based (a)(2) Locations [Doc. #53-45]), this potential prohibition is not enough to establish that subsection (a)(2) is overbroad. As explained earlier, "the mere fact that

---

[16] In citing Sheriff Millsaps's letter, the Court does not endorse Sheriff Millsaps's statement in the letter that restricted sex offenders are prohibited from attending all church services. As just explained, restricted sex offenders may enter any church that is not within a restricted zone.

[17] Though Plaintiffs have suggested it may be difficult to approach the North Carolina State Capitol building, where the Governor's offices are located, a restricted sex offender could approach the building from the southeast on foot without entering a subsection (a)(2) buffer zone. (See Maps Showing Effect of Reach of (a)(2) Zones in Downtown Raleigh, NC [Doc. #53-46].)

one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Taxpayers for Vincent, 466 U.S. at 800, 104 S. Ct. at 2126. These isolated instances of possible invalidity are small compared to the much broader legitimate sweep of the restrictions. Consequently, subsection (a)(2) is not overbroad even though Plaintiffs may not be able to enter restricted zones that encompass some government buildings.

Finally, Plaintiffs have made no showing as to how museums, recreation centers, fairs, and certain private homes would be considered First Amendment forums in a way distinguishable from the locations already discussed above. Subsection (a)(2) is therefore not overbroad to the extent it prevents Plaintiffs from going to the specific locations described above.

Plaintiffs also argue that subsection (a)(2) is overbroad in that it could burden less First Amendment activity by taking into account the individual dangerousness of certain restricted sex offenders. As an initial matter, the U.S. Supreme Court has made clear that sex offenders have no procedural due process right to a post-conviction individualized determination of dangerousness. (Mem. Op. & Order [Doc. #36], at 43-45 (citing Conn. Dep't of Pub. Safety, 538 U.S. 1, 123 S. Ct. 1160).) This does not mean, however, that all restrictions and conditions placed upon all sex offenders are automatically valid. Where a sex offender "can show that [the] substantive rule of law is defective by conflicting with a provision of the Constitution," such a claim can go forward. See Conn. Dep't of Pub. Safety, 538 U.S. at 7-8, 123 S. Ct. at 1164. Here, Plaintiffs assert that the statute infringes upon their First Amendment free speech rights (in

addition to the free speech rights of those similarly situated). There is no question that sex offenders' free speech rights are protected by the First Amendment. Cf., e.g., Doe v. Nebraska, 734 F. Supp. 2d 882, 911 (D. Neb. 2010) ("People who are convicted of crimes, even felony crimes related to children, do not forfeit their First Amendment right to speak by accessing the Internet."). Consequently, an inquiry into dangerousness may be proper in that if subsection (a)(2) burdens the First Amendment rights of sex offenders who pose little or no risk to minors, then the statute could potentially be found to be overbroad.

In considering whether N.C. Gen. Stat. § 14-208.18 applies to sex offenders who pose little or no risk to minors, the Court first notes that the statute does not apply to all registered sex offenders.[18] Only sex offenders convicted of specific types of offenses are subject to the restrictions. See N.C. Gen. Stat. § 14-208.18(c). Those offenses can be divided into two groups: offenses necessarily involving a minor and offenses not necessarily involving a minor.[19] As a

---

[18] North Carolina's Internet restrictions and the Town of Woodfin's ordinance banning sex offenders from municipally owned or operated parks applied to all registered sex offenders. State v. Packingham, __ N.C. __, 777 S.E.2d 738, 742 (2015) (citing N.C. Gen. Stat. § 14-202.5); Standley, 362 N.C. at 330, 661 S.E.2d at 729 (citing Woodfin, N.C., Ordinance § 130.03(2)(A) (Apr. 19, 2005)).

[19] The offenses causing one to be subject to N.C. Gen. Stat. § 14-208.18(a) are listed above in footnote 2. The offenses not necessarily involving a minor include first-degree forcible rape, second-degree forcible rape, first-degree forcible sexual offense, second-degree forcible sexual offense, and sexual battery. Additionally, sexual activity by a substitute parent or custodian, which can involve "a victim of any age" when a custodial relationship is involved, N.C. Gen. Stat. § 14-27.31(b), and sexual activity with a student, which could involve an adult student, N.C. Gen. Stat. § 14-27.32, do not necessarily involve minor victims. See also N.C. Gen. Stat. § 48A-2 ("A minor is any person who has not reached the age of 18 years."). Individuals who commit any offense against a minor under the age of 16 requiring registration are subject to the restrictions regardless of the underlying offense. N.C. Gen. Stat. § 14-208.18(c)(2).

general matter, location restrictions may properly be applied to offenders who committed an offense involving a minor. See *supra* pp. 34-35; Zobel, 696 F.3d at 575 ("Even defendants whose crimes [involved a minor but] involved no physical contact with minors have been bound by anti-loitering provisions . . . ."); cf. Doe v. Jindal, 853 F. Supp. 2d 596, 604 n.9 (M.D. La. 2012) (The state has "an overriding interest . . . in keeping registered child predators off of social networking websites altogether."). Given the record before the Court, however, it is unclear whether the restrictions can appropriately be applied to sex offenders who did not commit offenses involving minors.

In examining the narrow tailoring of sex offender Internet use restrictions, other Courts have emphasized the importance of the restrictions applying to the appropriate individuals. Packingham, 777 S.E.2d at 753 (Hudson, J., dissenting) (Internet use restrictions that apply to all registered sex offenders "sweep[] too broadly regarding who is subject to [the] prohibitions"); State v. Packingham, 748 S.E.2d 146, 152 (N.C. Ct. App. 2013) ("[T]he statute is not narrowly tailored because it fails to target those offenders who pose a factually based risk to children through the use or threatened use of the banned sites or services") (citation and internal quotation marks omitted),[20] rev'd, 777 S.E.2d 738 (N.C. 2015); Doe v. Prosecutor, Marion Cty., Ind., 705 F.3d 694, 701 n.6 (7th Cir. 2013) (Internet use restrictions "inexplicably appl[y] to sex offenders whose crimes did not involve the Internet or children"); Doe v. Nebraska, 898 F.

---

[20] Though the North Carolina Court of Appeals distinguished the breadth of North Carolina's Internet use restrictions from the restrictions at issue in this case, the Court of Appeals did not analyze whether the restrictions at issue in this case were narrowly tailored. See id.

Supp. 2d 1086, 1111 (D. Neb. 2012) (Internet use restrictions were not narrowly tailored in part because restrictions were unrelated to whether sex offender used computer for prior offense). But see Packingham, 777 S.E.2d at 750-51 (holding that North Carolina's sex offender Internet use restrictions are not unconstitutionally overbroad); Standley, 362 N.C. at 333; 661 S.E.2d at 731 (holding that ban of all registered sex offenders from parks owned or operated by town was a "rational method of furthering" the goal of "protecting children and other visitors to parks . . . from sexual attacks" and did not violate plaintiff sex offender's right to intrastate travel).

Here, the parties have not thoroughly addressed this crucial issue of whether the restrictions are narrowly tailored to only apply to the appropriate individuals. Plaintiffs argue that the connection between the statute and the state's interest in protecting children "is, at best, tenuous." (Mem. in Supp. Compl. [Doc. #3], at 8.) Defendants argue that "[i]t is well settled that sex offenders . . . pose a risk to the youth of society" and that the Plaintiffs "are all among a recognized class of criminal offenders who pose a direct threat to the youth of this Nation and who are more likely to re-offend." (Mem. Supp. Defs.' Am. Mot. to Dismiss [Doc. #31], at 8-9 (citing Conn. Dep't of Pub. Safety, 538 U.S. at 4, 123 S. Ct. at 1163).) "[T]he Supreme Court has acknowledged that there is conflicting evidence about how much of a risk of future dangerousness is posed by sex offenders generally." (Mem. Op. & Order [Doc. #36], at 47. See also id. at 47 n.17 (discussing conflicting evidence regarding sex offender recidivism).) Though the North Carolina Supreme Court indirectly addressed a similar issue in Packingham by upholding the state's Internet use restrictions, even though they apply to all sex offenders rather than a particular group of sex offenders, this Court is not bound by that decision in that regard.

45

E.g., Sikes v. Boone, 562 F. Supp. 74, 77 (N.D. Fla. 1983) ("[E]ven if a state supreme court has ruled that a statute contains no constitutional deficiencies, this court would not be bound by those state determinations on federal constitutional issues.").

Given the disputed record before the Court on the factual issue of whether subsection (a)(2)'s restrictions apply to the appropriate individuals and this issue's potential importance in determining whether subsection (a)(2) is overbroad, the Court will deny the parties' Motions for Summary Judgment on the question of subsection (a)(2) overbreadth. The Court finds that there is a genuine dispute of material fact regarding whether applying the restrictions to restricted sex offenders who committed offenses not involving minors furthers the state's interest in protecting minors. For this reason, the Court finds that this issue alone should proceed to trial. The Court will therefore deny the Motions for Summary Judgment of all parties regarding the possible overbreadth of subsection (a)(2). The parties are directed to address at trial whether subsection (a)(2) is narrowly tailored, given that it may be interpreted to apply to some sex offenders who did not commit an offense involving a minor.

D. Severability

The North Carolina Court of Appeals has held that the three subsections of § 14-208.18(a) are severable from each other and the Court is in agreement with the Court of Appeals in this regard. State v. Daniels, 224 N.C. App. 608, 611-12, 741 S.E.2d 354, 358 (N.C. Ct. App. 2012). As the court explained in Daniels, the North Carolina Supreme Court has held that where a criminal statute contains constitutional and unconstitutional portions, the unconstitutional portions can be severed if doing so would conform with the intent of the

46

legislature and the remaining portions would still be operative and fulfill their purpose in the absence of the severed portions. State v. Fredell, 283 N.C. 242, 245, 195 S.E.2d 300, 302 (1973). The law enacting N.C. Gen. Stat. § 14-208.18 included a severability clause which stated the following: "If any provision of this act or its application is held invalid, the invalidity does not affect other provisions or applications of this act that can be given effect without the invalid provisions or application, and to this end the provisions of this act are severable." N.C. Session Law 2008-117 § 21.1. Furthermore, each subsection of § 14-208.18(a) independently, even in the absence of the other subsections, would further the purpose of the General Assembly of protecting minors from recidivism by restricted sex offenders. See N.C. Gen. Stat. § 14-208.5.

Therefore, the Court can and will sever the unconstitutional portion of § 14-208.18 from the statute while leaving the remainder of the statute intact. Specifically, the Court will sever N.C. Gen. Stat. § 14-208.18(a)(3) while leaving the remainder of § 14-208.18, including subsections (a)(1) and (a)(2), intact for the time being. The Court reiterates, however, that it is leaving for the trial court the issue of whether subsection (a)(2) is unconstitutionally overbroad. In the event that the trial court determines that subsection (a)(2) is unconstitutionally overbroad, then subsection (a)(2) could be severed from the statute as well.

IV.     CONCLUSION

As explained above, the protection of children from sexual crimes is a significant state interest. The General Assembly can enact laws restricting where some sex offenders may go in order to further that interest. However, those laws must comply with the requirements of the United States Constitution. A law that is so vague that it fails to provide adequate notice of the

47

prohibited conduct to sex offenders and law enforcement must be struck down as unconstitutional.

For the foregoing reasons, the Court holds that N.C. Gen. Stat. § 14-208.18(a)(1) and N.C. Gen. Stat. § 14-208.18(a)(2) are not unconstitutionally vague. The Court further holds that N.C. Gen. Stat. § 14-208.18(a)(3) is unconstitutionally vague. The Court leaves for trial the question of whether N.C. Gen. Stat. § 14-208.18(a)(2) is unconstitutionally overbroad. In this regard, the parties are directed to address at trial whether subsection (a)(2) is narrowly tailored, given that it may be interpreted to apply to some sex offenders who did not commit an offense involving a minor.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment [Doc. #52] is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiffs' Motion is GRANTED insofar as N.C. Gen. Stat. § 14-208.18(a)(3) is declared unconstitutionally vague on its face under the Due Process Clause of the Fourteenth Amendment. Plaintiffs' Motion for Summary Judgment is DENIED with respect to their claim that N.C. Gen. Stat. § 14-208.18(a)(1) and (a)(2) are unconstitutionally vague and their claim that N.C. Gen. Stat. § 14-208.18(a)(2) is unconstitutionally overbroad. Plaintiffs' Motion is DENIED AS MOOT with respect to their claim that N.C. Gen. Stat. § 14-208.18(a)(3) is unconstitutionally overbroad because the Court has otherwise determined N.C. Gen. Stat. § 14-208.18(a)(3) to be unconstitutional on vagueness grounds.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [Doc. #49] is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion for

Summary Judgment is GRANTED with respect to Plaintiffs' claim that N.C. Gen. Stat. § 14-208.18(a)(1) and (a)(2) are unconstitutionally vague. Defendants' Motion is DENIED both with respect to Plaintiffs' claim that N.C. Gen. Stat. § 14-208.18(a)(3) is unconstitutionally vague and Plaintiffs' claim that N.C. Gen. Stat. § 14-208.18(a)(2) is unconstitutionally overbroad. Defendants' Motion is DENIED AS MOOT with respect to Plaintiffs' claim that N.C. Gen. Stat. § 14-208.18(a)(3) is unconstitutionally overbroad because the Court has otherwise determined N.C. Gen. Stat. § 14-208.18(a)(3) to be unconstitutional on vagueness grounds.

IT IS FURTHER ORDERED that Defendants are PERMANENTLY ENJOINED from enforcing N.C. Gen. Stat § 14-208.18(a)(3) against Plaintiffs and all other persons similarly situated.

This the 7th day of December, 2015.

United States District Judge