IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN DOEs 1-5,                    )
                                  )
                                  )
          Plaintiffs,             )
     v.                           )          1:13CV711
                                  )
                                  )
ROY A. COOPER III, et al.,        )
                                  )
          Defendants.             )


MEMORANDUM OPINION AND ORDER


BEATY, District Judge.

        This matter is before the Court on Plaintiffs' Renewed Motion for Summary Judgment,

which was made orally at a status conference held on March 24, 2016, and Defendants' Renewed

Motion for Summary Judgment [Doc. #85]. Specifically, Plaintiffs have moved for a ruling that

N.C. Gen. Stat. § 14-208.18(a)(2) is unconstitutionally overbroad in violation of the First

Amendment and Defendants have moved for a ruling that N.C. Gen. Stat. § 14-208.18(a)(2) is

not unconstitutionally overbroad. Plaintiffs have also moved for a permanent injunction against

enforcement of N.C. Gen. Stat. § 14-208.18(a)(2). (See Pls.' Mot. for Summ. J. After Discovery

[Doc. #52], at 1.)

        For the reasons discussed below, the Court holds that N.C. Gen. Stat. § 14-208.18(a)(2)

is unconstitutionally overbroad in violation of the First Amendment. The Court will therefore

grant Plaintiffs' Renewed Motion for Summary Judgment and deny Defendants' Renewed

Motion for Summary Judgment. The Court will also grant Plaintiffs' Motion for a permanent

injunction against enforcement of N.C. Gen. Stat. § 14-208.18(a)(2) against Plaintiffs and all other persons similarly situated.

## I.    BACKGROUND

North Carolina residents who are convicted of certain "reportable convictions" must register as sex offenders in North Carolina.  (See Mem. Op. & Order [Doc. #71], at 2 n.1.)  Some, but not all, registered sex offenders are subject to the location restrictions described in N.C. Gen. Stat. § 14-208.18, which prohibit where these individuals may "knowingly be." ([Doc. #71], at 43.)  In particular, N.C. Gen. Stat. § 14-208.18(a) prohibits these individuals from "knowingly be[ing] at any of the following locations":

>   (1)   On the premises of any place intended primarily for the use, care, or supervision of minors, including, but not limited to, schools, children's museums, child care centers, nurseries, and playgrounds.

>   (2)   Within 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, places described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public.

>   (3)   At any place where minors gather for regularly scheduled educational, recreational, or social programs.

N.C. Gen. Stat. § 14-208.18(a).  The Court has previously referred to the individuals subject to these restrictions as "restricted sex offenders."  Plaintiffs are among those who are subject to these restrictions.

The individuals subject to these restrictions are those registered sex offenders who committed any of the following offenses: (1) any offense in Article 7B of Chapter 14 of the N.C.

2

General Statutes; (2) "any federal offense or offense committed in another state, which if committed in this State, is substantially similar to an offense in Article 7B of" Chapter 14; or (3) any offense requiring registration where the victim of the offense was under the age of 16 years at the time of the offense. N.C. Gen. Stat. § 14-208.18(c).

The offenses included in Article 7B "can be divided into two groups: offenses necessarily involving a minor and offenses not necessarily involving a minor." ([Doc. #71], at 43.) Offenses that necessarily involve a minor victim include statutory rape of a child by an adult, statutory sexual offense with a child by an adult, and statutory rape of a person who is 15 years of age or younger. See N.C. Gen. Stat. § 14-208.18(c).

> The offenses not necessarily involving a minor include first-degree forcible rape, second-degree forcible rape, first-degree forcible sexual offense, second-degree forcible sexual offense, and sexual battery. Additionally, sexual activity by a substitute parent or custodian, which can involve "a victim of any age" when a custodial relationship is involved, N.C. Gen. Stat. § 14-27.31(b), and sexual activity with a student, which could involve an adult student, N.C. Gen. Stat. § 14-27.32, do not necessarily involve minor victims. See also N.C. Gen. Stat. § 48A-2 ("A minor is any person who has not reached the age of 18 years."). Individuals who commit any offense against a minor under the age of 16 requiring registration are subject to the restrictions regardless of the underlying offense. N.C. Gen. Stat. § 14-208.18(c)(2).

([Doc. #71], at 43 n.19.) Notably, merely being convicted of one of the offenses described in N.C. Gen. Stat. § 14-208.18(c) is sufficient to cause a sex offender to be subject to the location restrictions; no individual determination of dangerousness is required nor is a determination that the individual committed an offense against a minor required. However, as noted above, committing any offense requiring registration against a minor under the age of 16 will cause one to be subject to the restrictions. N.C. Gen. Stat. § 14-208.18(c)(2).

3

For the purposes of this Opinion, the Court will refer to sex offenders who committed an offense against a minor as "minor-victim offenders" and sex offenders who committed an offense against an adult as "adult-victim offenders."

## II.    PROCEDURAL POSTURE

The initial procedural posture of this matter was recounted by the Court in a previous Memorandum Opinion and Order [Doc. #71]:

> On August 28, 2013, Plaintiffs commenced this action against North Carolina Governor Pat McCrory, North Carolina Attorney General Roy Cooper, and the District Attorneys in each prosecutorial district in North Carolina. The original Complaint brought claims pursuant to 42 U.S.C. § 1983, alleging that § 14-208.18 is unconstitutionally overbroad and unconstitutionally vague, in violation of Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments of the U.S. Constitution. (Compl. [Doc. #1] ¶¶ 108-13.) Plaintiffs also alleged that § 14-208.18 violates their procedural due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution. (Id. ¶¶ 114-17.) Plaintiffs sought injunctive relief and a declaratory judgment that § 14-208.18 is unconstitutional. (Id. ¶ 118.) On January 13, 2014, Plaintiffs filed an Amended Complaint [Doc. #28] removing Governor McCrory as a defendant, amending factual allegations, and adding a claim for relief on equal protection grounds. Defendants filed an Amended Motion to Dismiss and Motion to Intervene as of Right [Doc. #30] (which incorporated their original Motion to Dismiss [Doc. #8] by reference), seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).
>
> In a Memorandum Opinion and Order [Doc. #36], this Court addressed Defendants' Motion to Dismiss and Motion to Intervene as of Right [Doc. #30]. The Court held that the Plaintiffs have standing to bring their claims and denied Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. ([Doc. #36], at 10-16.) The Court also held that the Court has personal jurisdiction over Attorney General Cooper and the North Carolina District Attorneys. (Id. at 16-21.) The Court denied Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim with respect to Plaintiffs' vagueness claim and certain portions of Plaintiffs' overbreadth claim. Specifically, the Court held that the Plaintiffs stated an overbreadth claim upon which relief may be granted only with respect to subsections (a)(2) and (a)(3) and only insofar as Plaintiffs were raising a facial overbreadth challenge based upon

4

their free speech rights. The Court granted Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) with respect to Plaintiffs' overbreadth claim to the extent that Plaintiffs' claim was based upon subsection (a)(1) or rights other than freedom of speech and expression. The Court also granted Defendants' Motion to Dismiss with respect to Plaintiffs' equal protection claim and procedural due process claim.

([Doc. #71], at 9-10.) The parties then filed cross Motions for Summary Judgment [Docs. #52, 49] as to all then-remaining claims.

In a Memorandum Opinion & Order [Doc. #71], the Court held that N.C. Gen. Stat. § 14-208.18(a)(1) and N.C. Gen. Stat. § 14-208.18(a)(2) are not unconstitutionally vague. ([Doc. #71], at 31.) The Court also held that N.C. Gen. Stat. § 14-208.18(a)(3) is unconstitutionally vague. (Id.) As a result, the Court permanently enjoined Defendants from enforcing N.C. Gen. Stat. § 14-208.18(a)(3) against Plaintiffs and all other persons similarly situated. (Id.)

The Court also considered whether subsection (a)(2) was unconstitutionally overbroad.[1] The Court considered a number of arguments regarding the possible overbreadth of subsection (a)(2) and held that subsection (a)(2) did not violate the First Amendment in those respects.[2] Specifically, the Court considered whether the buffer zones were too large, whether an exception

---

[1] The Court considered the possible overbreadth of only subsection (a)(2). "The Court previously held that N.C. Gen. Stat. § 14-208.18(a)(1) is not overbroad and dismissed Plaintiffs' claim in that respect." ([Doc. #71], at 32 n.13 (citing Mem. Op. & Order [Doc. #36], at 31-32).) Because the Court had already determined that subsection (a)(3) was unconstitutionally vague, the parties' Motions for Summary Judgment with respect to subsection (a)(3) overbreadth were denied as moot. (Id. at 32 n.13, 48-49.)

[2] The First Amendment is applicable to the states because "freedom of speech and of the press—which are protected by the First Amendment from abridgment by Congress—are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States." Gitlow v. New York, 268 U.S. 652, 666, 45 S. Ct. 625, 630, 69 L. Ed. 1138 (1925).

for First Amendment activity could have been included, and whether the possible prohibition against restricted sex offenders going to specific locations (*e.g.*, libraries, movie theaters, the state capital complex) resulted in unconstitutional overbreadth. (See [Doc. #71], at 31-42.)

However, the Court also considered whether "subsection (a)(2) is overbroad in that it could [potentially] burden less First Amendment activity by taking into account the individual dangerousness of certain restricted sex offenders." (Id. at 42.) The Court therefore found "that there is a genuine dispute of material fact regarding whether applying the restrictions to restricted sex offenders who committed offenses not involving minors furthers the state's interest in protecting minors." (Id. at 46.) The Court therefore "den[ied] the Motions for Summary Judgment of all parties regarding the possible overbreadth of subsection (a)(2)." (Id.) The Court directed the parties "to address . . . whether subsection (a)(2) is narrowly tailored, given that it may be interpreted to apply to some sex offenders who did not commit an offense involving a minor." (Id.)

On January 6, 2016, Defendants filed a Notice of Appeal [Doc. #74] regarding the Court's order permanently enjoining Defendants from enforcing N.C. Gen. Stat. § 14-208.18(a)(3). That same day, Defendants filed a Motion to Stay [Doc. #75] the Court's order permanently enjoining Defendants from enforcing N.C. Gen. Stat. § 14-208.18(a)(3), pending the resolution of Defendants' appeal to the Fourth Circuit. The Court denied the Motion to Stay. (Order [Doc. #81].)

On March 18, 2016, Defendants filed their Renewed Motion for Summary Judgment [Doc. #85], seeking the dismissal of Plaintiffs' remaining claim that subsection (a)(2) is

6

unconstitutionally overbroad. On March 24, 2016, the Court held a status conference. At that status conference, Plaintiffs argued that Defendants had not met their evidentiary burden with respect to the remaining issue. As a result, Plaintiffs orally renewed their motion for summary judgment as to their remaining claim. The Court expressed to Defendants that their evidentiary showing up to that point was likely inadequate to carry their burden of showing that subsection (a)(2) furthers the state's interest in protecting minors from sexual crimes without burdening substantially more speech than necessary, particularly as their showing related to adult-victim offenders. Hence, the Court asked Defendants if there was additional evidence they wished to obtain and provide to the Court in support of their Renewed Motion for Summary Judgment. Defendants stated that they would rely upon the evidence already provided to the Court and would not provide additional evidence. The parties agreed that a trial was unnecessary, that a trial would merely duplicate the evidence already presented, and that the Court should resolve the remaining issue as a matter of law based upon the evidence that had been presented. Hence, the parties' Renewed Motions for Summary Judgment are ripe for determination by the Court.

      The Court has previously articulated the appropriate standard for granting or denying a motion for summary judgment and will apply that standard here as well. (See [Doc. #71], at 11.) In short, "[p]ursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." (Id. (citing Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997).)

III.    DISCUSSION

A. Overbreadth of Subsection (a)(2)

1. First Amendment Standards

As the Court explained in its earlier Memorandum Opinion & Order [Doc. #71]:

Although facial challenges are generally strongly disfavored, the doctrine of overbreadth operates as an exception to the standard approach to facial challenges, "because the 'statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" Hardwick ex rel. Hardwick v. Heyward, 711 F.3d 426, 441 (4th Cir. 2013) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S. Ct. 2908, 2916, 37 L. Ed. 2d 830 (1973)). If a party shows that the challenged law "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep," then the overbreadth doctrine invalidates "*all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." Virginia v. Hicks, 539 U.S. 113, 118-19, 123 S. Ct. 2191, 2196, 156 L. Ed. 2d 148 (2003) (internal citation and quotation marks omitted).

. . .

[I]n order for an overbreadth challenge to succeed, the statute's overbreadth must be both "real" and "substantial," as assessed "in relation to the statute's plainly legitimate sweep." [Hill v. Colorado, 530 U.S. 703, 732, 120 S. Ct. 2480, 2498, 147 L. Ed. 2d 597 (2000)] (quoting Broadrick, 413 U.S. at 615, 93 S. Ct. at 2918). "The concept of 'substantial overbreadth' is not readily reduced to an exact definition." Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S. Ct. 2118, 2126, 80 L. Ed. 2d 772 (1984). However, in determining whether a statute is overly broad, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Id., 466 U.S. at 801, 104 S. Ct. at 2126. Indeed, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Id., 466 U.S. at 800, 104 S. Ct. at 2126. Rather, "'a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications.'" Hardwick, 711 F.3d at 441 (quoting New York v. Ferber, 458 U.S. 747, 771, 102 S. Ct. 3348, 3362, [73 L. Ed. 2d 1113] (1982)).

8

([Doc. #71], at 32-34.)  The Supreme Court has explained regarding the overbreadth doctrine that

> [t]he doctrine seeks to strike a balance between competing social costs.  On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas.  On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects.  In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.

United States v. Williams, 553 U.S. 285, 292, 128 S. Ct. 1830, 1838, 170 L. Ed. 2d 650 (2008) (internal citation omitted).

As the District of Nebraska explained in analyzing Internet use restrictions placed upon sex offenders in Nebraska, "In the First Amendment context, overbreadth is a remedial question and not a separate reason for finding that a statute violates the First Amendment."  Doe v. Nebraska, 898 F. Supp. 2d 1086, 1108 (D. Neb. 2012).  "The overbreadth invalidation rule only applies to the remedial question *of whether to invalidate a statute in toto*—not to the initial inquiry into whether a constitutional violation exists under the relevant decision rule."  Id. (emphasis added by D. Neb.) (quoting Scott A. Keller & Misha Tseytlin, Applying Constitutional Decision Rules Versus Invalidating Statutes in Toto, 98 Va. L. Rev. 301, 348 (2012)).

In order to determine whether subsection (a)(2) violates the First Amendment in this context, the Court applies the Ross v. Early, 746 F.3d 546 (4th Cir. 2014), analysis discussed in its previous Memorandum Opinion & Order [Doc. #71].  Specifically,

> in order for the statute to be upheld, the Government must merely show that the statute is "narrowly tailored to serve a significant governmental interest and . . .

9

leave[s] open ample alternative channels for communication of the information."
<u>Ross v. Early</u>, 746 F.3d 546, 552 (4th Cir. 2014) (quoting [<u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753, 105 L. Ed. 2d 661 (1989)]).

Narrow tailoring in this context consists of two prongs.  A statute "is narrowly tailored . . . if it 'promotes a substantial government interest that would be achieved less effectively absent the regulation' and does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" <u>Id.</u> at 552-53 (quoting <u>Ward</u>, 491 U.S. at 799, 109 S. Ct. at 2758).  However, the statute "need not be 'the least restrictive or least intrusive means' of serving the government's significant interests."  <u>Id.</u> at 553 (quoting <u>Ward</u>, 481 U.S. at 798, 109 S. Ct. at 2757-58).  <u>See also</u> [<u>McCullen v. Coakley</u>, 134 S. Ct. 2518, 2535, 189 L. Ed. 2d 502 (2014)].

. . .

"In order to satisfy [the ample alternative channels requirement], the available alternatives need not be the speaker's first or best choice or provide the same audience or impact for the speech."  <u>Ross</u>, 746 F.3d at 559 (citation, internal quotation marks, and brackets omitted).  "Rather, the relevant inquiry is simply whether the challenged regulation 'provides avenues for the more general dissemination of a message.'"  <u>Id.</u> (quoting [<u>Green v. City of Raleigh</u>, 523 F.3d 293, 305 (4th Cir. 2008)]).

([Doc. #71], at 33-34.)

2. Overbreadth Analysis of Subsection (a)(2)

Sex offenders have First Amendment rights.  (<u>Id.</u> at 43.)  The restrictions in subsection (a)(2) greatly burden those First Amendment rights by inhibiting the ability of restricted sex offenders to go to a wide variety of places associated with First Amendment activity.  (<u>See id.</u> at 35-42.)  As a result, Defendants must prove that subsection (a)(2) "'promotes a substantial government interest that would be achieved less effectively absent the regulation' and does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'"  <u>Ross</u>, 746 F.3d at 552-53 (quoting <u>Ward</u>, 491 U.S. at 799, 109 S. Ct. at 2758).

10

Defendants must also prove that the statute leaves open ample alternative channels for communication of the information. Id. at 552.

The restrictions are only aimed at furthering the substantial government interest of protecting minors from sexual crimes. ([Doc. #71] at 34-35.) This interest is undoubtedly of great importance. (Id.)

> That the Government's asserted interests are important in the abstract does not mean, however, that the [regulation on speech] will in fact advance those interests. When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.

Doe v. Nebraska, 898 F. Supp. 2d at 1107-08 (emphasis added) (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 664, 114 S. Ct. 2445, 2470, 129 L. Ed. 2d 497 (1994)). North Carolina "may pass valid laws to protect children from abuse, and it has. The prospect of crime, however, by itself does not justify laws suppressing protected speech." Cf. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245, 122 S. Ct. 1389, 1399, 152 L. Ed. 2d 403 (2002) (internal citations omitted).

Subsection (a)(2) purportedly furthers the state's interest in protecting children "by preventing restricted sex offenders from being in places associated with the presence of minors. In the absence of the regulation, restricted sex offenders would be permitted to go near places associated with the presence of minors . . . ." ([Doc. #71], at 35.) The Court has already explained that prohibiting minor-victim offenders from going to places associated with the presence of minors furthers the government's interest in protecting children. (Id. at 34-35, 43-

11

44.) But see Doe v. Nebraska, 898 F. Supp. 2d at 1108, 1111 (holding social media ban that applied only to minor-victim offenders vague and overbroad because, in part, no showing that offenders "pose[] a present threat to use those utilities to get at children" was necessary and previous crime was "often committed in the far-distant past").

With respect to adult-victim offenders, however, the Court directed the parties to address whether these individuals pose a significant risk to minors. ([Doc. #71], at 45-46.) In order for subsection (a)(2) to be upheld as constitutional, the harm must be "real, not merely conjectural." Doe v. Nebraska, 898 F. Supp. 2d at 1108 (quoting Turner Broad. Sys., Inc., 512 U.S. at 664, 114 S. Ct. at 2470). As a result, the Government needs to show that subsection (a)(2) "target[s] those offenders who pose a factually based risk to children through" their presence in the restricted zones. Id. at 1111.

Other courts examining the similar issue of sex offender Internet use restrictions have found those restrictions to not be narrowly tailored and to be unconstitutionally overbroad. In Doe v. Nebraska, the District of Nebraska examined Nebraska's sex offender social media ban:

> Critically, the ban is not contingent upon the past use of the banned utilities to prey upon minors. To be specific, the ban does not require a showing that the offender used social networking web sites, instant messaging, or chat room services to prey upon children. Nor does it require a showing that the offender poses a present threat to use those utilities to get at children. On the contrary, the ban is triggered by the commission of a crime against children (often committed in the far-distant past) that may be entirely unrelated to whether the offender used (or threatens to use) a social networking web site, instant messaging, or chat room service to victimize minors.

Id. (footnote omitted). Consequently, the court found that "the statute is not narrowly tailored to target those offenders who pose a factually based risk to children through the use or

threatened use of the banned sites or services. The risk posited by the statute is far too speculative when judged against the First Amendment. The broad scope of the ban is a fatal deficiency." Id. Because the state's Internet restrictions covered a broad array of websites and "criminalize[d] a substantial amount of protected expressive activity,'—from associating with friends, family and business associates over the Internet (the most common method of association in the modern age) to communicating with consumers, customers, or manufacturers regarding a commercial product or service, to posting and discussing one's political opinions on an interactive blog or news web site," the District of Nebraska held that the restrictions were overbroad. Id. at 1119 (quoting Williams, 553 U.S. at 297, 128 S. Ct. at 1841).

The dissent in State v. Packingham expressed a similar sentiment in examining North Carolina's Internet use restrictions, which apply to all registered sex offenders (rather than only the restricted sex offenders which are at issue in this case).[3] Packingham, 368 N.C. 380, 399, 777 S.E.2d 738, 753 (2015) (Hudson, J., dissenting).

> First, the statute as written sweeps too broadly regarding who is subject to its prohibitions. . . . The statute is not restricted in application only to those whose offenses harmed a minor or in some way involved a computer or the Internet, nor to those who have been shown to be particularly violent, dangerous, or likely to reoffend. This statute therefore groups together, without distinction, offenders whose history and past conduct directly implicate the State's concerns with those who do not. To the extent the statute does so, it "burden[s] . . . more speech than necessary to achieve the [State's] interests." McCullen, __ U.S. __, 134 S. Ct. at 2537.
>
> . . .

---

[3] The Court previously rejected the North Carolina Supreme Court's implicit determination that all registered sex offenders are necessarily dangerous to minors. (See [Doc. #71], at 44-46.)

13

In short, however legitimate—even compelling—the State's interest in protecting children might be, the plausible sweep of the statute as currently written "create[s] a criminal prohibition of alarming breadth," <u>United States v. Stevens</u>, 559 U.S. 460, 474, 130 S. Ct. 1577, 1588, 176 L. Ed. 2d 435 (2010), and extends well beyond the evils the State seeks to combat. I therefore conclude that N.C.G.S. § 14–202.5 . . . cannot survive even the intermediate scrutiny applied to content-neutral restrictions on speech.

<u>Packingham</u>, 368 N.C. at 399-401, 777 S.E.2d at 753-54 (Hudson, J., dissenting). Beyond determining that the Internet use restrictions failed the applicable narrow tailoring analysis, the dissent also concluded that the statute was "facially overbroad under the First Amendment." <u>Id.</u>, 368 N.C. at 401, 777 S.E.2d at 754.

In the lower court case preceding the North Carolina Supreme Court's decision in <u>Packingham</u>, the North Carolina Court of Appeals held that the state's social media ban is not narrowly tailored, explaining that the ban "applies equally to every registered sex offender in the state, regardless of whether the offender committed any sexual offense involving a minor." <u>State v. Packingham</u>, 229 N.C. App. 293, 301, 748 S.E.2d 146, 152 (2013), <u>rev'd</u>, 368 N.C. 380, 777 S.E.2d 738 (2015). "[N]or does [the statute] require a showing that the offender is a current threat to minors." <u>Id.</u>, 229 N.C. App. at 301, 748 S.E.2d at 152. Hence, the Court of Appeals held that the state's Internet use restrictions statute "is not narrowly tailored, and thus [is] unconstitutional." <u>Id.</u>, 229 N.C. App. at 301, 748 S.E.2d at 152-53. The Court also held that the Internet use restrictions are overbroad. <u>Id.</u>, 229 N.C. App. at 301, 303, 748 S.E.2d at 152-53, 154.

Finally, in <u>Doe v. Jindal</u>, the Middle District of Louisiana considered the state's Internet restrictions that applied to "registered sex offenders who were previously convicted of crimes

14

involving minors or juveniles." 853 F. Supp. 2d 596, 599 (M.D. La. 2012). The parties agreed that the state had "an overriding interest . . . in keeping registered child predators off of social networking websites altogether." Id. at 604 n.9. However, the statute at issue "impose[d] a sweeping ban on many commonly read news and information websites, in addition to social networking websites such as MySpace and Facebook." Id. at 604. The Court also construed the statute such that "the offense was completed once a user accesses the website—whether intentionally or by mistake." Id. The Middle District of Louisiana held that the state's Internet restrictions were "not crafted precisely or narrowly enough—as is required by constitutional standards—to limit the conduct it seeks to proscribe. Accordingly, on its face . . . the [Internet restrictions were] substantially overbroad and, therefore, invalid under the First Amendment." Id. at 605. See also Doe v. Prosecutor, Marion Cty., Ind., 705 F.3d 694, 701 n.6 (7th Cir. 2013) (Indiana Internet use restrictions "inexplicably appl[y] to sex offenders whose crimes did not involve the Internet or children").

Similar to the restrictions described above, the location restrictions at issue here are poorly tailored to further the state's interest in protecting children. Subsection (a)(2) places restrictions on offenders who have never committed a sexual crime against a minor. Moreover, no finding of dangerousness is required for a restricted sex offender to be subjected to subsection (a)(2)'s prohibitions. Merely committing one of the crimes listed in N.C. Gen. Stat. § 14-208.18(c) subjects the individual to the panoply of First Amendment burdens entailed by subsection (a)(2). The mere fact of a conviction of one of the crimes listed in the statute, by itself, is not enough to establish dangerousness to minors. See Doe v. Nebraska, 898 F. Supp.

2d at 1108; <u>Packingham</u>, 368 N.C. at 399-401, 777 S.E.2d at 753-54 (Hudson, J., dissenting); <u>Packingham</u>, 229 N.C. App. at 301, 748 S.E.2d at 152, <u>rev'd</u>, 368 N.C. 380, 777 S.E.2d 738; <u>Prosecutor, Marion Cty., Ind.</u>, 705 F.3d at 701 n.6.

Crucially, Defendants have not demonstrated that adult-victim offenders present a "real" rather than "conjectural" risk to minors. Defendants' overarching argument is that sex offenders who recidivate do not limit their crimes to individuals of particular age groups and therefore all restricted sex offenders can properly be subjected to subsection (a)(2). However, Defendants have only offered anecdotal evidence regarding the dangerousness of adult-victim offenders to minors by citing various cases involving sexual crimes against minors. The most relevant cases cited by Defendants are those involving adult-victim offenders who went on to commit a sexual crime against a minor. <u>See, e.g.</u>, <u>People v. Falsetta</u>, 986 P.2d 182, 184-85, 193 (Cal. 1999) (evidence of defendant's two prior rape convictions of adult women properly admitted in prosecution of defendant for forcible oral copulation, assault with intent to rape, assault with force likely to cause great bodily injury, and kidnapping involving a 16-year-old minor female); Exhibit - Peele [Doc. #86-1] (offender convicted of attempted second degree rape and second degree kidnapping of a female at least 16 years old in 2001 and two counts of statutory rape of a 13-year-old girl in 2009). Beyond these cases, Defendants cite cases involving sex offenders who committed an offense against a minor before committing an offense against an adult, offenders who were in a romantic relationship with an adult before committing an offense against a minor, offenders who committed crimes that occurred both before and after a victim reached the age of 16, and offenders' use of pornographic material in conjunction with

16

sexual crimes.

The key flaw in Defendants' evidentiary offering is that it does not account for the numerous other sex offenders who did not go on to commit a sex offense against a minor. Consequently, the individuals in the cases cited by Defendants represent only a fraction of sex offenders.[4] The ability of Defendants to identify a subset of adult-victim sex offenders who went on to commit a sexual crime against a minor does not require an inference that all, or even a substantial portion, of adult-victim offenders are dangerous in a materially different way compared to other criminal offenders. Cf. Alliance for Cannabis Therapeutics v. DEA, 15 F.3d 1131, 1137 (D.C. Cir. 1994) (explaining that it is reasonable to prefer scientific proof over anecdotal evidence, even where that anecdotal evidence is from "respected physicians"). In fact, Defendants have made no evidentiary showing at all regarding the rate at which sex offenders recidivate. Yet this is a crucial underpinning for applying the subsection (a)(2) restrictions to adult-victim offenders. If adult-victim offenders are very unlikely to commit sexual crimes against minors, then there is no basis for restricting their presence in subsection (a)(2) zones and therefore restricting their First Amendment rights. See supra pp. 11-16.

An additional flaw in Defendants' evidence is that most of the cases cited by Defendants are irrelevant to the question of whether adult-victim offenders are dangerous to minors. Of course, the cases involving adult-victim offenders who go on to commit a sex crime against a

---

[4] At the status conference, Plaintiffs asserted that there are currently approximately 11,000 registered sex offenders in North Carolina and that 20,000 individuals have ever been registered sex offenders in North Carolina. Though the Court recognizes that these figures are only estimates and refer to all registered sex offenders rather than restricted sex offenders, suffice it to say, there are numerous restricted North Carolina sex offenders.

minor provide at least a modicum of support for the idea that adult-victim offenders are collectively dangerous to minors. The other cases, however, have no connection to the issue of adult-offender dangerousness. For example, Defendants assert that cases where offenders who were involved in consensual, romantic relationships with adults committed sexual crimes against minors show that adult-victim offenders are dangerous to minors. Yet these cases cited by Defendants do not even involve adult-victim offenders, which are the only focus of the current case. Similarly, Defendants include references to offenders' use of pornographic material in committing sexual crimes against minors, yet fail to explain how these cases bear upon the dangerousness issue in this case at all. (See Br. in Supp. of Defs.' Renewed Mot. Summ. J. [Doc. #86], at 11, 14.) Many of the cases cited by Defendants simply do not address the issue of adult-victim offender dangerousness and instead represent an attempt to paint all restricted sex offenders with the same broad brush. In the absence of a meaningful evidentiary offering, the Court rejects Defendants' attempts to do so. Cf. Turner Broad. Sys., Inc., 512 U.S. at 665, 114 S. Ct. at 2471 ("That Congress' predictive judgments are entitled to substantial deference does not mean, however, that they are insulated from meaningful judicial review altogether. On the contrary, we have stressed in First Amendment cases that the deference afforded to legislative findings does not foreclose our independent judgment of the facts bearing on an issue of constitutional law." (internal citation and quotation marks omitted)). In short, Defendants' offering proves a "conjectural" risk of harm at best rather than the "real" harm required under First Amendment standards. Cf. id., 512 U.S. 622, 114 S. Ct. 2445 (holding that district court erred in granting summary judgment and upholding constitutionality of statute against a First

Amendment challenge where record was deficient, even though Congress had made predictive judgment regarding possible harm in the absence of the statute).

In contrast to Defendants' evidentiary offering, Plaintiffs point to a Department of Justice study indicating that adult-victim offenders are fairly unlikely to recidivate by committing a sex crime against a minor. See Patrick A. Langan, Ph.D et al., Bureau of Justice Statistics, U.S. Dep't of Justice, Recidivism of Sex Offenders Released from Prison in 1994 (2003), *available at* http://www.bjs.gov/content/pub/pdf/rsorp94.pdf. In the study, the authors explain that 3.3% of child molesters released from prison in 1994 were rearrested for child molesting within three years of their release. Id. at 1. "Released child molesters with more than 1 prior arrest for child molesting were more likely to be rearrested for child molesting (7.3%) than released child molesters with no more than 1 such prior arrest (2.4%)." Id. at 2. On the other hand, only 1.3% of sex offenders who were not classified as child molesters were rearrested within three years of release for child molesting. See id. Finally, 0.4% of non-sex offenders released during this period were rearrested for a sex offense against a child. Id. at 30. In other words, according to the Department of Justice study, within three years of release, child molesters were almost nine times as likely as non-sex offenders to commit a sex crime against a child after release and were two and a half times as likely as adult-victim offenders to commit a sex crime against a child after release.

Without more evidence from Defendants, the Court is left with a sweepingly broad law without a sufficient justification. To use an expression utilized by the District of Nebraska, North Carolina, in this instance, has used a blunderbuss rather than a scalpel in its effort to

19

protect children.  See Doe v. Nebraska, 898 F. Supp. 2d at 1112.  Based upon the showing that Defendants have made, the Court cannot conclude that adult-victim offenders constitute a risk to minors that is "real" rather than "conjectural."  See id. at 1107-08 (quoting Turner Broad. Sys., Inc., 512 U.S. at 664, 114 S. Ct. at 2470).  Therefore, Defendants have not carried their burden of showing that subsection (a)(2) furthers the state's interest in protecting minors from sexual crimes without burdening substantially more First Amendment activity than necessary.

On this point, Defendants' decision to not provide expert testimony or statistical reports to the Court was somewhat unexpected.  Defendants stated at the status conference that it would not be difficult for them to find an expert to support their case.  Yet, Defendants chose not to seek out an expert even after repeated inquiries from the Court regarding whether they desired to do so and after the Court expressly stated that it believed that Defendants' evidentiary offering was inadequate to carry their burden in this case.  The strongest evidence that Defendants have offered is a quote from a California Court of Appeal explaining that "[d]efendant is simply wrong in claiming that, '[o]ther than sheer speculation, the record is devoid of evidence showing that a man who allegedly forcibly and sexually assaults adult women also would be inclined to sexually molest a young child.'  As illustrated by this case, persons with deviant sexual urges do not always limit their sex crimes to victims of the same age group."  People v. Escudero, 107 Cal. Rptr. 3d 758, 760 (Cal. Ct. App. 2010).  Indeed, the California Court of Appeal is not wrong—sometimes sex offenders go on to commit another sex crime against a person that is in a different age group from the original victim, as amply demonstrated by the cases cited by Defendants.  But these individual instances are not enough to justify

20

imposing stringent restrictions on the First Amendment activities of a substantial number of individuals, even if they have committed serious sexual crimes.[5]

For the foregoing reasons, based upon the record before the Court, the Court holds that subsection (a)(2) is not narrowly tailored because it "burden[s] substantially more speech than is necessary to further the government's" interest in protecting children. Ross, 746 F.3d at 552-53 (citation and internal quotation marks omitted). See also Doe v. Nebraska, 898 F. Supp. 2d at 1111; Packingham, 368 N.C. at 399-401, 777 S.E.2d at 753-54 (Hudson, J., dissenting); Packingham, 229 N.C. App. at 301, 303, 748 S.E.2d at 152-53, 154, rev'd, 368 N.C. 380, 777 S.E.2d 738; Jindal, 853 F. Supp. 2d at 605; Prosecutor, Marion Cty., Ind., 705 F.3d at 702-03 ("But perhaps [Indiana's social media ban] could apply to certain persons that present an acute risk—those individuals whose presence on social media impels them to solicit children. Currently, the state presents no evidence that covered individuals present this sort of risk.").

The fact that subsection (a)(2) is not narrowly tailored with respect to adult-victim offenders, however, does not end the analysis. Before the Court can hold subsection (a)(2) to be unconstitutionally overbroad, it must determine if subsection (a)(2) "punishes a substantial

---

[5] The fact that Defendants have not proven, in this case, that adult-victim offenders collectively are dangerous to minors does not mean that location restrictions cannot be imposed upon individual adult-victim offenders in other contexts, such as "in fashioning terms of supervised release." Prosecutor, Marion Cty., Ind., 705 F.3d at 703. "Our penal system necessarily implicates various constitutional rights, and we review sentences under distinct doctrines. Terms of supervised release, for instance, must be 'reasonably related to the [sentencing] factors' and 'involve[] no greater deprivation of liberty than is reasonably necessary.' [18 U.S.C.] § 3583(d)(1)-(2). Thus, in assessing the need for incapacitation, see [18 U.S.C.] § 3553(a)(2)(C), a court could conceivably limit a defendant's Internet access if full access posed too high a risk of recidivism." Id. Similarly, location restrictions may be appropriate for some adult-victim offenders as a condition of supervised release.

21

amount of protected free speech, judged in relation to the statute's plainly legitimate sweep."

([Doc. #71], at 32 (quoting <u>Hicks</u>, 539 U.S. at 118-19, 123 S. Ct. at 2196 (internal citation and quotation marks omitted)). For the reasons discussed below, the Court concludes that subsection (a)(2) is unconstitutionally overbroad.

Subsection (a)(2) punishes a wide range of First Amendment activity for a significant number of individuals compared to the statute's plainly legitimate sweep. As explained above, the plainly legitimate sweep consists of subsection (a)(2)'s application to minor-victim offenders. And, as the Court previously explained, subsection (a)(2) otherwise complies with the First Amendment insofar as it applies to individuals who are dangerous to minors. (<u>See</u> [Doc. #71], at 31-44.) Subsection (a)(2) greatly interferes with restricted sex offenders' ability to be present at public parks, libraries, movie theaters, and houses of worship, among other places associated with significant First Amendment activity. (<u>Id.</u> at 38-42.) Furthermore, restricted sex offenders may be unable to enter some governmental buildings at all, such as the Newtown, NC city hall, "because they lie inside (a)(2) buffer zones." (<u>Id.</u> at 41.) Given the number of people impacted and the extent of that impact, this case is similar to many other cases where courts have found sex offender restrictions to be overbroad. <u>See Doe v. Nebraska</u>, 898 F. Supp. 2d at 1119 (Internet restrictions applicable to only minor-victim offenders are vague and overbroad); <u>Packingham</u>, 368 N.C. at 401-02, 777 S.E.2d at 754 (Hudson, J., dissenting) (North Carolina Internet restrictions applicable to all registered sex offenders is overbroad); <u>Packingham</u>, 229 N.C. App. at 302, 748 S.E.2d at 152-53 (North Carolina's Internet use restrictions "burden[] more people than necessary to achieve [their] purported goal" and therefore have an "overbroad

application."), rev'd, 368 N.C. 380, 748 S.E.2d 146; Jindal, 853 F. Supp. 2d at 604-05 (social media ban applicable to minor-victim offenders is overbroad because, in part, the ban "appears to ban [access to] an extensive array of websites"); Prosecutor, Marion Cty., Ind., 705 F.3d at 701 n.6 (though not reaching the question of overbreadth, the Seventh Circuit noted that Indiana's Internet use restrictions applicable to most sex offenders brought "the law's overbreadth concerns to the surface" and "inexplicably applie[d] to sex offenders whose crimes did not involve the Internet or children"). But see Packingham, 368 N.C. at 396, 777 S.E.2d at 751 (majority opinion by Elmore, J.) (North Carolina sex offender Internet restrictions are not overbroad and any First Amendment violations can be addressed through case-by-case challenges). Here, "[t]he ban reaches far beyond the individualized concerns of the plaintiffs" and is therefore unconstitutionally overbroad. Doe v. Nebraska, 898 F. Supp. 2d at 1119.

The Supreme Court has noted that "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." Hicks, 539 U.S. at 124, 123 S. Ct. at 2199. Here, however, restricted sex offenders are prohibited from even being present at a wide variety of places closely associated with First Amendment activities. Hence, while the law is not "specifically addressed to speech," its reach is so vast as to encompass a wide range of First Amendment activity. Cf. Jindal, 853 F. Supp. 2d at 607 ("Although the Act is intended to promote the legitimate and compelling state interest of protecting minors from internet predators, the near total ban on internet access imposed by the Act unreasonably restricts many ordinary activities that have become important to everyday life in today's world. The sweeping

restrictions on the use of the internet for purposes completely unrelated to the activities sought to be banned by the Act impose severe and unwarranted restraints on constitutionally protected speech."; Mem. Op. & Order [Doc. #71], at 15-16 ("[R]estricted sex offenders may have very legitimate reasons for being on properties that include smaller portions dedicated to minors. Such reasons might include shopping, eating, exercising, attending religious services, or any of the other myriad activities in which humans engage."). Therefore, holding subsection (a)(2) to be overbroad in this instance, even though the law is not specifically targeted at speech, is still appropriate.

For the foregoing reasons, the Court holds that N.C. Gen. Stat. § 14-208.18(a)(2) is unconstitutionally overbroad in violation of the First Amendment.

B. Severability

The Court has previously held that the three subsections of N.C. Gen. Stat. § 14-208.18(a) are severable from each other. ([Doc. #71], at 46-47.) In fact, the Court specifically noted that "[i]n the event that the . . . court determines that subsection (a)(2) is unconstitutionally overbroad, then subsection (a)(2) could be severed from the statute as well." (Id. at 47.)

Here, the Court has held that subsection (a)(2) is unconstitutionally overbroad. Hence, the Court will sever N.C. Gen. Stat. § 14-208.18(a)(2) while leaving the remainder of N.C. Gen. Stat. § 14-208.18, including subsection (a)(1), intact. The Court notes that it previously held N.C. Gen. § 14-208.18(a)(3) to be unconstitutionally vague and severed that portion of the statute. ([Doc. #71], at 46-47.)

Also of note is that there is no way for the Court "to excise" particular portions of the statute, "leaving the remaining [portions] intact." <u>Vernon Beigay, Inc. v. Traxler</u>, 790 F.2d 1088, 1095 (4th Cir. 1986). As mentioned above, some of the sex offenders who committed offenses that do not require a minor victim may have committed those offenses against a minor nonetheless. Hence, simply excising the offenses which do not require minor victims is not possible. Where the statute "(1) prohibits a substantial amount of expression that is protected by the First Amendment and (2) is not readily susceptible to a limiting construction," total invalidation based upon overbreadth is proper. <u>Legend Night Club v. Miller</u>, 637 F.3d 291, 302 (4th Cir. 2011). Furthermore, "it would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside to announce to whom the statute may be applied. This would, to some extent, substitute the judicial for the legislative department of the government." <u>Id.</u> (internal citations, brackets, and quotation marks omitted). For these reasons, the Court will invalidate subsection (a)(2) in its entirety.

C. Permanent Injunction

Plaintiffs seek a permanent injunction barring Defendants from enforcing N.C. Gen. Stat § 14-208.18(a)(2) against themselves and other similarly situated persons. (<u>See</u> Pls.' Mot. for Summ. J. After Discovery [Doc. #52], at 1.) "A plaintiff seeking a permanent injunction must demonstrate: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" <u>Legend Night</u>

25

Club, 637 F.3d at 297 (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006)).

All four prongs of this standard are met here. "As to irreparable injury, it is well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Id. at 302 (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547 (1976) (plurality opinion)). Furthermore, given the amount of First Amendment activity impacted, the "threatened injury in this case . . . constitute[s] 'direct penalization, as opposed to incidental inhibition' of First Amendment rights, thus making it the sort that could not be remedied absent an injunction." Id. (quoting Hohe v. Casey, 868 F.2d 69, 72-73 (3d Cir. 1989)). "Moreover, monetary damages are inadequate to compensate for the loss of First Amendment freedoms." Id.

Regarding the relative hardships and the public interest, the Court has previously explained that while "the protection of children from sexual crimes is a significant state interest," ([Doc. #71], at 47), "upholding constitutional rights is in the public interest," Legend Night Club, 637 F.3d at 303. The state "is in no way harmed by [the] issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." Id. at 302-03. Hence, the relative hardships and public interest prongs counsel toward issuance of a permanent injunction.

Because all four prongs necessary for a permanent injunction are met here, the Court will issue a permanent injunction prohibiting Defendants from enforcing N.C. Gen. Stat. § 14-208.18(a)(2) against Plaintiffs and all similarly situated persons. See also Prosecutor, Marion Cty., Ind., 705 F.3d at 703 (reversing, remanding, and instructing district court to "enter

26

judgment in favor of Doe and issue" permanent injunction against enforcement of Internet use restrictions).[6]

## IV.  CONCLUSION

The Court reiterates that the protection of children from sexual crimes is a significant state interest.  The General Assembly can enact laws restricting where some sex offenders may go in order to further that interest.  However, those laws must be appropriately targeted at demonstrated risks of harm rather than suppositions in order to withstand a First Amendment challenge.  Where the state fails to make such a demonstration, as has occurred here, the Court is compelled to find that the law violates the First Amendment.

For the foregoing reasons, the Court holds that N.C. Gen. Stat. § 14-208.18(a)(2) is unconstitutionally overbroad in violation of the First Amendment.

IT IS THEREFORE ORDERED that Plaintiffs' Renewed Motion for Summary Judgment, which was made orally at the March 24, 2016 status conference, is GRANTED. Specifically, Plaintiffs' Motion is GRANTED in that N.C. Gen. Stat. § 14-208.18(a)(2) is declared unconstitutionally overbroad in violation of the First Amendment.  Therefore, Defendants' Renewed Motion for Summary Judgment [Doc. #85] is DENIED.

IT IS FURTHER ORDERED that Defendants are PERMANENTLY ENJOINED from enforcing N.C. Gen. Stat § 14-208.18(a)(2) against Plaintiffs and all other persons  similarly

---

[6] The Court notes that while its previous Memorandum Opinion and Order [Doc. #71] did not discuss the permanent injunction test with respect to enjoining the enforcement of subsection (a)(3), the same considerations discussed here with respect to subsection (a)(2) also apply to subsection (a)(3).  See Legend Night Club, 637 F.3d at 302 (holding permanent injunction to have been properly issued even where factors were not discussed by district court).

situated.

Because all claims in this action are now resolved, a Judgment will be entered contemporaneously with this Memorandum Opinion and Order.

This the 22nd day of April, 2016.

United States District Judge