## **PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

## No. 16-6026

———————————————

JOHN DOE #1; JOHN DOE #2; JOHN DOE #3; JOHN DOE #4; JOHN DOE #5,

Plaintiffs – Appellees,

v.

ROY A. COOPER, III, Attorney General of the State of North Carolina; FRANK PARRISH, District Attorney, District 01; SETH EDWARDS, District Attorney, District 02; KIMBERLY ROBB, District Attorney, District 03A; SCOTT THOMAS, District Attorney, District 03B; ERNIE LEE, District Attorney, District 04; BEN DAVID, District Attorney, District 05; MELISSA PELFREY, District Attorney, District 06A; VALERIE ASBELL, District Attorney, District 06B; ROBERT EVANS, District Attorney, District 07; BRANSON VICKORY, District Attorney, District 08; SAM CURRIN, District Attorney, District 09; WALLACE BRADSHER, District Attorney, District 09A; COLON WILLOUGHBY, JR., District Attorney, District 10; VERNON STEWART, District Attorney, District 11A; SUSAN DOYLE, District Attorney, District 11B; BILLY WEST, District Attorney, District 12; JON DAVID, District Attorney, District 13; LEON STANBACK, District Attorney, District 14; PAT NADOLSKI, District Attorney, District 15A; JAMES WOODALL, JR., District Attorney, District 15B; KRISTY NEWTON, District Attorney, District 16A; JOHNSON BRITT, III, District Attorney, District 16B; PHIL BERGER, JR., District Attorney, District 17A; RICKY BOWMAN, District Attorney, District 17B; DOUG HENDERSON, District Attorney, District 18; ROXANN VANEEKHOVEN, District Attorney, District 19A; GARLAND YATES, District Attorney, District 19B; BRANDY COOK, District Attorney, District 19C; MAUREEN KRUEGER, District Attorney, District 19D; REECE SAUNDERS, District Attorney, District 20A; TREY ROBISON, District Attorney, District 20B; JIM O'NEILL, District Attorney, District 21; SARAH KIRKMAN, District Attorney, District 22A; GARRY FRANK, District Attorney, District 22B; TOM HORNER, District Attorney, District 23; JERRY WILSON, District Attorney, District 24;

JAY GAITHER, District Attorney, District 25; ANDREW MURRAY, District Attorney, District 26; LOCKE BELL, District Attorney, District 27A; RICK SHAFFER, District Attorney, District 27B; RONALD MOORE, District Attorney, District 28; BRAD GREENWAY, District Attorney, District 29A; GREGORY A. NEWMAN, District Attorney, District 29B; MICHAEL BONFOEY, District Attorney, District 30,

    Defendants – Appellants,

  and

PAT MCCRORY, Governor of the State of North Carolina,

    Defendant.

---

**No. 16-1596**

---

JOHN DOE #1; JOHN DOE #2; JOHN DOE #3; JOHN DOE #4; JOHN DOE #5,

    Plaintiffs – Appellees,

  v.

ROY A. COOPER, III, Attorney General of the State of North Carolina; FRANK PARRISH, District Attorney, District 01; SETH EDWARDS, District Attorney, District 02; KIMBERLY ROBB, District Attorney, District 03A; SCOTT THOMAS, District Attorney, District 03B; ERNIE LEE, District Attorney, District 04; BEN DAVID, District Attorney, District 05; MELISSA PELFREY, District Attorney, District 06A; VALERIE ASBELL, District Attorney, District 06B; ROBERT EVANS, District Attorney, District 07; BRANSON VICKORY, District Attorney, District 08; SAM CURRIN, District Attorney, District 09; WALLACE BRADSHER, District Attorney, District 09A; COLON WILLOUGHBY, JR., District Attorney, District 10; VERNON STEWART, District Attorney, District 11A; SUSAN DOYLE, District Attorney, District 11B; BILLY WEST, District Attorney, District 12; JON DAVID, District Attorney, District 13; LEON STANBACK, District Attorney, District 14; PAT NADOLSKI, District Attorney, District 15A; JAMES WOODALL, JR., District Attorney, District 15B; KRISTY NEWTON, District Attorney, District 16A; JOHNSON BRITT, III,

District Attorney, District 16B; PHIL BERGER, JR., District
Attorney, District 17A; RICKY BOWMAN, District Attorney,
District 17B; DOUG HENDERSON, District Attorney, District
18; ROXANN VANEEKHOVEN, District Attorney, District 19A;
GARLAND YATES, District Attorney, District 19B; BRANDY COOK,
District Attorney, District 19C; MAUREEN KRUEGER, District
Attorney, District 19D; REECE SAUNDERS, District Attorney,
District 20A; TREY ROBISON, District Attorney, District 20B;
JIM O'NEILL, District Attorney, District 21; SARAH KIRKMAN,
District Attorney, District 22A; GARRY FRANK, District
Attorney, District 22B; TOM HORNER, District Attorney,
District 23; JERRY WILSON, District Attorney, District 24;
JAY GAITHER, District Attorney, District 25; ANDREW MURRAY,
District Attorney, District 26; LOCKE BELL, District
Attorney, District 27A; RICK SHAFFER, District Attorney,
District 27B; RONALD MOORE, District Attorney, District 28;
BRAD GREENWAY, District Attorney, District 29A; GREGORY A.
NEWMAN, District Attorney, District 29B; MICHAEL BONFOEY,
District Attorney, District 30,

                    Defendants – Appellants,

            and

PAT MCCRORY, Governor of the State of North Carolina,

                    Defendant.

─────────────

Appeals from the United States District Court for the Middle
District of North Carolina, at Greensboro. James A. Beaty, Jr.,
Senior District Judge. (1:13-cv-00711-JAB-JLW)

─────────────

Argued: September 21, 2016          Decided: November 30, 2016

─────────────

Before MOTZ, TRAXLER, and AGEE, Circuit Judges.

─────────────

Affirmed by published opinion. Judge Agee wrote the opinion, in
which Judge Motz and Judge Traxler joined.

─────────────

**ARGUED:** Matthew L. Boyatt, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellants. Paul Moore Dubbeling,

3

P.M. DUBBELING PLLC, Chapel Hill, North Carolina, for Appellees. **ON BRIEF:** Roy Cooper, North Carolina Attorney General, Hal F. Askins, Special Deputy Attorney General, William P. Hart, Jr., Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants.

———————

4

AGEE, Circuit Judge:

The State of North Carolina requires persons convicted of certain reportable sex offenses to register as "sex offenders." See N.C. Gen. Stat. § 14-208.6(4); id. § 14-208.7(a). For persons convicted of a subset of those reportable sex offenses, North Carolina restricts their movement relative to certain locations where minors may be present. See id. § 14-208.18(a)(2015).[1]

John Does #1 through #5 (collectively, the "Does") challenged these statutory restrictions as either overbroad, under the First Amendment to the United States Constitution, or unconstitutionally vague, under the Fourteenth Amendment. The district court agreed with the Does as to two subsections of the statute and permanently enjoined enforcement of section 14-208.18(a)(2) and section 14-208.18(a)(3). For the reasons set out below, we affirm the judgment of the district court.

I.

We begin with an overview of North Carolina's sex offender registration laws. Persons with a "reportable conviction" of a

---

[1] Section 14-208.18 was amended effective September 1, 2016. This case involves the 2015 version of that statute, and all references to section 14-208.18 herein are to the 2015 version. The provisions of the amended statute are not at issue in this case.

5

sex offense, and who live in North Carolina, must register "with the sheriff of the county where the person resides." See N.C. Gen. Stat. § 14-208.7(a). During the registration period, which generally lasts for "at least 30 years following the date of initial county registration," id., the movements of all registered sex offenders are restricted in certain circumstances. For example, a registered sex offender may not "knowingly reside within 1,000 feet of the property on which any public or nonpublic school or child care center is located." Id. § 14-208.16(a).

Some registered sex offenders are subject to additional restrictions under section 14-208.18(a). That statute provides that it shall be unlawful for any registered offender whose registration follows a conviction for a violent sex offense[2] or

---

[2] A "violent sex offense," as applicable here, is "[a]ny offense in Article 7B of [N.C. Gen. Stat.] Chapter [14] or any federal offense or offense committed in another state, which if committed in this State is substantially similar to an offense in Article 7B of this Chapter." N.C. Gen. Stat. § 14-208.18(c)(1). Article 7B of N.C. Gen. Stat. Chapter 14, entitled "Rape and other Sex Offenses," includes the offenses of: first-degree forcible rape, second-degree forcible rape, statutory rape of a child by an adult, first-degree statutory rape, statutory rape of a person who is fifteen years of age or younger, first-degree forcible sexual offense, second-degree forcible sexual offense, statutory sexual offense with a child by an adult, first-degree statutory sexual offense, statutory sexual offense with a person who is fifteen years of age or younger, sexual activity by a substitute parent or custodian, sexual activity with a student, and sexual battery. See id. §§ 14-27.21 through 14-27.33.

any offense where the victim was younger than sixteen at the time of the offense ("restricted sex offenders") to "knowingly be" at any of the following locations:

> (1) On the premises of any place intended primarily for the use, care, or supervision of minors, including, but not limited to, schools, children's museums, child care centers, nurseries, and playgrounds.
>
> (2) Within 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, places described in subdivision (1) . . . that are located in malls, shopping centers, or other property open to the general public.
>
> (3) At any place where minors gather for regularly scheduled educational, recreational, or social programs.

Id. § 14-208.18(a).

Those limitations on restricted sex offenders are subject to certain exceptions. For example, a restricted sex offender who is also the "parent or guardian of a student enrolled in a school may be present on school property" to attend a parent-teacher conference, at the request of the school's principal, or "for any other reason relating to the welfare or transportation of the child." Id. § 14-208.18(d).

Absent one of the statutory exceptions, a restricted sex offender who is "knowingly" at or on a restricted premises is guilty of a Class H felony under North Carolina law. Id. § 14-208.18(h). A Class H felony conviction carries with it a

presumptive term of imprisonment of up to twenty months. <u>See</u> <u>id.</u> § 15A-1340.17.

II.

A.

The Does are restricted sex offenders. In 1995, John Doe #1 pleaded guilty to receiving material involving the sexual exploitation of a minor, a violation of 18 U.S.C. § 2252(a)(2). As a result, he served five years in federal prison, but, as of 2003, is no longer under any type of probation, parole, or supervised release. After his release, John Doe #1 attended a church, but eventually was arrested because the church had a child care center within 300 feet of the main congregation hall. The local district attorney initially charged John Doe #1 with a violation of section 14-208.18(a), but the charge was dropped. Afterward, John Doe #1 was allowed to continue attending church subject to a number of restrictions set by the district attorney. Those restrictions included a prohibition on "assisting" with worship services and engaging in any church activities outside of the main worship service. J.A. 137.

In 2011, John Doe #2 was convicted of misdemeanor sexual battery, a "violent sex offense," and given a probationary sentence. As a result of his conviction, John Doe #2 was advised by the local sheriff against attending his minor son's

educational and recreational activities "just to be on the safe side."   J.A. 69.   John Doe #2 has received conflicting information from the local sheriff and his probation officer as to whether he can attend his son's sporting events remotely, via technology such as "Skype."   In like fashion, he was also advised by his probation officer against visiting a wide variety of other places, including a fast food restaurant with an attached play area, the North Carolina State Fairgrounds, and adult softball league games (given the field's proximity to playground equipment).

In 2002, John Doe #3 was convicted of committing indecent liberties with a minor, a violation of N.C. Gen. Stat. § 14-202.1, and he served four years in prison.   John Doe #3 is now employed and his current job responsibilities require him to purchase office supplies.   However, the local sheriff advised John Doe #3 he could be arrested for shopping at an office supply store that is within 300 feet of a fast food restaurant with an attached children's play area.   Further, John Doe #3 is unsure whether he can drive within 300 feet of some locations while on his way to work or visit the North Carolina State Legislative Building, the meeting place of the North Carolina General Assembly, given its proximity to the North Carolina Museum of Natural Sciences, which may have visiting children.

9

John Doe #4 was convicted in 2007 of attempted solicitation of a minor, a violation of N.C. Gen. Stat. § 14-202.3. He received a suspended sentence of thirty months, spent ten weekends in intermittent confinement, and completed thirty months of probation. He currently wishes to attend church, but is concerned doing so might violate section 14-208.18(a) because the church has classes for children. In addition, he claims he cannot attend a town council meeting, since the town hall is in close proximity to the public library, which has a dedicated children's section.

John Doe #5 was convicted in 2009 of two counts of misdemeanor sexual battery, for which he received two suspended seventy-five day sentences and completed eighteen months of supervised probation. Following his conviction, John Doe #5 was awarded joint custody of his two minor children. However, he is unable to participate significantly in his children's educational or recreational activities due to the restrictions imposed by section 14-208.18(a). In addition, like John Does #1 and #4, John Doe #5 wishes to attend church, but is concerned that his presence may violate section 14-208.18(a) because the church has programs for children. Finally, John Doe #5 is concerned he may violate the statute while working, because his employer, a construction company, sometimes performs projects inside areas that may be covered by section 14-208.18(a).

B.

The Does filed this action against Pat McCrory, North Carolina's Governor; Roy Cooper, North Carolina's Attorney General; and each of North Carolina's elected district attorneys (collectively, the "State"). They challenged each subsection of section 14-208.18(a) as overbroad, in violation of the First Amendment to the United States Constitution, and unconstitutionally vague, in violation of the Fourteenth Amendment's Due Process Clause. They requested declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

The district court granted the State's Rule 12(b)(6) motion and dismissed the Does' overbreadth claim as to section 14-208.18(a)(1). Later, the district court granted summary judgment to the State on the Does' section 14-208.18(a)(1) vagueness claim. The Does do not challenge these rulings on appeal.

The parties filed cross motions for summary judgment regarding the alleged vagueness and overbreadth of subsections (a)(2) and (a)(3). The district court held subsection (a)(2) was not unconstitutionally vague. However, the district court found strong indicia of vagueness as to subsection (a)(3), noting language, such as "places where minors gather," was unbounded in scope. And, unlike the other subsections of the statute, subsection (a)(3) was not informed by any specific list

11

of examples. Further, the district court pointed out that subsection (a)(3)'s reference to "regularly scheduled" activities was too vague for an ordinary person to determine its application. Accordingly, the district court ruled subsection (a)(3) was unconstitutionally vague as violative of due process and permanently enjoined its enforcement. The State immediately appealed the district court's permanent injunction of subsection (a)(3). We have jurisdiction of that appeal pursuant to 28 U.S.C. § 1292(a)(1).

The district court denied the Does' motion for summary judgment on the separate, remaining issue of whether subsection (a)(2) was overbroad and granted the State's cross motion in part. As the district court set out in its opinion, subsection (a)(2) was not overbroad to the extent it generally "prohibit[ed] them from going to a variety of places, including libraries, museums, parks, recreation centers, theaters, state or county fairs, the General Assembly[,] religious services, movies, and certain private homes." J.A. 169.[3] Stated another way, the district court held that, even though subsection (a)(2) incidentally restricted the Does' access to certain locations where activities protected by the First Amendment would occur,

---

[3] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

12

it was not overbroad with respect to the particular place restrictions.

However, the district court also determined that a genuine issue of material fact existed as to whether subsection (a)(2) was overbroad "in that it could burden less First Amendment activity by taking into account the individual dangerousness of certain restricted sex offenders." J.A. 173. The district court noted "an inquiry into dangerousness" was proper "in that if subsection (a)(2) burdens the First Amendment rights of sex offenders who pose little or no risk to minors," then the statute could be overbroad. J.A. 174. Accordingly, because "the parties [did] not thoroughly address[] th[e] crucial issue" of "whether applying [subsection (a)(2)] to restricted sex offenders who committed offenses not involving minors furthers [North Carolina's] interest in protecting minors," the district court denied the motions for summary judgment and set that issue for trial. J.A. 176-77.

Before trial, the parties filed renewed cross motions for summary judgment on the issue of subsection (a)(2)'s overbreadth. As recited in the district court's opinion, at a status conference on the motions:

> The Court expressed to Defendants that their evidentiary showing up to that point was likely inadequate to carry their burden of showing that subsection (a)(2) furthers [North Carolina's] interest in protecting minors from sexual crimes

> without burdening substantially more speech than
> necessary, particularly as their showing related to
> adult-victim offenders. Hence, the Court asked
> Defendants if there was additional evidence they
> wished to obtain and provide to the Court in support
> of their Renewed Motion for Summary Judgment.
> Defendants stated that they would rely upon the
> evidence already provided to the Court and would not
> provide additional evidence. The parties agreed that
> a trial was unnecessary, that a trial would merely
> duplicate the evidence already presented, and that the
> Court should resolve the remaining issue as a matter
> of law based upon the evidence that had been
> presented.

Suppl. J.A. 155.

The district court then granted summary judgment to the Does, holding, on the record before it, subsection (a)(2) was facially overbroad in violation of the First Amendment. In the district court's view, subsection (a)(2), although facially neutral, significantly impaired restricted sex offenders' exercise of core First Amendment rights without taking into consideration the dangerousness of the particular offender. In other words, subsection (a)(2) was overbroad because it affected the ability of all restricted sex offenders to engage in core First Amendment activities, such as attending a religious service or congregating in some public fora, regardless of whether a particular restricted sex offender had ever abused minors or was likely to do so.

The district court agreed the State had a legitimate and substantial interest in protecting minors, but concluded the

14

State failed to meet its burden of proof to show subsection (a)(2) was narrowly tailored to further that interest. As a result, the district court permanently enjoined enforcement of subsection (a)(2) and entered judgment in the Does' favor.

The State timely appealed that judgment. We have jurisdiction over that appeal under 28 U.S.C. § 1291.[4]

III.

We review de novo the district court's rulings concerning the constitutionality of a state statute. See Miller v. Brown, 503 F.3d 360, 364 (4th Cir. 2007).

A.

The State first challenges the district court's ruling that subsection (a)(3) is unconstitutionally vague and, thus, violates the Due Process Clause of the Fourteenth Amendment. In relevant part, the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state law violates due process if it "fails to provide a person of ordinary intelligence fair notice of what is

---

[4] The State's appeal of the district court's final judgment came after briefing on its earlier interlocutory appeal regarding subsection (a)(3) was completed. The State's two appeals were consolidated for purposes of this proceeding, with the issue of subsection (a)(2)'s overbreadth addressed through supplemental briefing.

15

prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Martin v. Lloyd, 700 F.3d 132, 135 (4th Cir. 2012). "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law[.]" Johnson v. United States, 576 U.S. __, 135 S. Ct. 2551, 2556-57 (2015).

As noted earlier, subsection (a)(3) states that a restricted sex offender may not "knowingly be . . . [a]t any place where minors gather for regularly scheduled educational, recreational, or social programs." N.C. Gen. Stat. § 14-208.18(a)(3). When read alongside subsections (a)(1) and (a)(2), the State contends subsection (a)(3) has a clear "core" meaning. Although the State concedes the three subsections of section 14-208.18(a) "constitute separate offenses," it posits "they are nevertheless interrelated and must therefore be construed in pari materia." Appellants' Opening Br. 10-11. When read that way, the State concludes, "[n]o ordinary person would read [section] 14-208.18(a) in its entirety and be unclear as to" the meaning of subsection (a)(3). Appellants' Opening Br. 11. The district court disagreed, and so do we.

When applying the constitutional vagueness doctrine, the Supreme Court distinguishes between statutes that "require[] a person to conform his conduct to an imprecise but comprehensible

16

normative standard" and those that specify "no standard of conduct." Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971). Statutes falling into the former category have, as the State terms it, a constitutional "core" in the sense that they "apply without question to certain activities," even though their application in marginal situations may be a close question. Parker v. Levy, 417 U.S. 733, 755-56 (1974). Conversely, those statutes that fall into the latter category are unconstitutionally vague. The distinction between these two types of statutes, in some instances, may be somewhat difficult to decipher. Indeed, an unconstitutionally vague statute may still have some clearly constitutional applications. See Johnson, 135 S. Ct. at 2560-61.

But where a statute specifies no standard, the fact that it has one or more clearly constitutional applications cannot save it. See id. Supreme Court precedent "squarely contradict[s] the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." Id. That is the case here. Subsection (a)(3) is unconstitutionally vague, even though some conduct may "fall[] within . . . [its] grasp," id., because it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in

17

a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983).

Two principal problems are evident in subsection (a)(3) which compel the conclusion it is unconstitutionally vague. In particular, a reasonable person, whether a restricted sex offender or a law enforcement officer, cannot reasonably determine (1) whether a program for minors is "regularly scheduled" or (2) what places qualify as those "where minors gather."

The district court succinctly explained these deficiencies with respect to the "regularly scheduled" provision:

> The first problem stems from the language "regularly scheduled." The term "regular" means happening at fixed intervals[, periodic]. Even if a restricted sex offender or law enforcement officer knew precisely how often and where the "scheduled programs" took place, the statute provides no principled standard at all for determining whether such programs are "regularly scheduled."
>
> Notably, subsection (a)(3) provides no examples to guide restricted sex offenders or law enforcement as to how frequently the programs would need to occur in order to be "regularly scheduled." In contrast, subsection (a)(1) provides examples of (a)(1) "places" and subsection (a)(2) provides examples of (a)(2) "premises" upon which a "location" or "place" might be. This case is distinguishable from other cases holding restrictions that included the word "regularly" or variants of "frequently" to be not vague because those restrictions included examples to clarify which locations were restricted.

J.A. 157-59. Moreover, although not necessary to our conclusion, the State's own evidence confirms the difficulty in

18

determining whether a program for minors is "regularly scheduled." For example, District Attorney Todd Williams admitted subsection (a)(3) "gives no clear guidance" regarding the frequency with which an activity must be conducted to be "regularly scheduled." J.A. 159.

Likewise, subsection (a)(3)'s "where minors gather" language is without defining standards. The district court's opinion accurately expresses the constitutional issue:

> For example, subsection (a)(3) does not explain how many minors must gather at the place. Subsection (a)(3) also does not explain whether a place where mixed groups of minors and adults gather, such as a community college that has some high school students or a church with a congregation of adults and minors, would be considered a restricted zone under subsection (a)(3). As was the case with the term "regularly scheduled," subsection (a)(3) is distinguishable from other instances where similar formulations have been held to be not vague because those cases involved general language that was accompanied by examples rather than general language standing alone.

J.A. 159-60.

The State attempts to overcome these deficiencies by appealing to the in pari materia canon of construction. In essence, the State contends subsection (a)(3) should be saved by reading into it the list of places specifically included in subsection (a)(1) and incorporated by reference in subsection (a)(2). That argument lacks merit.

We have "interpreted the principle [of in pari materia] to mean that adjacent statutory subsections that refer to the same

19

subject matter should be read harmoniously." United States v. Broncheau, 645 F.3d 676, 685 (4th Cir. 2011). But the in pari materia principle does not apply here by virtue of the structure of subsection (a)(3) as written by the North Carolina General Assembly. Directly to that point, subsection (a)(3) conspicuously omits any list of examples, in contrast to subsection (a)(1). In addition, subsection (a)(3) contains no language suggesting that such a list should be read into it, in contrast to subsection (a)(2). We must presume the legislature's omissions to be intentional. See, e.g., Jones v. Comm'r, 642 F.3d 459, 463 (4th Cir. 2011) ("[W]hen a statute includes particular language in one section but omits it in another, a court can assume . . . that the omission was deliberate."); N.C. Dep't of Revenue v. Hudson, 675 S.E.2d 709, 711 (N.C. Ct. App. 2009) ("When a legislative body includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the legislative body acts intentionally and purposely in the disparate inclusion or exclusion."). We cannot, therefore, read by judicial construction into subsection (a)(3) that which the legislature chose to omit.

Even if we were to read subsection (a)(1)'s list of examples into subsection (a)(3), other problems would arise. "[A] statute should be construed so that effect is given to all

20

its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" Corley v. United States, 556 U.S. 303, 314 (2009); accord State v. Coffey, 444 S.E.2d 431, 434 (N.C. 1994). Reading subsection (a)(1)'s list of examples into subsection (a)(3) would effectively make the two provisions identical, thereby rendering one of those subsections "superfluous" or "insignificant." Corley, 556 U.S. at 314. For instance, the examples listed in subsection (a)(1) and incorporated by reference into subsection (a)(2) -- schools, children's museums, childcare centers, and playgrounds -- are places "intended primarily for the use, care, or supervision of minors." N.C. Gen. Stat. § 14-208.18(a)(1) & (a)(2). But, those same places also are "place[s] where minors gather for regularly scheduled educational, recreational, or social programs." Id. § 14-208.18(a)(3). Thus, to read subsection (a)(1)'s list into subsection (a)(3) would be to effectively swallow subsections (a)(1) and (a)(2), leaving them "only to define the limits of the proscribed 'place[s]'" then incorporated into subsection (a)(3). Appellees' Response Br. 14. Subsection (a)(3) cannot be saved by reading subsection (a)(1) into it and, thereby, diminishing or subsuming the importance of other clear legislative judgments.

In sum, neither an ordinary citizen nor a law enforcement officer could reasonably determine what activity was

21

criminalized by subsection (a)(3). As a consequence, that subsection does not meet the standards of due process because it is unconstitutionally vague. Accordingly, the district court did not err in granting summary judgment as to subsection (a)(3).

### B.

The State separately challenges the district court's holding that subsection (a)(2) is unconstitutionally overbroad in violation of the First Amendment. As the proponent of subsection (a)(2), the State was required to prove that it "promotes a substantial government interest that would be achieved less effectively absent the regulation" and does not "burden substantially more speech than is necessary to further the government's legitimate interests." Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989). As we explain below, the State failed to meet its burden of proof.

### 1.

Under the overbreadth doctrine, if a law "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep," then it is invalid "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." Virginia v. Hicks, 539 U.S. 113, 118-19 (2003). Any overbreadth must be

22

both "real" and "substantial" in order to be constitutionally deficient. Hill v. Colorado, 530 U.S. 703, 732 (2000). Although "substantial" overbreadth is not "readily reduced" to a mathematical formula, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Members of the City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800-01 (1984).

Subsection (a)(2) burdens the First Amendment rights of all restricted sex offenders "by inhibiting the[ir] ability . . . to go to a wide variety of places associated with First Amendment activity." Suppl. J.A. 158. For example, subsection (a)(2) potentially impedes the ability of restricted sex offenders to access public streets, parks, and other public facilities. See Hague v. Comm. for Indus. Org., 307 U.S. 496, 515 (1939) ("Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."). The issue presented to the district court, and now on appeal, is whether subsection (a)(2) is overbroad because it places substantial limitations of movement on restricted sex offenders without regard to the dangerousness of the individual

23

offender.   Put another way, we must decide whether subsection (a)(2) is overbroad because it applies to all restricted sex offenders, not just those who pose a danger to minors or are likely to pose such a danger.

2.

In analyzing overbreadth, we initially identify the appropriate level of scrutiny to apply to the statute.  Because subsection (a)(2) implicates protected First Amendment activities, our first task is to determine whether it is "content neutral."  "If the regulation was adopted to burden disfavored viewpoints or modes of expression, a court applies strict scrutiny."  Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 512 (4th Cir. 2002).   Conversely, if the statute "was adopted for a purpose unrelated to the suppression of expression -- e.g., to regulate conduct, or the time, place, and manner in which expression may take place -- a court must apply a less demanding intermediate scrutiny."  Id. at 512-13; see also Texas v. Johnson, 491 U.S. 397, 406-07 (1989).

The parties stipulate that subsection (a)(2) is content neutral and we agree.   The statute does not burden disfavored viewpoints or certain modes of expression.  Rather, it merely restricts the time, place, or manner in which restricted sex offenders may engage in certain activities protected by the First Amendment.  Thus, we apply intermediate scrutiny.

24

To pass intermediate scrutiny, a statute must "materially advance[] an important or substantial [government] interest by redressing past harms or preventing future ones." <u>Giovani Carandola, Ltd. v. Fox</u>, 470 F.3d 1074, 1082 (4th Cir. 2006). In addition, it must have the right "fit." That is, it cannot "burden substantially more speech than is necessary to further the government's legitimate interests." <u>Ward</u>, 491 U.S. at 799. "[I]ntermediate scrutiny places the burden of establishing the required fit squarely upon the government." <u>United States v. Chester</u>, 628 F.3d 673, 683 (4th Cir. 2010).

3.

As noted previously, at a status conference held prior to considering the parties' renewed cross motions for summary judgment, the district court put the State on notice that its limited evidence was inadequate to meet its burden of proof. Yet, the State explicitly declined to introduce any additional evidence. The only "evidence" proffered by the State consisted of citations to a list of cases in which sex offenders had re-offended after a prior conviction.[5]

---

[5] The case law examples relied on by the State do not nudge the needle in its favor. For example, in <u>People v. Loy</u>, 254 P.3d 980 (Cal. 2011), the defendant first offended with a minor victim, then re-offended with an adult victim. <u>See</u> <u>id.</u> at 988. The facts of that case do not suggest that a restricted sex offender, who first offends with an adult victim, is likely to re-offend with a minor victim. The same is true for <u>People v.</u> (Continued)

In its order granting the Does' renewed motion for summary judgment, the district court addressed the State's evidentiary deficit:

> Defendants' decision to not provide expert testimony or statistical reports to the Court was somewhat unexpected. Defendants stated at the status conference that it would not be difficult for them to find an expert to support their case. Yet, Defendants chose not to seek out an expert even after repeated inquiries from the Court regarding whether they desired to do so and after the Court expressly stated that it believed that Defendants' evidentiary offering was inadequate to carry their burden in this case.

Suppl. J.A. 168.

The State tries to overcome its lack of data, social science or scientific research, legislative findings, or other empirical evidence with a renewed appeal to anecdotal case law, as well as to "logic and common sense." Appellants' Suppl. Opening Br. 11. But neither anecdote, common sense, nor logic, in a vacuum, is sufficient to carry the State's burden of proof. See United States v. Carter, 669 F.3d 411, 418-19 (4th Cir. 2012). Thus, while the State's argument may be conceptually

_____

Hollie, 103 Cal. Rptr. 3d 633, 637-39 (Cal. Ct. App. 2010). Other cases cited by the State suggest, for example, that a restricted sex offender may develop and retain an attraction for a particular individual. See State v. Smith, 687 S.E.2d 525, 527 (N.C. Ct. App. 2010). None of these cases suggest with any degree of reliability that offenders with only adult victims are more likely to reoffend with minors.

plausible, it presented no evidence or data to substantiate it before the district court.[6]

In fact, the State's own evidence belies its appeal to "common sense" as an appropriate substitute for evidence. In its brief, the State cites three North Carolina cases, State v. Smith, 687 S.E.2d 525 (N.C. Ct. App. 2010); State v. Tyson, 672 S.E.2d 700 (N.C. Ct. App. 2009); and State v. Smith, 568 S.E.2d 289 (N.C. Ct. App. 2002), for the proposition that "sexual deviants choose victims based upon opportunity/vulnerability rather than the age of the victim or level of 'romantic' attraction akin to that of husband and wife." Appellants' Suppl. Opening Br. 18-19. However, the State fails to explain how three cases, representing three individuals -- out of more than 20,000 registered North Carolina sex offenders -- provide a sufficient basis to justify subsection (a)(2)'s sweeping

---

[6] Nor is the State's appeal to the policy underlying Federal Rule of Evidence 413 persuasive. That rule provides in relevant part "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a). The State cites Rule 413 as "evidence" that "Congress has clearly drawn the connection between past sexually assaultive conduct and the likelihood of future sexually assaultive conduct regardless of victim age." Appellants' Suppl. Opening Br. 15. However, the State confuses the rule's suggestion that sex offenders are likely to re-offend with the more pointed, and very different, proposition that sex offenders with only adult victim offenses are likely to re-offend with a minor victim.

27

restrictions.[7]   Although each of these cases involved a minor victim, there was no evidence in any case that the defendant had ever been convicted of a previous sex offense.

Similarly, the State cannot rest its case on the conclusory assertion that minors would be "more exposed to harm without [this] prohibition than with it."   Appellants' Suppl. Opening Br. 10.   Without empirical data or other similar credible evidence, it is not possible to tell whether subsection (a)(2) -- and specifically its application to offenders with only adult victims -- responds at all to the State's legitimate interest in protecting minors from sexual assault.

Finally, although the State cites United States v. Staten, 666 F.3d 154 (4th Cir. 2011), to bolster its appeal to "common sense," that case is inapposite.   In Staten, this Court upheld 18 U.S.C. § 922(g)(9)[8] against a Second Amendment challenge, reasoning "common sense and case law fully support[ed]" restricting persons convicted of misdemeanor crimes of domestic violence from possessing firearms.   Id. at 161.   However, our appeal to "common sense" in Staten only bolstered the

---

[7]   There currently are more than 21,000 sex offenders registered in North Carolina.   See Offender Statistics, N.C. Dep't of Pub. Safety, http://sexoffender.ncsbi.gov/stats.aspx (last visited Nov. 29, 2016)(saved as ECF opinion attachment).

[8] Section 922(g)(9) prohibits "any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence" from possessing a firearm.   18 U.S.C. § 922(g)(9).

28

government's already strong case, which was fully supported by empirical proof in the form of data generated from relevant social science research. See id. at 164-65 (discussing empirical research supplied by the government).

While all parties agree North Carolina has a substantial interest in protecting minors from sexual crimes, it was incumbent upon the State to prove subsection (a)(2) was appropriately tailored to further that interest. Nevertheless, for reasons not apparent from the record, the State failed to produce evidence to carry that burden. Thus, irrespective of whether subsection (a)(2) could have met constitutional standards in a different evidentiary setting, the State here simply failed to meet its burden of proof. See, e.g., McCullen v. Coakley, 573 U.S. __, 134 S. Ct. 2518, 2539-40 (2014) ("Respondents point us to no evidence that individuals regularly gather at other clinics, or at other times in Boston, in sufficiently large groups to obstruct access."); Chester, 628 F.3d at 683 ("[I]ntermediate scrutiny places the burden of establishing the required fit squarely upon the government.").

Accordingly, the district court did not err in granting the Does' motion for summary judgment as to subsection (a)(2).

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED

30